**E-FILED**
**8/15/2024 9:01 PM**
**CLERK & MASTER**
**DAVIDSON CO. CHANCERY CT.**

IN THE CHANCERY COURT FOR DAVIDSON COUNTY, TENNESSEE
AT NASHVILLE

| | | |
|---|---|---|
| MID-SOUTH IMAGING & THERAPEUTICS, P.A. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No.: 24-0723-III |
| | ) | |
| UNITEDHEALTH GROUP INCORPORATED, | ) | |
| OPTUM, INC., CHANGE HEALTHCARE, INC., and | ) | |
| CHANGE HEALTHCARE TECHNOLOGY | ) | |
| ENABLED SERVICES, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION TO STAY PROCEEDINGS**
**PENDING RESOLUTION OF, OR PERTINENT GUIDANCE**
**FROM, SUBSTANTIALLY RELATED MULTIDISTRICT LITIGATION**

Defendants Change Healthcare Inc. ("Change"), UnitedHealth Group Incorporated ("UHG"), Optum, Inc., and Change Healthcare Technology Enabled Services, LLC (collectively, "Defendants"), by and through undersigned counsel, respectfully move this Court for the entry of an Order staying this action pending the resolution of the substantially related Multidistrict Litigation captioned *In re: Change Healthcare, Inc. Customer Data Security Breach Litigation*, MDL No. 3108 (the "Substantially Related MDL"). In the alternative, this Court should stay this action until after the issuance of a scheduling order in the Substantially Related MDL, so that the actions can be appropriately coordinated. As grounds for this Motion, Defendants state the following:

1.      This case was filed after dozens of similar cases were brought in federal courts across the country in the wake of the cyberattack on Change in early 2024. Those federal cases have now been consolidated into the Substantially Related MDL. Moreover, this case also

1

followed a similar class action brought in Hamblen County more than two months prior to this case. *See Eye Care Assocs. of Morristown, Inc. v. Change Healthcare Inc.*, 24-CV-048 (Tenn. Cir. Ct. Apr. 18, 2024).

2.      The instant action, the Substantially Related MDL, and the first-filed state class action—all of which remain in their early stages and are therefore prime for coordination—contain overlapping and related issues of fact and law. In particular, the cases relate to the same cyberattack and are filed against almost entirely the same defendants, and Plaintiff's allegations and claims here make it a presumptive member of putative classes in cases that were first filed in federal court and are pending in the Substantially Related MDL, as well as in the putative class in the first-filed state court case.

3.      Absent a stay of this case, Defendants are likely to confront duplicative proceedings and duplicative—and potentially conflicting—dispositive and discovery rulings between this matter and the federal cases consolidated in the Substantially Related MDL. Given the foregoing, principles of comity and the first-to-file rule justify a stay of this subsequently-filed state court action, pending resolution of the first-filed cases in federal court.

4.      This Motion is based on the accompanying memorandum of law

WHEREFORE, Defendants respectfully request the following relief:

1.      That this Court enter an Order granting this Motion and staying this action pending the resolution of the Substantially Related MDL proceedings; or

2.      In the alternative, that this Court enter an Order staying this case until the MDL Court has issued a scheduling order; and

3.      For such other and further relief as this Court deems just and proper.

**<u>NOTICE OF HEARING</u>**

**THIS MOTION IS SET FOR HEARING ON THE COURT'S REGULAR MOTION DOCKET ON FRIDAY, SEPTEMBER 20, 2024, AT 9:00 A.M. IF NO RESPONSE IS TIMELY FILED AND SERVED, THE MOTION SHALL BE GRANTED AND COUNSEL NEED NOT APPEAR IN COURT AT THE TIME AND DATE SCHEDULED FOR THE HEARING.**

Dated: August 16, 2024

Respectfully submitted,

*/s/ Kimberly M. Ingram-Hogan*
Allison M. Ryan (BPR 028584)
Hogan Lovells US LLP
555 13th Street NW
Washington, DC 20004
T. (202) 637-5600
F. (202) 637-5910
allison.holt-ryan@hoganlovells.com

E. Todd Presnell (BPR 017521)
Kimberly M. Ingram-Hogan (BPR 035191)
**BRADLEY ARANT BOULT CUMMINGS LLP**
One 22 One
1221 Broadway, Suite 2400
Nashville, TN 37203
T. (615) 252-2355
F. (615) 252-6355
tpresnell@bradley.com
kingram@bradley.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this the 15th day of August 2024, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon the following:

Kathryn Hannen Walker
Briana T. Sprick Schuster
Taylor M. Sample
BASS BERRY & SIMS PLC
150 Third Avenue South
Suite 2800
Nashville, TN 37201

*/s/ Kimberly M. Ingram-Hogan*
Kimberly M. Ingram-Hogan

E-FILED
8/15/2024 9:01 PM
CLERK & MASTER
DAVIDSON CO. CHANCERY CT.

IN THE CHANCERY COURT FOR DAVIDSON COUNTY, TENNESSEE
AT NASHVILLE

| | | |
|---|---|---|
| MID-SOUTH IMAGING & THERAPEUTICS, P.A. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No.: 24-0723-III |
| | ) | |
| UNITEDHEALTH GROUP INCORPORATED, | ) | |
| OPTUM, INC., CHANGE HEALTHCARE, INC., and | ) | |
| CHANGE HEALTHCARE TECHNOLOGY | ) | |
| ENABLED SERVICES, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO STAY
PROCEEDINGS PENDING RESOLUTION OF, OR PERTINENT GUIDANCE
FROM, SUBSTANTIALLY RELATED MULTIDISTRICT LITIGATION**

Defendants Change Healthcare Inc. ("Change"), UnitedHealth Group Incorporated ("UHG"), Optum, Inc., and Change Healthcare Technology Enabled Services, LLC (collectively, "Defendants"), by and through undersigned counsel, respectfully move this Court for the entry of an Order staying this action pending the resolution of the substantially related Multidistrict Litigation captioned *In re: Change Healthcare, Inc. Customer Data Security Breach Litigation*, MDL No. 3108 (the "Substantially Related MDL"). In the alternative, this Court should stay this action until after the issuance of a scheduling order in the Substantially Related MDL, so that the actions can be appropriately coordinated.

This case was filed after dozens of similar cases were brought in federal courts across the country in the wake of the cyberattack on Change in early 2024. Those federal cases have now been consolidated into the Substantially Related MDL. Moreover, this case also followed a similar class action brought in Tennessee state court more than two months prior to this case. *See Eye*

1

*Care Assocs. of Morristown, Inc. v. Change Healthcare Inc.*, 24-CV-048 (Tenn. Cir. Ct. Apr. 18, 2024). The instant action, the Substantially Related MDL, and the first-filed state class action—all of which remain in their early stages and are therefore prime for coordination—contain overlapping and related issues of fact and law. In particular, the cases relate to the same cyberattack and are filed against almost entirely the same defendants, and Plaintiff's allegations and claims here make it a presumptive member of putative classes in cases that were first filed in federal court and are pending in the Substantially Related MDL, as well in the putative class in the first-filed state court case. For that reason, absent a stay of this case, Defendants are likely to confront duplicative proceedings and duplicative—and potentially conflicting—dispositive and discovery rulings between this matter and the federal cases consolidated in the Substantially Related MDL. Given the foregoing, principles of comity and the first-to-file rule justify a stay of this subsequently filed state court action, pending resolution of the first-filed cases in federal court. In the alternative, if the Court declines to order a stay of this matter until the cases pending in the Substantially Related MDL are resolved, the Court should instead stay this action pending issuance of a scheduling order applicable to Defendants in the Substantially Related MDL so that this case can proceed in coordination with the Substantially Related MDL and the related state class action, in which the parties have agreed to a stay pending further proceedings in the MDL.[1]

## **BACKGROUND**

In February 2024, Change was the victim of a cyberattack (the "Cyberattack"). Change, a UHG subsidiary, works across the health system to make clinical, administrative, and financial

---

[1] If the Court determines not to enter either stay sought by this motion, then consistent with this Court's discretionary authority under Tennessee Rule of Civil Procedure 6.02, Defendants respectfully request that this Court treat this motion as a motion for extension of time to respond to the Complaint, until at least thirty days after the Court rules on this motion.

processes simpler and more efficient for consumers, providers, and payers by supporting, for example, pharmacy claims transactions, provider claims processing, and provider payments. Since the Cyberattack, Defendants have worked tirelessly to restore systems and to support individuals, customers, and providers. During that time, Defendants have been named in over 60 state and federal court cases regarding the Cyberattack (the "Actions"), including a Tennessee state class action in Hamblen County Circuit Court filed more than two months before this action. *See* Amended Compl., *Eye Care Assocs. of Morristown, Inc. v. Change Healthcare Inc.*, 24-CV-048 (Hamblen Cnty. Cir. Ct. Apr. 18, 2024), attached as Exhibit A. The Actions make the same factual and legal allegations and assert substantially identical causes of action on behalf of overlapping putative nationwide and statewide classes. Fifty-six (56) of those federal actions were filed prior to the instant action. The first suit against Change was filed on March 1, 2024, in the U.S. District Court for the Middle District of Tennessee, and at least 31 subsequent suits were originally filed in the Middle District of Tennessee. *See, e.g.*, *Reese v. Change Healthcare Inc.*, No. 3:24-cv-00240 (M.D. Tenn. Mar. 1, 2024); *H. Lee Moffitt Cancer Center and Research Institute Hospital, Inc. v. UnitedHealth Group Incorporated*, No. 3:24-cv-00661 (M.D. Tenn. May 28, 2024).

On June 7, 2024 (again before the instant action was filed), the United States Judicial Panel on Multidistrict Litigation ("JPML") granted a Motion to Transfer that created the Substantially Related MDL in the District of Minnesota. Transfer Order, *In re: Change Healthcare, Inc. Customer Data Security Breach Litig.*, MDL No. 3108 (June 7, 2024), ECF No. 158 (hereinafter "MDL Transfer Order"). To date, more than 58 cases nationwide against Change, UHG, and related entities arising out of the Cyberattack have been transferred to the Substantially Related MDL. On August 14, the MDL Court issued MDL Pretrial Order No. 1, establishing preliminary procedures, appointing temporary interim class counsel, and setting the first status conference for

3

September 17. Pretrial Order No. 1, *In re: Change Healthcare, Inc. Customer Data Security Breach Litig.*, 0:24-md-03108-DWF-DJF (D. Minn. August 14, 2024), ECF No. 54 (hereinafter "MDL Pretrial Order"), attached as Exhibit B.

More than three months after the first federal litigation was filed, two weeks after the Substantially Related MDL was formed, and more than two months after the first-filed state court case, Defendants were served with Plaintiff's Complaint on or about June 21, 2024. Compl. June 21, 2024. As described further below, the instant case and the Substantially Related MDL arise out of the same set of facts (the Cyberattack) and concern overlapping legal issues.

On July 31, this Court granted Defendants an extension of time to respond to the Complaint. Order Granting Extension of Time, July 31, 2024. Therefore, Defendants' response to the Complaint is due on or before August 16, 2024.

## <u>ARGUMENT</u>

In the interests of comity between federal and state courts, this Court should stay the instant proceedings until the first-filed Substantially Related MDL proceedings are complete. Such a stay will allow the MDL to efficiently dispose of numerous factual issues, manage discovery, and address a myriad of related legal questions, while also avoiding a risk of inconsistent rulings. *See, e.g., In re Air Crash Disaster Near Silver Plume, Colo., on Oct. 2, 1970,* 352 F. Supp. 968, 969 (J.P.M.L. 1972) (coordinating pretrial proceedings of MDL action with state court actions "will significantly lessen the burdens on both courts' judicial resources and greatly enhance the expeditious processing of all actions"). State courts routinely rely on comity interests to defer to first-filed federal MDL cases. *See, e.g., Williams v. FedEx Ground Package Sys., Inc.*, 2007 WL 3013266, at *3 (Mass. Super. Sept. 20, 2007) (granting motion to stay pending resolution of MDL to avoid wasted resources); *Jones v. Educ. Testing Serv.*, 2005 WL 975337, at *8 (N.J. Super. Ct.

4

Law Div. Feb. 7, 2005) (dismissing state court action, rather than staying state court action, because of first-filed federal MDL class actions involved substantially overlapping parties and issues); *Van Emden Mgmt. Corp. v. Marsh & McLennan Companies*, 2005 WL 2456737, at *4 (Mass. Super. Sept. 21, 2005) (granting motion to stay pending resolution of MDL).  Indeed, in recent months, one state court has stayed state actions involving another data breach MDL.  *See, e.g.*, Order, *Taylor v. Maximus, Inc.*, No. 2023-12349-CIDL (Fla. 7th Cir. Ct. Apr. 3, 2024).  This Court should likewise do so here.  *See* 1 C.J.S. Abatement and Revival § 63 ("A trial court should not dismiss an action based on a prior action pending in federal court, but should instead issue a stay order if the circumstances warrant[.]")

In the alternative, and pursuant to this Court's broad discretion to manage its docket in the interest of justice and judicial efficiency, the Court should enter a stay of this matter until after the MDL issues a scheduling order.  *See Kirk v. Kirk*, 447 S.W.3d 861, 875 (Tenn. Ct. App. 2013).  Although not as efficient as a stay pending resolution of the Substantially Related MDL, a stay until after the MDL Court issues a scheduling order will allow this court to work with the MDL Court to align the schedule of this case with that of the Substantially Related MDL, avoiding inefficiencies and potentially conflicting rulings.  After the MDL Court's scheduling order issues, a further stay could be considered at that time.

### A.   Legal Standard

Incident to the power of the Court, "questions of stay or continuance are matters entrusted to the sound discretion of the trial judge."  *Sanjines v. Ortwein & Assocs., P.C.*, 984 S.W.2d 907, 909 (Tenn. 1998).  When two courts have concurrent jurisdiction over the same controversy, courts examine a number of factors when considering whether to grant a stay of one of the actions:

(1) the extent to which the issues in the [cases] overlap, (2) the status of the other proceeding, (3) the plaintiff's interests in expeditious civil proceedings weighed

5

against the prejudice to the plaintiff caused by the delay, (4) the hardship on the defendant, including the burden on the defendant if the cases go forward in tandem, (5) the convenience of both . . . courts, and (6) the interests of third parties and the public.

*In re SmileDirectClub, Inc., Sec. Litig.*, No. 19-1169-IV, 2020 WL 7135319, at *2 (Tenn. Ch. Ct. June 04, 2020) (alterations accepted) (quoting *Bell v. Todd*, 206 S.W.3d 86, 94 (Tenn. Ct. App. 2005)). Overlaying those factors is the "general proposition" that "the first court having jurisdiction over a case usually has precedence over courts who later obtain concurrent jurisdiction over the same controversy." *In re SmileDirectClub, Inc., Sec. Litig.*, 2020 WL 7135319, at *1.

**B.    This Court Should Defer to the MDL Court Overseeing Dozens of Previously Filed Federal Cases in the Substantially Related MDL**

As a threshold matter, the MDL Court should have "precedence" because this case was filed more than three months after the first federal litigation was filed in Tennessee. *See In re SmileDirectClub, Inc., Sec. Litig.*, 2020 WL 7135319, at *2 (deferring to first-filed action between state and federal court proceedings); *see also West v. Vought Aircraft Indus., Inc.*, 256 S.W.3d 618, 623 (Tenn. 2008) (noting that the primacy of the first-filed action has been followed in Tennessee state courts in some form since "as early as 1838"); *compare* Compl., *Reese v. Change Healthcare Inc.*, No. 3:24-cv-00240 (M.D. Tenn. Mar. 1, 2024), *with* Compl. (June 21, 2024). By the time the Complaint was filed, the JPML had already issued the MDL Transfer Order emphasizing that "centralization in the District of Minnesota will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation." MDL Transfer Order at 2. Nearly all of the federal cases were filed prior to this action. This Court should apply the "general principle" that the first-filed action has "precedence" and stay this later-filed state court action— particularly in light of the August 14 MDL Pretrial Order, which shows that the MDL is progressing apace. *See In re SmileDirectClub, Inc., Sec. Litig.*, 2020 WL 7135319, at *1.

**C.   All Factors Support Staying This Matter Pending the Resolution of the Substantially Related MDL**

Staying this action pending the resolution of the Substantially Related MDL is also appropriate given (i) the significant overlap between the cases, (ii) the early litigation status of both proceedings, which can be better coordinated following the issuance of a stay, (iii) the lack of prejudice Plaintiff will face from a stay, (iv) the comparative burden Defendants will confront from duplicative state and federal litigation and discovery, (v) the judicial efficiencies that a stay will promote, and (vi) the public interests at play.

1.   The Substantially Related MDL and This Case "Overlap"

As to the first factor, both the legal issues and parties involved "overlap" with the Substantially Related MDL. *See In re SmileDirectClub, Inc., Sec. Litig.*, 2020 WL 7135319, at *2. The MDL Actions and this case will both consider the allegations regarding negligence, breach of contract, breach of fiduciary duty, negligent failure to warn, and violations of Tennessee consumer protection statutes. *Compare* Compl. ¶¶ 43-87, *with* Amended Compl. ¶¶ 41-73, *Mt. Rainier Emergency Physicians, PLLC v. Change Healthcare Inc.*, 3:24-cv-00323 (M.D. Tenn. Mar. 28, 2024) (alleging negligence, breach of contract, and Tennessee consumer protection violations); Amended Compl. ¶¶ 143-174, *Apex Physical Rehab. & Wellness, PLLC v. Change Healthcare Inc.*, 3:24-cv-00331 (M.D. Tenn. Mar. 22, 2024) (alleging negligence and negligent failure to warn); Compl. ¶¶ 255, 267-274, 293-297, *Ala. Family Foot Clinic, PC, et al. v. Change Healthcare Inc., et al.*, No. 0:24-cv-02335 (D. Minn. June 19, 2024) (alleging negligence, and breach of contract under Tennessee state law).

Moreover, the parties are "in effect the same." *See Fid. & Guar. Life Ins. Co. v. Corley*, 2003 WL 23099685, at *4 (Tenn. Ct. App. Dec. 31, 2003). Here, this action involves substantially the same parties as the actions in the Substantially Related MDL. Change, UHG, and Optum, Inc.

7

are named defendants in the first-filed cases in the Substantially Related MDL.  *See* MDL Transfer Order at 1.  Further, Plaintiff admits that Change Healthcare Technology Enabled Services, Inc. is a subsidiary of Change Healthcare Inc., and because the allegations in the Complaint all stem from the alleged conduct of Change and the same Cyberattack, the Defendants are "in effect the same." *See Cockburn v. Howard Johnson, Inc.*, 215 Tenn. 254, 258 (1964) (holding that because the liability of the defendants in one case would depend on the liability of the defendant in the other, the defendants were "in effect the same").  Moreover, Plaintiff here alleges that it is a "provider" in Tennessee that "relied solely on Defendants for . . . medical coding, billing, collections and revenue cycle management" "[i]n order to obtain payment" for the services it offered. Compl. ¶¶ 1-2.  Multiple potential overlapping provider classes in various federal cases would cover Plaintiff, again making the parties "in effect the same."  *See* Compl. ¶ 36, *H. Lee Moffitt Cancer Ctr. and Rsch. Inst. Hosp., Inc. v. Change Healthcare Inc., et al.*, 3:24-cv-00661-EJR-JSF (M.D. Tenn. May 29, 2024) (listing nationwide class of "[a]ll health care providers **within the United States** who have suffered delays **in processing claims and revenue cycle services** as a result of the Data Breach reported by Defendants on February 21, 2024" (emphasis added)); Second Amended Compl. ¶ 86, *Lemke et al. v. Change Healthcare Inc.*, 3:24-cv-00302-EJR-JSF (M.D. Tenn. Apr. 3, 2024) (listing Tennessee class of "[a]ll persons and entities **in Tennessee** who used Defendants for processing and/or payment of insurance claims and were injured as a result of the Data Breach" and a similar nationwide class for "[a]ll persons and entities **in the United States**" (emphasis added)).

For these reasons, the same parties will have to litigate the same issues in the first-filed Substantially Related MDL and this subsequently filed state action.[2]

### 2.   The Other Factors Also Weigh in Favor of a Stay

The remaining factors also weigh in favor of a stay while the Substantially Related MDL proceeds.  For starters, the Substantially Related MDL and this action are both "in the early stages of litigation."  *SmileDirectClub, Inc., Sec. Litig.*, 2020 WL 7135319, at *2.   The "pleadings are not closed," and "discovery has not yet" started.  *Id.*   However, if these cases do proceed, the discovery in this state action will significantly overlap with that in the Substantially Related MDL, specifically, discovery "focus[ing] on how Change Healthcare's system was breached, what security measures Change Healthcare had in place, and the measures taken after the data breach was discovered to notify those impacted and to restore healthcare providers' access to insurance and other information stored in the Change Healthcare platform."  MDL Transfer Order at 2.  The early stage of both proceedings therefore justifies a stay of this later-filed state action to allow for "more efficient coordination" by the parties and the courts.  *SmileDirectClub, Inc., Sec. Litig.*, 2020 WL 7135319, at *2.

As to the third, fourth, and fifth factors, both the parties and the Court would benefit from a stay.  As to the parties, Plaintiff faces no prejudice from a stay, whereas Defendants would "face

---

[2] In the first-filed state class action, *Eye Care Associates of Morristown, Inc. v. Change Healthcare, Inc.*, the parties have agreed to stay proceedings pending the issuance of a scheduling order in the Substantially Related MDL, and the agreed-upon motion to stay is pending before that court.  If that case were to proceed, however, a stay would be further warranted in this case because (i) *Eye Care Associates* was a first-filed action, (ii) similar claims are involved (e.g., negligence and breach of fiduciary duty), (iii) Change is a defendant in both actions, and (iv) the putative class would appear to include Plaintiff.  *See* Amended Compl. ¶ 16, *Eye Care Assocs. of Morristown, Inc. v. Change Healthcare Inc.*, 24-CV-048 (Tenn. Cir. Ct. Apr. 18, 2024) (listing putative class as "[a]ll health care providers who are domiciled or have their principal Place of business in the state of Tennessee as of the date of this filing and who have suffered delays in claims processing and/or revenue services as a result of the data breach reported by Defendant").

9

costly duplication efforts" if forced to proceed with litigating both this case and the Substantially Related MDL. *In re SmileDirectClub, Inc., Sec. Litig.*, 2020 WL 7135319, at *1. As noted above, the putative classes in the Substantially Related MDL, which Plaintiff presumptively falls within, seek relief based on claims similar to those Plaintiff asserts in this action. Moreover, the common issues will also likely lead to duplicative discovery with the Substantially Related MDL; forcing Defendant to undergo those efforts twice and face a risk of inconsistent rulings would be both inefficient and detrimental to the MDL process. A stay would likewise "promote judicial economy and the conservation of judicial resources by reducing the duplication of legal issues to be litigated" and by allowing this Court and the MDL Court to more easily coordinate schedules and discovery. *See Sanjines*, 984 S.W.2d at 911; *In re Air Crash Disaster Near Silver Plume, Colo., on Oct. 2, 1970*, 352 F. Supp. at 969 (noting the benefits of coordination for both state and federal courts). In fact, leading treatises such as the Manual for Complex Litigation, the Multidistrict Litigation Manual, and similar resources for the judiciary, all recommend that federal and state courts cooperate closely when handling closely related litigation like this, both as a matter of comity and pursuant to national judicial policy. *See generally* Managing Class Action Litigation: A Pocket Guide for Judges 32–34 (2d ed. 2009) (discussing coordination of state and federal litigations); Manual for Complex Litigation §§ 21.42 and 20.32 (4th ed.2007) (same); Multidistrict Litigation Manual § 9:17 (May 2023) (same). This national judicial policy and the interests of justice more broadly justify this Court exercising its discretion and staying these proceedings.[3]

---

[3] Without conceding any arguments as to whether this case is removable to federal court, Defendants likewise submit that the public interest favors a stay. Ruling otherwise would offer an endorsement to plaintiffs in other cases to circumvent the first-filed rule by allowing them to file state court actions that may not be subject to federal removal, but that parrot the allegations of previously filed and substantially overlapping federal lawsuits.

**D.   In the Alternative, the Court Should Stay Proceedings until after the Substantially Related MDL Issues a Scheduling Order**

In the alternative, the Court should exercise its broad discretion on stays to pause these proceedings until after the Substantially Related MDL has issued a scheduling order, as the parties have agreed in the parallel *Eye Care Associates* state class action, so that the actions can be appropriately coordinated.  *See Sanjines*, 984 S.W.2d at 911 ("[Q]uestions of stay or continuance are matters entrusted to the sound discretion of the trial judge.").  As noted above, coordination between this Court, the MDL Court, and the Hamblen County Circuit Court would promote judicial economy and reduce duplicative discovery efforts and the risk of inconsistent rulings—all while still ensuring that Plaintiff's claims are fully litigated.  *See supra* II.B.2.

Although staying this case through judgment of the first-filed federal actions is optimal because it would reduce the judicial resources spent on coordination with the MDL Court, Defendants request that this matter at least be stayed until the MDL Court issues a scheduling order.  At that time, this Court will be better equipped to set a schedule that appropriately coordinates with the Substantially Related MDL proceedings.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court should enter an Order granting this Motion and staying this action pending the resolution of the Substantially Related MDL proceedings or, in the alternative, staying this case until the MDL Court has issued a scheduling order.

Dated: August 15, 2024

Respectfully submitted,

*/s/ Kimberly M. Ingram-Hogan*
Allison M. Ryan (BPR 028584)
Hogan Lovells US LLP
555 13th Street NW

11

Washington, DC 20004
T. (202) 637-5600
F. (202) 637-5910
allison.holt-ryan@hoganlovells.com

E. Todd Presnell (BPR 017521)
Kimberly M. Ingram-Hogan (BPR 35191)
**BRADLEY ARANT BOULT CUMMINGS LLP**
One 22 One
1221 Broadway, Suite 2400
Nashville, TN 37203
T. (615) 252-2355
F. (615) 252-6355
tpresnell@bradley.com
kingram@bradley.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this the 15th day of August 2024, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon the following:

Kathryn Hannen Walker
Briana T. Sprick Schuster
Taylor M. Sample
BASS BERRY & SIMS PLC
150 Third Avenue South
Suite 2800
Nashville, TN 37201

_/s/ Kimberly M. Ingram-Hogan_
Kimberly M. Ingram-Hogan

13

E-FILED
8/15/2024 9:01 PM
CLERK & MASTER
DAVIDSON CO. CHANCERY CT.

# EXHIBIT  A



**CT Corporation**
**Service of Process Notification**
04/22/2024
CT Log Number 546253328

## Service of Process Transmittal Summary

**TO:**        Rebecca Thompson, Legal Svs Spclst
           UnitedHealth Group Incorporated (111504190770700600)
           9900 BREN RD E STE 300W
           MINNETONKA, MN 55343-9693

**RE:**        **Process Served in Tennessee**

**FOR:**       CHANGE HEALTHCARE INC.  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | EYE CARE ASSOCIATES OF MORRISTOWN, INC., individually and on behalf of all others similarly situated vs. CHANGE HEALTHCARE INC. |
| **CASE #:** | 24CV048 |
| **PROCESS SERVED ON:** | C T Corporation System, Knoxville, TN |
| **DATE/METHOD OF SERVICE:** | By Traceable Mail on 04/22/2024 |
| **JURISDICTION SERVED:** | Tennessee |
| **ACTION ITEMS:** | CT will retain the current log |
| | Image SOP |
| | Email Notification,  Administrative Assistant  legalmail@uhg.com |
| **REGISTERED AGENT CONTACT:** | C T Corporation System |
| | 300 Montvue RD |
| | Knoxville, TN 37919 |
| | 877-564-7529 |
| | MajorAccountTeam2@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.





US POSTAGE PITNEY BOWES

FIRST-CLASS

ZIP 37814
02 7H $ 010.40
0001277251    APR 19 2024

7020 0640 0000 4071 9073



THE
TERRY LAW FIRM

PERSONAL INJURY ATTORNEYS

116 East Main Street
PO Box 724
Morristown, TN 37815

CT Corporation System
300 Montvue Road
Knoxville, TN 37919-5546

Attorneys:

Charles R. Terry
*1933 - 2009*

Denise S. Terry
F. Braxton Terry
Jacqulyn G. Jones
T. Dillon Parker
Gabriel C. Stapleton*

Legal Assistant:
Chuck Terry

*also admitted in SC



THE
TERRY LAW FIRM

PERSONAL INJURY ATTORNEYS

*small town firm,*
*big city know how*

116 East Main Street
PO Box 724
Morristown, TN 37815

423.586.5800
800.518.3779
Fax: 423.587.4714

www.terry-lawfirm.com

April 19, 2024

**Via certified mail**

CT Corporation System
300 Montvue Road
Knoxville, TN 37919-5546

**RE:    Eye Care Associates of Morristown, Inc. v. Change Healthcare, Inc.**
**Hamblen County Circuit Court No. 24-CV-048**

Dear CT Corporation System:

You are listed as the registered agent for Change Healthcare, Inc. with the State of Tennessee.

I am enclosing a copy of an Amended Complaint and Summons filed against Change Healthcare, Inc.

As you will notice, the Summons requires Change Healthcare to file an answer within 30 days after service. You should turn this letter, Summons and Amended Complaint over to Change Healthcare's attorney and/or insurance carrier immediately.

With kindest personal regards, I remain

Yours very truly,

F. Braxton (Brack) Terry

FBT/cm

Enclosures    Amended Complaint
Summons

GREENEVILLE LOCATION:    3465 East Andrew Johnson Highway • Suite 4 • Greeneville, TN 37745    423.638.0420 • Fax: 423.638.0421

## IN THE CIRCUIT COURT OF HAMBLEN COUNTY, TENNESSEE
## THIRD JUDICIAL DISTRICT AT MORRISTOWN

**EYE CARE ASSOCIATES OF**
**MORRISTOWN, INC., individually and**
**on behalf of all others similarly situated,**                 **JURY TRIAL DEMANDED**

      **Plaintiff,**

**v.**                                                              Case No. _94CV098_

**CHANGE HEALTHCARE INC.,**

      **Defendant.**

### SUMMONS

**To the above-named Defendant:    CHANGE HEALTHCARE, INC.**
**Serve: C T Corporation System, 300 Montvue Rd., Knoxville, TN 37919-5546**
     You are hereby summoned and required to serve upon: F. Braxton Terry, Plaintiff's attorney, whose address is P.O. Box 724, Morristown, Tennessee 37815-0724, a true copy of the answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.
     If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.
     Issued this the _16_ day of _Ap. l_ , 2024, at _____ o'clock, _____.m.

_____,Clerk

**(This summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedure.)**
### NOTICE
**TO THE DEFENDANT(S):** Tennessee law provides a ten thousand dollar ($10,000) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the Clerk of the Court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.
     Received this _____ day of _____, 2024.

_____Deputy Sheriff

### RETURN ON SERVICE OF SUMMONS
I hereby certify and return that on the _____ day of _____, 2024, I served this summons together with the complaint as follows: _____ or failed to serve this summons within 30 days after its issuance because _____
_____.

_____, Deputy Sheriff

**IN THE CIRCUIT COURT OF HAMBLEN COUNTY, TENNESSEE**
**THIRD JUDICIAL DISTRICT AT MORRISTOWN**

EYE CARE ASSOCIATES OF
MORRISTOWN, INC., individually and
on behalf of all others similarly situated,                    **JURY TRIAL DEMANDED**

      **Plaintiff,**

v.                                                            **Case No. 24-CV-048**

                                    TERESA WEST
CHANGE HEALTHCARE INC.,                                       CIRCUIT COURT CLERK
                                      HAMBLEN COUNTY

      **Defendant.**                                          APR 18 2024

                                                    By_____

## AMENDED CLASS ACTION COMPLAINT

      Plaintiff, Eye Care Associates of Morristown, Inc. ("Plaintiff" or "ECAM"), amends its complaint previously filed as follows:

      Plaintiff, Eye Care Associates of Morristown, Inc., brings this Class Action Complaint against Defendant Change Healthcare Inc. ("Change") based upon its personal knowledge, investigation by counsel, and review of public documents and states as follows:

### INTRODUCTION

      1.     Plaintiff brings this action for Defendant's failure to timely and adequately process and pay the amounts due to Tennessee medical providers for their services.

      2.     Defendant Change Healthcare Inc. is a healthcare company that provides payment reimbursement and revenue services to Tennessee medical providers. On February 21, 2024, Defendant discovered its network was improperly secured and inadequately protected. These failures allowed cybercriminals to access highly confidential and sensitive information, resulting in what is commonly known as a data breach.

3.      As a result of these failures, Defendant Change then "disconnected [its] systems to prevent further impact[.]" This disconnection essentially foreclosed Tennessee medical providers from essential services such as claim processing and payment for goods and services. Defendant's security failures and subsequent actions have harmed Plaintiff and similarly situated Tennessee providers by stopping and disallowing payments for services and care.

## PARTIES, JURISDICTION, AND VENUE

4.      Plaintiff Eye Care Associates of Morristown, Inc. is a Tennessee corporation with its principal place of business located at 1760 W Morris Boulevard, Morristown, Hamblen County, Tennessee 37813. Plaintiff does business as Hyde Eyecare.

5.      Defendant Change Healthcare Inc. ("Change") is a Tennessee corporation with its principal place of business located at 424 Church Street, Suite 1400, Nashville, Tennessee 37219.

6.      Defendant provides payment and revenue cycle services, clinical imaging services, and other services to its clients, including Plaintiff and members of the putative Tennessee class. Plaintiff's transactions with Defendant occurred at and/or through Plaintiff's principal place of business at 1760 W Morris Boulevard, Morristown, Hamblen County, Tennessee 37813.

7.      This Court has jurisdiction over Change because it is incorporated under the laws of Tennessee and has its principal place of business in Tennessee.

8.      This Court has jurisdiction over Change pursuant to Tenn. Code Ann. § 20-2-223(a)(l), (2), (3), and (5) arising from Defendant transacting business in Tennessee, contracting to supply services or things in Tennessee, causing tortious injury by an act or omission in Tennessee, and having an interest in, using or possessing real property in Tennessee.

2

9.      Venue lies in Hamblen County, Tennessee pursuant to Tenn. Code Ann. § 20-4-104, because the events or omissions giving rise to the claims asserted herein occurred and continue to occur in Hamblen County, Tennessee.

10.     The Class Action Fairness Act ("CAFA") jurisdiction does not apply to Plaintiffs claims because greater than two-thirds of the proposed class members in the aggregate are citizens of Tennessee, Change is a citizen of the state of Tennessee, and the significant basis of Plaintiffs claims and principal injuries occurred in Tennessee, and Defendant's conduct occurred in Tennessee. 28 U.S.C. § 1332(d)(4)(A), (B).

## **FACTUAL ALLEGATIONS**

11.     On February 21, 2024, Defendant Change failed to prevent a cyberattack affecting a number of its systems and services (the "Data Breach"). As a result of Defendant Change's failures, it disconnected its systems, making medical providers, including Plaintiff and Class Members, unable to receive payment for their services. This disconnect has impacted Plaintiff and members of the putative class, specifically impacting these providers' revenue stream and ability to operate.

12.     Plaintiff and Class Members are medical providers in Tennessee who have suffered delays in processing claims and revenue cycle services as a result of the Data Breach.

13.     On March 4, 2024, The American Hospital Associations ("AHA") stated:

We are now on day 13 of this crisis and urgently need your support to help minimize further fallout from this attack.
                                  ...
Unfortunately, UnitedHealth Group's efforts to date have not been able to meaningfully mitigate the impact to our field. Workarounds to address prior authorization, as well as claims processing and payment are not universally available and, when they are, can be expensive, time consuming and inefficient to implement. For example, manually typing claims into unique payer portals or sending by fax machine requires additional hours and labor costs, and switching

3

revenue cycle vendors requires hospitals and health systems to pay new vendor fees and can take months to implement properly.[1]

In addition, UnitedHealth Group's "Temporary Funding Assistance Program" that it stood up as part of its response on March 1 will not come close to meeting the needs of our members as they struggle to meet the financial demands of payroll, supplies and bond covenant requirements, among others.[2]

14.     Defendant Change allowed its data and systems to be encrypted by online criminals. Ransomware attacks are becoming more frequent, and results in the victim unable to access its own data. Defendant Change should have taken proper precautions to prevent this action and protect its sensitive protected data.

15.     Defendant Change failed to properly secure its networks and data in a reasonable and prudent manner.  As a result of Defendant Change's failures, Plaintiff and other members of the putative class have been denied earned funds and necessary revenue flow.

## CLASS ACTION ALLEGATIONS

16.     Plaintiff brings this action individually and on behalf of all others similarly situated. Pursuant to Tenn. R. Civ. P. 23, the proposed class is defined as:

All health care providers who are domiciled or have their principal place of business in the state of Tennessee as of the date of this filing and who have suffered delays in claims processing and/or revenue services as a result of the data breach reported by Defendant.

17.     Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers, and directors and any entity in which Defendant has a controlling interest, all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out, any and all federal, state or local

---

[1] *See* https://www.aha.org/lettercomment/2024-03-04-aha-urges-congress-provide-support-help-minimize- further-fallout-change-healthcare-attack.

[2] https://www.optum.com/en/business/providers/health-systems/payments-lending-solutions/optum-pay/temporary-funding-assistance.html (explaining Temporary Funding Assistance Program for providers).

governments, including but not limited to its departments, agencies, divisions, bureaus, boards, sections, groups, counsel, and/or subdivisions, and all judges and/or judicial staff assigned to hear any aspect of this litigation, as well as their immediate family members. Any medical providers who are not domiciled or who do not have their principal place of business in Tennessee as of the date of this filing.

18.    Plaintiff reserves the right to modify or amend the definition of the proposed Class, if necessary, before this Court determines whether certification is appropriate.

19.    This case is properly brought as a class action under Tenn. R. Civ. P. 23 and all requirements are met for the reasons set forth in the following paragraphs.

20.    **Numerosity**: Under Tenn. R. Civ. P. 23.01(1), a class action is necessary for the adjudication of this controversy. The members of the Class are so numerous that joinder of all members is impractical. Plaintiff, upon information and belief, alleges that the total number of Class Members is in the thousands. Membership in the Class will be determined by analysis of Defendant's records.

21.    **Commonality**: Pursuant to Tenn. R. Civ. P. 23.01(2), Plaintiff and the Class Members share a community of interest in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, including, but not necessarily limited to:

    A.    Whether Defendant breached its legal duty to Plaintiff and Class Members;

    B.    Whether Defendant was negligent in failing to implement reasonable and adequate security procedures and practices;

    C.    Whether Defendant took proper precautions to protect and secure its data systems;

    D.    Whether Defendant failed to monitor and install adequate security measures to protect its data and systems;

E.    Whether Defendant failed to comply with their own policies and applicable laws, regulations and industry standards relating to data security;

F.    How and when Defendant learned of the Data Breach;

G.    Whether Defendant's actions and/or inactions led to the breach of their systems and resulting losses;

H.    If Defendant's actions post breach were appropriate and met industry standards; and

I.    Whether Defendant has a special relationship with Plaintiff and Class Members;

J.    Whether Plaintiff and Class Members are entitled to actual and/or statutory damages and/or whether injunctive, corrective and/or declaratory relief and/or an accounting is/are appropriate as a result of Defendant's wrongful conduct.

22.    **Typicality**: Under Tenn. R. Civ. P. 23.01(3), Plaintiff's claims are typical of the claims of the Plaintiff Class. Plaintiff and all members of the Plaintiff Class are all Tennessee based medical providers who sustained damages arising out of and caused by Defendant's common course of conduct in violation of law, as alleged herein.

23.    **Adequacy of Representation**: Plaintiff is an adequate representative for each of the Plaintiff Class Members, for purposes of Tenn. R. Civ. P. 23.01(4), in that Plaintiff has the same interest in the litigation of this case as the putative Class Members. Plaintiff has retained counsel who are experienced in class litigation. Plaintiff is not subject to any individual defenses unique other class members.

24.    **Predominance**: The questions of law and fact common to the Classes as set forth in the commonality allegation above predominate over any individual issues. As such, the "commonality" allegations are restated and incorporated herein by reference.

6

25.     **Superiority**: Class treatment is the superior method for litigating these issues. A data breach has impacted several Tennessee medical providers whose individual damages may make individualized litigation impractical and economically unfeasible. Defendant's conduct has affected all class members. That conduct was not individualized to class members. Multiple individuals' lawsuits throughout the state of Tennessee would impose an unnecessary strain on the Tennessee court system, and could lead to inconsistent rulings among class members. The damages suffered by individual Class Members are significant but may be small relative to each member's enormous expense of individual litigation. This makes or may make it impractical for members of the Plaintiff Class to seek redress individually for the wrongful conduct alleged herein. Even if Class Members could afford such individual litigation, the court system could not. Should separate actions be brought or be required to be brought by each individual member of the Plaintiff Class, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants. The prosecution of separate actions would also create a risk of inconsistent rulings which might be dispositive of the interests of other Class Members who are not parties to the adjudications and/or may substantially impede their ability to protect their interests adequately. Individualized litigation increases the delay and expense to all parties and to the court system, presented by the case's complex legal and factual issues. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale and comprehensive supervision by a single court. Little or no individual litigation has been commenced over the controversies alleged in this Complaint and individual Class Members are unlikely to have an interest in separately prosecuting and controlling individual actions. The concentration of litigation of these claims in one action will achieve efficiency and promote judicial economy. The proposed class action is manageable.

7

26.     Class certification under Tenn. R. Civ. P. 23.02(3) is proper because the questions raised by this Complaint are of common or general interest affecting numerous persons, so it is impracticable to bring all Class Members before the Court.

27.     This class action is also appropriate for certification under Tenn. R. Civ. P. 23.02(2) because Defendants have acted or refused to act on grounds generally applicable to Class Members, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate concerning the Class in their entireties. Defendant's policies and practices challenged herein apply to and affect Class Members uniformly. Plaintiff's challenge of these policies and procedures hinges on Defendant's conduct concerning the Class in their entirety, not on facts or law applicable only to Plaintiff. Unless a Class-wide injunction is issued, Defendants may continue to fail to secure Class Members' PHI/PII properly, and Defendants may continue to act unlawfully, as set forth in this Complaint.

## COUNT I
## NEGLIGENCE

28.     Plaintiff realleges the allegations above as if fully set forth herein.

29.     At all times herein relevant, Defendant Change owed Plaintiff and Class Members a duty of care, inter alia, to act with reasonable care to secure and safeguard that their claims and revenue cycle services would be processed on time and for the correct amounts. Defendant Change took on this obligation to use its computer systems and networks to ensure that proper payments of claims were to be made.

30.     Among these duties, Defendant Change was expected to provide claims processing and revenue cycle services to Plaintiff using safe and secure computer systems and networks.

8

31.    Defendant Change owed a duty of care to not subject Plaintiff and Class Members to an unreasonable risk of harm because Plaintiff and Class Members were foreseeable and probable victims of any inadequate security practices.

32.    Defendant Change knew or should have known of the vulnerabilities of their data security systems and the importance of adequate security. Defendant knew or should have known about numerous well-publicized data breaches.

33.    Defendant Change knew or should have known that their data systems and networks did not adequately safeguard the claims processing and revenue cycle services.

34.    Only Defendant Change was in the position to ensure that its systems and protocols were sufficient to protect Plaintiff's and Class Members' information.

35.    Defendant Change breached its duties to Plaintiff and Class Members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard the claims processing and revenue cycle services.

36.    Because Defendant Change knew that a breach of its systems could damage numerous individuals, including Plaintiff and Class Members, Defendant had a duty to adequately protect its data systems.

37.    Plaintiff's and Class Members' willingness to entrust Defendant Change with their processing needs was predicated on the understanding that Defendant would take adequate security precautions.

38.    Defendant Change also had independent duties under state and federal laws that required Defendant to reasonably safeguard Plaintiff's and Class Members' PHI/PII and promptly notify them about the Data Breach.

9

39.     The law imposes an affirmative duty on Defendant Change to timely disclose the unauthorized access and Defendant's inability to process claims correctly and/or timely. Defendant Change failed to provide timely and clear notification of the Data Breach to Plaintiff and Class Members. Defendant Change's failure prevented Plaintiff and Class Members from taking meaningful, proactive steps to secure processing needs, resulting in damages to Plaintiff and Class Members.

40.     Defendant's wrongful actions, inactions, and omissions constituted (and continue to constitute) common law negligence.

41.     Defendant Change's willful failure to abide by their duties was wrongful, reckless and/or grossly negligent in light of the foreseeable risks and known threats.

42.     As a proximate and foreseeable result of Defendant Change's grossly negligent conduct, Plaintiff and Class Members have suffered damages and are at imminent risk of additional harm and damages.

43.     The damages Plaintiff and Class Members suffered (as alleged above) and will continue to suffer were and are the direct and proximate result of Defendant Change's grossly negligent conduct.

## COUNT II
## BREACH OF CONFIDENCE

44.     Plaintiff realleges the allegations above as if fully set forth herein.

45.     During Plaintiff's and Class Members' interactions with Defendant Change, Defendant was fully aware of the important and confidential nature of the processing materials that Plaintiff and Class Members provided to Defendant.

46.     As alleged herein and above, Defendant Change's relationship with Plaintiff and Class Members was governed by promises and expectations that Plaintiff and Class Members'

10

claims processing and revenue cycle service materials would be kept in confidence, and would not be accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by unauthorized third-parties.

47.     Plaintiff and Class Members provided their respective claims processing and revenue cycle services to Defendant Change with the explicit and implicit understandings that Defendant would protect and not permit the materials to be accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by unauthorized third-parties.

48.     Plaintiff and Class Members also provided their claims processing and revenue cycle service materials to Defendant Change with the explicit and implicit understanding that Defendant would take precautions to protect those materials from unauthorized access, acquisition, appropriation, disclosure, encumbrance, exfiltration, release, theft, use, and/or viewing, such as following basic principles of protecting their networks and data systems and make ensure that claim payments related to the materials would be promptly paid and satisfied.

49.     Due to Defendant Change's failure to prevent, detect and avoid the subject Data Breach from occurring by, inter alia, not following best information security practices to secure Plaintiff's and Class Members' claim processing, Plaintiff's and Class Members' materials were encumbered by and, not able to be used in the manner expected.

50.     As a direct and proximate cause of Defendant Change's actions and/or omissions, Plaintiff and Class Members have suffered damages, as alleged herein.

51.     But for Defendant Change's failure to maintain and protect Plaintiff's and Class Members' claims processing and revenue cycle services materials in violation of the parties' understanding of confidence, their materials would not have been accessed by, acquired by,

11

appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by unauthorized third-parties.

52.     The injury and harm Plaintiff and Class Members suffered and will continue to suffer was the reasonably foreseeable result of Defendant Change's unauthorized misuse of Plaintiff's and Class Members' materials. Defendant knew its data systems and protocols for accepting and securing Plaintiff's and Class Members' materials had security vulnerabilities that placed Plaintiff's and Class Members' materials in jeopardy.

**COUNT III**
**BREACH OF IMPLIED CONTRACT**

53.     Plaintiff realleges the allegations above as if fully set forth herein.

54.     Through their course of conduct, Defendant Change, Plaintiff, and Class Members entered into implied contracts for Defendant to implement data security and data processing functions adequate to safeguard and protect Plaintiff's and Class Members' claims processing and revenue cycle services materials.

55.     Defendant Change required Plaintiff and Class Members to provide and entrust their claims processing and revenue cycle services materials as a condition of obtaining Defendant's services.

56.     Defendant Change solicited and invited Plaintiff and Class Members to provide their claims processing and revenue cycle service materials as part of Defendant's regular business practices. Plaintiff and Class Members accepted Defendant's offers and provided their claim processing materials to Defendant.

57.     Plaintiff and Class Members provided and entrusted their claims processing and revenue cycle services materials to Defendant Change. In so doing, Plaintiff and Class Members

entered into implied contracts with Defendant by which Defendant agreed to ensure that Plaintiffs processing materials would not be defective or compromised.

58.     A meeting of the minds occurred when Plaintiff and Class Members agreed to, and did, provide their claims processing and revenue cycle services materials to Defendant Change, in exchange for, amongst other things, the protection of their materials.

59.     Plaintiff and Class Members fully performed their obligations under the implied contracts with Defendant Change.

60.     Defendant Change's breaches caused economic and non-economic harm to Plaintiff and Class Members.

61.     Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach.

62.     Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, e.g., (i) strengthen its data security systems and monitoring procedures and (ii) submit to future annual audits of those systems and monitoring procedures.

## COUNT IV
## BREACH OF FIDUCIARY DUTY

63.     Plaintiff realleges the allegations above as if fully set forth herein.

64.     In light of the special relationship between Defendant Change and Plaintiff and Class Members, whereby Defendant became the guardian of Plaintiff's and Class Members' claim processing materials, Defendant became a fiduciary by its undertaking and guardianship of the materials to act primarily for Plaintiff and Class Members.

65.     Defendant Change has a fiduciary duty to act for the benefit of Plaintiff and Class Members upon matters within the scope of its relationship with Plaintiff and Class Members, in particular, to keep their claims processing and revenue cycle service materials secure.

13

66.     Defendant Change breached its fiduciary duties to Plaintiff and Class Members by failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable and practicable period of time.

67.     Defendant Change breached its fiduciary duties to Plaintiff and Class Members by failing to encrypt and otherwise protect the integrity of the systems containing Plaintiff's and Class Members' claims processing and revenue cycle service materials.

68.     Defendant Change breached its fiduciary duties to Plaintiff and Class Members by failing to timely notify and/or warn Plaintiff and Class Members of the Data Breach.

69.     Defendant Change breached its fiduciary duties to Plaintiff and Class Members by shutting down systems necessary to process claims and extend payments for medical services provided by Plaintiff and Class Members.

70.     As a direct and proximate result of Defendant Change's breaches of its fiduciary duties, Plaintiff and Class Members have suffered and will continue to suffer injuries.

71.     As a direct and proximate result of Defendant's breach of fiduciary duty, Plaintiff and Class Members are entitled to and do demand actual, consequential and nominal damages, injunctive relief, and all other relief allowed by law.

## COUNT V
## UNJUST ENRICHMENT

72.     Plaintiff realleges the allegations above as if fully set forth herein. This Count is pled in the alternative to the Breach of Implied Contract Count above.

73.     Upon information and belief, Defendant Change funds its data-security measures entirely from its general revenue, including payments made by or on behalf of Plaintiff and Class Members.

14

74.     As such, a portion of the payments made by or on behalf of Plaintiff and Class Members is to be used to provide a reasonable level of data security, and the amount of each payment allocated to data security is known to Defendant Change.

75.     Plaintiff and Class Members conferred a monetary benefit to Defendant Change. Specifically, they purchased goods and services from Defendant and/or their agents and provided Defendant with their claims processing and revenue cycle service materials. In exchange, Plaintiff and Class Members should have received from Defendant the goods and services that were the subject of the transaction and have their processing and service materials protected with adequate data security.

76.     Defendant Change knew that Plaintiff and Class Members conferred a benefit which Defendant accepted. Defendant profited from these transactions and used the claims processing and revenue cycle service materials of Plaintiff and Class Members for business purposes.

77.     Defendant Change enriched themselves by saving the costs it reasonably should have expended in data-security measures to secure Plaintiff's and Class Members' claims processing materials. Instead of providing a reasonable level of security that would have prevented the hacking incident, Defendant instead calculated to increase their own profits at the expense of Plaintiff and Class Members.

78.     Under the principles of equity and good conscience, Defendant Change should not be permitted to retain the money belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures mandated by industry standards.

79.     If Plaintiff and Class Members knew that Defendant Change had not reasonably secured their claims processing materials, they would not have agreed to provide their PHI/PII to Defendant.

80.     As a direct and proximate result of Defendant Change's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

81.     Defendant Change should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that it unjustly received from them. In the alternative, Defendant should be compelled to refund the amounts that Plaintiff and Class Members overpaid for Defendant's services.

## COUNT VI
## LOSS OF USE

82.     Plaintiff realleges the allegations above as if fully set forth herein.

83.     At all times herein relevant, Plaintiff and Class Members relayed on prompt processing and payment of claims by Defendant Change in order for Plaintiff and Class Members to keep their businesses alive. Plaintiff and Class Members have and are currently being deprived of these funds, and are unable to use such funds to sustain their businesses and practices.

84.     As a direct and proximate result of Defendant Change's conduct, Plaintiff and Class Members have suffered and will continue to suffer from the loss of use of these deprived funds. Defendant Change should be compelled to compensate Plaintiff and Class Members for the extended period in which they have been deprived use of these deprived funds due to Defendant's inability to process claims and extend payments for services already provided by Plaintiff and Class Members.

16

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, and each member of the proposed Class respectfully requests that the Court enter judgment in their favor and for the following specific relief against Defendant Change as follows:

1.      That the Court declare, adjudge, and decree that this action is a proper class action and certify each of the proposed Class and/or any other appropriate Class, including the appointment of Plaintiff's counsel as Class Counsel;

2.      For an award of damages, including actual, nominal, and consequential damages, as allowed by law in an amount to be determined;

3.      That the Court enjoin Defendant Change, ordering it to cease and desist from similar unlawful activities;

4.      For equitable relief enjoining Defendant Change from engaging in the wrongful conduct complained of herein and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and Class Members;

5.      For injunctive relief requested by Plaintiff, including but not limited to injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members;

6.      For prejudgment interest on all amounts awarded, at the prevailing legal rate;

7.      For an award of attorney's fees, costs, and litigation expenses, as allowed by law; and

8.      For all other Orders, findings and determinations identified and sought in this Complaint.

17

## **JURY DEMAND**

Plaintiff, individually and on behalf of the Class, hereby demands a trial by jury for all issues triable by jury.

Respectfully submitted,

David J. Hodge, BPR# 037353
*Attorney for Plaintiff*

*Of Counsel:*

MORRIS, KING & HODGE, P.C.
200 Pratt Avenue, NE
Huntsville, Alabama 35801
256-536-0588 / Fax 256-533-1504
Email: dhodge@mkhlawyers.com

F. Braxton Terry, BPR #018248
*Attorney for Plaintiff*

*Of Counsel:*

THE TERRY LAW FIRM
116 East Main Street
P.O. Box 724
Morristown, TN 37815
423-586-5800 / Fax 423-587-4717
brack@terry-lawfrim.com

Mark S. Stapleton, BPR #014671

*Of Counsel:*

STAPLETON LAW OFFICE
225 S. Depot Street
Rogersville, TN 37857-3327
423-546-4046 / Fax 423-921-9104
Email: mark@stapletonlawoffice.com

18

E-FILED
8/15/2024 9:01 PM
CLERK & MASTER
DAVIDSON CO. CHANCERY CT.

# EXHIBIT  B

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| IN RE:  Change Healthcare, Inc. Customer Data Security Breach Litigation | MDL No. 24-3108 (DWF/DJF) |
| This Document Relates to All Actions | **PRETRIAL ORDER NO. 1**<br>**(Establishing Preliminary Procedures and Appointing Temporary Interim Counsel)** |

The Court finds that the civil actions transferred to this Court as part of the MDL merit special attention as complex litigation pending a Status Conference which is set for Tuesday, September 17, 2024 at 8:30 a.m. in Courtroom 3C, Third Floor, Warren E. Burger Federal Building and United States Courthouse, 316 North Robert Street, St Paul, Minnesota 55101.[1]  Pending that status conference, the Court hereby enters the following:

**ORDER**

1.      **APPLICABILITY OF THIS ORDER** – Prior to the First Status Conference and the entry of a comprehensive order governing all further proceedings in this case, the provisions of this Order shall govern the practice and procedure in those actions that were transferred to this Court by the Judicial Panel on Multidistrict Litigation ("JPML") pursuant to its Order of June 7, 2024, as well as all related actions originally

---

[1]      For reference, the Court refers the parties to the Court's MDL webpage:
https://www.mnd.uscourts.gov/content/change-healthcare-inc-data-breach.

filed, transferred to or removed to this Court.  This Order shall also apply to any

"tag-along actions" later filed in, removed to or transferred to this Court, absent further

order of this Court.  Hereafter, those actions are referred to as the "Cases."

2.     **CONSOLIDATION** – The Cases are consolidated for pretrial purposes

only.  Any "tag-along" actions later filed in, removed to or transferred to this Court, or

directly filed in the District of Minnesota, will automatically be consolidated with this

action without the necessity of future motions or orders.  Consolidation of the Cases is

without prejudice to the later determination of whether subclasses or separate litigation

"tracks" shall be created.  The Court acknowledges the Panel's recognition of the

argument that two separate tracks or types of actions may exist within this MDL – the

"patient" track and the "provider" track – and agrees with the Panel's determination that

this Court "may employ any number of techniques . . . to manage the litigation."  JPML

Transfer Order 3108.  The Court requests that the proposed leadership papers set forth the

management of these two tracks of litigation.  This consolidation, however, does not

constitute a determination that the Cases should be consolidated for trial, nor does it have

the effect of making any person or entity a party to any action in which he, she or it has

not been named, served, or added in accordance with the Federal Rules of Civil

Procedure.

3.     **SERVICE** – Prior to the First Status Conference, service of all papers

relating to the initial conference shall be made on counsel of record appearing in the

Cases.  The docket is the official record of the service list.  Plaintiffs' Temporary Interim

Lead Class Counsel and Defendants' counsel are responsible for assuring service of this

Order and all future documents on opposing *pro se* parties. This paragraph does not pertain to or alter the requirements for service of process of any summons and/or complaint.

4.     **EXTENSION AND STAY** – Pursuant to the Court's Order dated June 20, 2024 (Doc. No. 7), each Defendant is granted an indefinite extension of time for responding by motion or answer to the complaint(s) until this Court, by subsequent order, sets a date by which Defendants shall respond by motion, answer or otherwise. Pending the First Status Conference and further orders of this Court, all outstanding discovery proceedings are stayed, and no further discovery shall be initiated.

5.     **PREVIOUS ORDERS** – Any orders, including protective orders, previously entered by this Court or any transferor court, shall remain in full effect unless modified by this Court.

6.     **MASTER DOCKET FILE** – Any pleading or paper shall be filed electronically according to this district's *CM/ECF Civil Manual For New Users* guide, available at https://www.mnd.uscourts.gov/reference-guides-and-procedures. The Clerk of court will maintain a master docket case under the style "IN RE: CHANGE HEALTHCARE, INC. CUSTOMER DATA SECURITY BREACH LITIGATION" and the identification "MDL No. 24-3108". All papers filed in these actions shall bear the identification "MDL No. 24-3108". When a pleading is intended to be applicable to all actions, this shall be indicated by the words: "This Document Relates to ALL ACTIONS" and shall be filed electronically in 24-md-3108. When a pleading is intended to apply to less than all cases, this Court's civil action number for each individual case to

3

which the document(s) relate shall appear immediately after the words: "This Document

Relates to . . ." and shall be filed electronically in each member case to which the

document(s) applied. The following is a sample of the pleading style:

In re:  CHANGE HEALTHCARE, INC.          MDL No. 24-3108 (DWF/DJF)
CUSTOMER DATA SECURITY
BREACH LITIGATION
_____

This Document Relates to . . . .

7.    **FILINGS**– Any Plaintiff whose case would be subject to transfer into this

MDL may file their case directly in the District of Minnesota for pretrial proceedings

only, subject to the provisions in this Order.  Any Plaintiff that files a case in this District

for inclusion in this MDL must note on the civil cover sheet that the case is related to

MDL No. 3108.  Nothing in this Order shall preclude the Parties from agreeing, at a

future date, to try cases filed pursuant to this Order in this District.

Any pleading or paper filed in any of the Cases shall be filed with the Clerk of this

Court and not with the transferor district.

Any pleading or paper shall be filed electronically according to this District's ECF

Civil Manual for New Users and Civil ECF Procedures Guide, available at CM/ECF

Reports Guide (uscourts.gov).  Initiating documents (*e.g.*, original complaints, notices of

removal), together with a civil cover sheet and the filing fee, shall be filed in the

individual action only.  All other pleadings, motions, and documents that relate to an

individual case shall be filed in both the main MDL No. 3108 and the individual case.

Documents relating to all cases shall be filed in the main MDL only.

8.      **DOCKETING** – When an action that properly belongs as a part of IN RE: CHANGE HEALTHCARE, INC. CUSTOMER DATA SECURITY BREACH LITIGATION is filed in the District of Minnesota or transferred here from another court, the Clerk of this Court shall:

a.      File a copy of this Order in the separate file for such action, and

b.      Make an appropriate entry on the master docket sheet.

9.      **APPEARANCES** – Counsel who appeared in a transferor court prior to transfer by the JPML need not enter an additional appearance before this Court. Attorneys admitted to practice and in good standing in any United States District Court are admitted *pro hac vice* in this litigation, and the requirements of Local Rule of Civil Procedure 83.5(d) are waived.  Association of local counsel is not required.  Non-resident counsel desiring to register for ECF access in this case should complete and file the Electronic Case Filing System Attorney Registration Form ("Registration Form") available at MDL Registration Form | District of Minnesota | United States District Court (uscourts.gov).  After completing the Registration Form, counsel will receive a CM/ECF log-in enabling them to electronically file the Notice.

10.     **PRESERVATION OF EVIDENCE –** All parties and their counsel shall preserve evidence that may be relevant to this action as required by applicable law.  Each party shall take reasonable steps to preserve all documents, data and tangible things, potentially relevant to the subject matter of these Cases.

11. **INTERIM LEADERSHIP STRUCTURE** – To act on behalf of the
Plaintiffs on an interim basis which, as of the date of this Order, shall be until at least the
First Status Conference, which the Court has referenced above, the Court hereby
designates the following counsel:

Daniel E. Gustafson
Gustafson Gluek PLLC
Canadian Pacific Plaza
Suite 2600
120 South Sixth Street
Minneapolis, MN 55402
Office Phone: (612) 333-8844
dgustafson@gustafsongluek.com

Temporary interim counsel shall, absent further order of this Court:

a.   **Service List:**  Maintain and distribute to co-counsel and to

Defendants' counsel an up-to-date service list; and

b.   **Accept Service:**  Plaintiffs' counsel shall receive and, as

appropriate, distribute to co-counsel Orders from the Court and documents

from opposing parties and counsel.

Until the Court appoints Interim Lead Class Counsel, Temporary Lead
Counsel shall work to facilitate discussions about a potential consensus leadership
structure, serve as a contact point for the Court and Defense Counsel and ensure that
all counsel receive Orders from the Court and documents from opposing parties.

12. **POTENTIAL LEADERSHIP STRUCTURE –** Prior to the First Status
Conference, counsel for the Plaintiffs shall consult with each other in a good faith effort

to reach a general consensus on the organization of Plaintiffs' counsel to lead this MDL litigation.

To the extent a general consensus as to structure and leadership is reached, Plaintiffs' Temporary Lead Counsel shall submit the consensus recommendation to the Court no later than ten days prior to the First Status Conference. Plaintiffs' recommendation shall outline the structure of the leadership and include each nominee's name and firm affiliation, curriculum vitae or educational background, licensing status, a short list of relevant experience with cases in similar areas, and short background statement.

To the extent consensus is not reached, any applications for appointment of leadership (either a slate or individual applications) shall be due no later than seven days prior to the First Status Conference. Applications for leadership shall be filed via email to the Court at frank_chambers@mnd.uscourts.gov and shall be limited to ten (10) pages double spaced. Applications may attach one exhibit per member, with each individual exhibit not to exceed more than ten (10) pages. No replies to leadership applications shall be permitted. The Court may, at its discretion, schedule interviews or any other procedure it deems necessary as part of an application procedure in taking an active role in selecting counsel. These recommendations should not be filed with the Clerk of Court, but instead should be submitted to the Court via email as noted above.

13.   **COMMUNICATIONS** – Unless otherwise ordered, counsel must communicate with the Court in writing, with courtesy copies to all counsel.

Communications with the Court and submissions which are not to be filed with the Clerk may be sent to frank_chambers@mnd.uscourts.gov.

14.    **FIRST STATUS CONFERENCE**

As noted above, the First Status Conference is set for September 17, 2024.  The Court asks that counsel for Plaintiffs and Defendants meet and confer about possible agenda items and submit a joint list to the Court five days before the First Status Conference via email to frank_chambers@mnd.uscourts.gov.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Clerk of the Judicial Panel on Multidistrict Litigation, and counsel of record.


Dated:  August 14, 2024                    s/Donovan W. Frank_____
                                           DONOVAN W. FRANK
                                           United States District Judge

E-FILED
8/15/2024 9:01 PM
CLERK & MASTER
DAVIDSON CO. CHANCERY CT.

# EXHIBIT  C

2003 WL 23099685
Only the Westlaw citation is currently available.

SEE COURT OF APPEALS RULES 11 AND 12

Court of Appeals of Tennessee.

FIDELITY & GUARANTY LIFE
INSURANCE COMPANY
v.
Patricia Lee Futrell CORLEY, Estate of
Robert Leon Corley, and Cheryl Ann
Jones Patterson.

No. W2002-02633-COA-R9-CV.
|
Sept. 17, 2003 Session.
|
Dec. 31, 2003.

An Interlocutory Appeal from the Circuit Court for Henry
County, No.1973; Julian P. Guinn, Judge.

**Attorneys and Law Firms**

Robert I. Thomason, Jr., and Tracy L. Harrell, Waverly,
Tennessee, for the appellant, Cheryl Ann Jones Patterson.

Clifford K. McGown, Jr., Waverly, Tennessee, for the
appellees, Patricia Lee Futrell Corley and Estate of Robert
Leon Corley.

Todd A. Rose, Paris, Tennessee, for the appellee, Fidelity
& Guaranty Life Insurance Company.

HOLLY M. KIRBY, J., delivered the opinion of the court,
in which ALAN E. HIGHERS, J., and DAVID R.
FARMER, J., joined.

**OPINION**

HOLLY M. KIRBY, J.

**\*1** This is an interpleader action involving the doctrine of
former suit pending. In 1995, the decedent purchased a
term life insurance policy from the defendant insurance
company and named his wife as the primary beneficiary.
In 1999, the decedent changed the named beneficiary
from his wife to another woman. In September 2001, the
decedent died. At his death, the other woman was still the
named beneficiary under the policy. The named
beneficiary filed a complaint in the chancery court in
Humphreys County against the insurance company
seeking payment of the proceeds of the life insurance
policy. The wife, however, had previously made a claim
with the insurance company for the same proceeds.
Consequently, less than two weeks after the first lawsuit
was filed, the insurance company filed the interpleader
action below in Henry County against the wife, the named
beneficiary, and the estate, seeking a determination of the
rightful beneficiary of the proceeds. The named
beneficiary moved for dismissal of the interpleader action,
based on the doctrine of prior suit pending. The trial court
denied that motion, finding that the doctrine of prior suit
pending did not apply in this situation. The named
beneficiary was granted permission to file this
interlocutory appeal from the order denying the motion to
dismiss. We now reverse, concluding that this
interpleader action should be dismissed based on the
doctrine of prior suit pending.

Robert Leon Corley ("Corley") and his wife,
Respondent/Appellee Patricia Lee Futrell Corley
("Wife"), were married in August 1967. During their
marriage, they lived in Henry County, Tennessee. In
1994, Corley purchased a $75,000 term life insurance
policy on his own life from Petitioner/Appellee Fidelity &
Guaranty Life Insurance Company ("F & G"), naming
Wife as the primary beneficiary. The premiums for that
policy were paid by direct withdrawal from their joint
bank account.

In January 1999, Corley moved out of his marital
residence and moved in with Respondent/Appellant
Cheryl Ann Jones Patterson ("Patterson") in her home in
Humphreys County, Tennessee. In June 1999, Corley
changed the primary beneficiary of his F & G life
insurance policy from Wife to Patterson, and notified the
company of his change of address. At some point, Corley
learned that he was suffering from cancer. In January
2000, Corley moved back home to live with Wife. Corley
lived with Wife in their Henry County residence until his
death from cancer on September 1, 2001. However, at the
time of Corley's death, Patterson remained the named
beneficiary on his life insurance policy.[1]

---

[1]     Wife's briefs on appeal refer to Patterson as Corley's
        "paramour," while Patterson's briefs refer to her as the
        "named beneficiary."

As the named beneficiary under Corley's life insurance policy, Patterson notified F & G that she sought to claim the $75,000 in life insurance proceeds. Wife notified F & G that she asserted a claim to the life insurance proceeds as well, under theories of fraudulent change of beneficiary or constructive or resulting trusts. On December 14, 2001, Patterson filed a lawsuit in Humphreys County Chancery Court against F & G to recover the life insurance proceeds as the named beneficiary on the policy. On December 26, 2001, one day before F & G was served with process in the Humphreys County Chancery Court lawsuit, F & G filed an interpleader action in the Henry County Circuit Court below, naming Patterson, Wife, and Corley's estate as defendants. F & G sought to deposit the $75,000 in life insurance proceeds with the clerk of the Henry County Circuit Court and to have the trial court determine the lawful beneficiary of the proceeds. F & G's complaint also requested the trial court to "enjoin the Respondents from commencing any other actions regarding the [s]ubject matter of this action" and dismiss F & G "with the assurance that it will not be subjected to double or multiple claims arising out of the subject matter of this action."

**\*2** On February 14, 2002, Patterson filed a notice of prior suit pending and a motion to dismiss in the Henry County trial court below, asserting that the chancery court in Humphreys County had exclusive jurisdiction over the matter. In response, F & G argued that the doctrine of prior suit pending did not apply to the Henry County Circuit Court lawsuit because, while all necessary and indispensable parties were before the Henry County Circuit Court, two parties-namely, Wife and Corley's estate-were not before the Humphreys County Chancery Court. Therefore, F & G argued, the doctrine of prior suit pending would be inapplicable because the parties in both suits were not identical, and the Henry County action should not be dismissed on this basis. Wife joined F & G in contending that the interpleader action should not be dismissed, arguing that venue was proper in Henry County because all of the fact witnesses lived there. Wife claimed that maintaining the lawsuit in Henry County, as opposed to Humphreys County, was more convenient and practical. Wife further argued that it was improper for Patterson to fail to name Wife as a defendant in the Humphreys County action, despite Patterson's knowledge of Wife's competing claim to the insurance proceeds.

On April 3, 2002, the trial court ruled on Patterson's motion to dismiss. The trial court first noted that Patterson's filing of the Humphreys County lawsuit was "precisely correct," and observed that the Humphreys County Chancery Court and the Henry County Circuit Court had concurrent jurisdiction over the matter. The trial court then concluded that, although the Humphreys County lawsuit was filed first, Patterson's motion to dismiss should be denied because the case had more contacts with Henry County than with Humphreys County, and because "[a]ll parties to the dispute are presently before the [Henry County] Circuit Court." Therefore, the trial court rejected Patterson's reliance on the doctrine of prior suit pending and denied her motion to dismiss. On May 3, 2002, Patterson filed a motion to reconsider, arguing that Corley's estate was not properly before the trial court at the time the trial court ruled on her motion to dismiss. The trial court reconsidered the matter, but on May 31, 2002, reiterated its conclusion that "the case has more contacts with Henry County, Tennessee than with Humphreys County, Tennessee, and therefore this Court is not deprived of jurisdiction even though the Chancery Court case in Humphreys County was filed prior to this case." For those reasons, the trial court again denied Patterson's motion to dismiss. Patterson was granted permission by the trial court and by this Court to file an interlocutory appeal of the trial court's denial of her motion to dismiss.

On appeal, Patterson makes the same argument as she made in the trial court, that the application of the doctrine of prior suit pending requires that this lawsuit be dismissed. F & G, Wife, and the Corley estate argue that the trial court's denial of Patterson's motion to dismiss should be affirmed, because the parties were not the same in both lawsuits, that is, both Wife and the estate were properly before the trial court below, but were not parties in the lawsuit in the Humphreys County Chancery Court. Therefore, because the parties were not the same in both lawsuits, the respondents argue, the doctrine of prior suit pending is inapplicable.

**\*3** The facts pertinent to this appeal are undisputed. The only issue raised on appeal relates to the applicability of the doctrine of prior suit pending, which is a question of law. Consequently, our review is *de novo* on the record, with no presumption of correctness in the trial court's decision. *State v. Levandowski,* 955 S.W.2d 603, 604 (Tenn.1997).

The doctrine of prior suit pending, also called the doctrine of former suit pending, "has prevailed in this jurisdiction for over one hundred years." *Metropolitan Development & Housing Agency v. Brown Stove Works,* 637 S.W.2d 876, 878 (Tenn.Ct.App.1982) (hereinafter "*MDHA* "). Under that doctrine, where two courts have concurrent jurisdiction over a matter, the court first taking jurisdiction acquires exclusive jurisdiction over the

matter, and the subsequent action must be dismissed. *See id.* The court in *MDHA* explained:

> The rule has been stated in slightly different terms over the years but with a very uniform meaning. As an example, in *American Lava Corp. v. Savena,* 476 S.W.2d 639, 640 (Tenn.1972), it was held that the authority of the first court acquiring jurisdiction of the subject matter and the parties continues until the matters in issue are disposed of, *and no court of coordinate authority is at liberty to interfere with its action.* In *Kizer v. Bellar,* 192 Tenn. 540, 546, 241 S.W.2d 561, 563 (1951), the holding was that when courts have concurrent jurisdiction, the one that first acquires jurisdiction thereby acquires exclusive jurisdiction, and only the first suit can be allowed to stand. In *Casone v. State,* 176 Tenn. 279, 285, 140 S.W.2d 1081, 1083 (1940), the court noted "that when two courts have concurrent jurisdiction of a particular subject matter that tribunal which first obtains jurisdiction retains it."

*Id.* at 878-79; *see Murphy v. Jackson,* No. 02A01-9510-CV-00213, 1996 WL 601597, at *3 (Tenn.Ct.App. Oct. 22, 1996) ("[t]he court which first takes jurisdiction thereby acquires exclusive jurisdiction of the case, and it is appropriate for the second case to be dismissed.").

In *Cockburn v. Howard Johnson, Inc.,* 385 S.W.2d 101 (Tenn .1964), the Tennessee Supreme Court explained that, when a party seeks to avoid a second lawsuit on the same subject matter in a court of concurrent jurisdiction, that party should file a "plea in abatement" (now called a motion to dismiss) to have the second suit dismissed based on the doctrine of prior suit pending. *Cockburn,* 385 S.W.2d at 102; *see* Tenn. R. Civ. P. 7 .03, 41.02. The Supreme Court enumerated the factors necessary for a dismissal, or a granting of the plea in abatement, based on the doctrine of former suit pending:

> The essentials of such a plea are that the two suits must involve the identical subject matter and be between the same parties and the former suit must be pending in a court of this state having jurisdiction of the subject matter and the parties. A plea, whether it be in abatement or in bar, must contain these elements.

*\*4 Cockburn,* 385 S.W.2d at 102 (quoting Caruthers, History of a Lawsuit, Sec. 181, Higgins & Crownover, Tennessee Procedure in Law Cases, Sec. 518(6)); *see also Robinson v. Easter,* 344 S.W.2d 365, 366 (Tenn.1961) (stating that, where two courts have concurrent jurisdiction over a case, "the court which first takes jurisdiction thereby acquires exclusive jurisdiction of the case, and a demurrer will lie upon that ground"). This Court has recognized that the doctrine applies not only to

issues actually raised in the first suit, but also to issues that could have been raised regarding the same subject matter:

> Indeed, this rule has this further extension, that all issues which are made or might be made concerning the same subject matter must be determined in that Court which acquires jurisdiction first. The test of the question of subject matter is whether the judgment in the first suit could be pleaded to the second suit in bar as former adjudication.

*Id.* Thus, to determine whether the same subject matter is involved in both suits, a court must consider whether a judgment in the first suit would bar litigation of an issue in the second suit under *res judicata* principles.

In the instant case, many of the essential elements of the doctrine of prior suit pending are readily apparent. Both the Humphreys County Chancery Court and the Henry County Circuit Court have jurisdiction over the case filed in each respective court. It is undisputed that the same subject matter is involved in both lawsuits. In the Humphreys County lawsuit, Patterson sought to recover the $75,000 in life insurance proceeds from F & G, and in the Henry County lawsuit, F & G sought to deposit those same proceeds with the clerk of the court in order to avoid "double or multiple claims arising out of the subject matter of this action." Indeed, that same interpleader action could have been raised as a counterclaim in the Humphreys County action, but F & G, having not yet been served in the Humphreys County action, filed a separate lawsuit in Henry County. *See* Tenn. R. Civ. P. 22.01. The decision on whether to apply the doctrine turns on the "same parties" requirement. The parties in the Humphreys County suit and the Henry County suit are not identical because, although Patterson and F & G are involved in both lawsuits, Wife and Corley's estate are not yet before the court in Humphreys County.

Although we have found no Tennessee caselaw addressing the situation in the case at bar, Tennessee cases are instructive. Patterson acknowledges that, "strictly speaking," the parties in the two cases are not identical. She argues, however, that Tennessee courts have found that the "same parties" requirement of the doctrine was met where the parties in both suits were "in effect the same." For example, in *Cockburn v. Howard Johnson, supra,* the plaintiff filed a lawsuit arising out of a motor vehicle accident in federal district court against Roosevelt Buchanan, Hertz Corporation, and Howard Johnson's Inc. Later, the same plaintiff filed a lawsuit arising out of the same accident in Tennessee state court against the same defendants plus Howard Johnson's, Inc. of Florida. *Cockburn,* 385 S.W.2d at 102. Buchanan and Hertz Corporation filed a plea in abatement in the

Tennessee lawsuit, asserting that the state suit should be dismissed based on the prior suit pending in federal court on the same subject matter. The Tennessee Supreme Court observed that "[t]he defendants in these two cases are not identical but are in effect the same. The liability of defendants, Howard Johnson's, Inc. or Howard Johnson's Inc. of Florida, will depend upon the liability of the defendant [Buchanan] as their agent, servant or employee." *Id.* Therefore, although application of the doctrine of prior suit pending was found to be inappropriate on other grounds,[2] the Court noted that the "same parties" requirement could be met if the parties were "in effect the same." *Id.*

[2] The Court held that the doctrine of prior suit pending did not apply because the first lawsuit was filed in a federal district court in Tennessee, which was not a "court in this state." *Cockburn,* 385 S.W.2d at 103.

**\*5** In *Roy v. Diamond,* 16 S.W.3d 783 (Tenn.Ct.App.1999), two beneficiaries of a will, Sam and Elizabeth Dawkins, filed a lawsuit *pro se* in Madison County Circuit Court against an attorney for damages arising out of the attorney's actions as executor and legal counsel for the decedent's estate. Later, Sam Dawkins and Joy Roy filed a separate action, represented by counsel, in the same court against the attorney based on the same alleged misconduct. *Roy,* 16 S.W.3d at 786. In the second lawsuit, the attorney filed a motion to dismiss, asserting the doctrine of prior suit pending. The trial court denied that motion. *See id.* at 789. Eventually, the *pro se* plaintiffs non-suited the first circuit court action,. The second lawsuit went to trial, resulting in a judgment favorable to the plaintiffs. *Id.* at 786. The attorney appealed, arguing *inter alia* that the trial court erred in failing to dismiss the second lawsuit based on the doctrine of prior suit pending. *Id.* at 789. The appellate court noted that the subject matter was identical in both suits and that both lawsuits were filed in the same court. *Id.* at 790. The appellate court addressed the fact that the parties were not identical in both lawsuits:

> One seeming problem [with the application of the doctrine of prior suit pending] is the fact that the plaintiffs in the two cases were different. In the first case, Sam and Elizabeth Dawkins were the plaintiffs, while Sam Dawkins and Joy Roy were the plaintiffs in the second case. *Even though the plaintiffs are not identical in both cases, we consider them sufficiently similar so as to make no practical difference. See Cockburn,* 385 S.W.2d at 102 ("The defendants in these two cases are not identical but are in effect the same").

*Id.* (emphasis added). Thus, the fact that the plaintiffs in

both suits were not identical was not a bar to the application of the doctrine of prior suit pending, given the fact that the cases involved the same subject matter, both courts had jurisdiction over the parties and the subject matter, and the parties were "sufficiently similar." *Id.*

In *Murphy v. Jackson, supra,* the plaintiff sued the defendant corporation and its officers in circuit court to collect proceeds due from the defendant corporation to a shareholder who had assigned his rights to the plaintiff. The defendants counterclaimed by filing an interpleader action against the plaintiff and Omega Investment Partners, an entity that also asserted a right to the proceeds due to the shareholder. *Murphy,* 1996 WL 601597, at \*1. Omega, the newly added counter-defendant, filed a motion to dismiss the action, claiming that it held a judgment against the shareholder in a previous chancery court lawsuit and that, to collect on the judgment, it had issued garnishments in the chancery court against all of the assets belonging to the shareholder, including the proceeds at issue. Thus, because the proceeds sought by the plaintiff were already the subject of chancery court proceedings, Omega argued, the circuit court had no subject matter jurisdiction over the disposition of the proceeds. The trial court granted Omega's motion to dismiss and ordered that all funds deposited into the circuit court by the defendants be deposited into the chancery court. *Id.* at \*2. This Court affirmed the decision of the trial court, relying on the doctrine of prior suit pending, even though the parties in the chancery court proceedings and the circuit court proceedings were not identical. Without mentioning the "same parties" requirement, the court stated simply that, "[b]ecause the chancery court first acquired jurisdiction regarding the disposition of the proceeds ..., the chancery court has jurisdiction over any claims to these proceeds." *Id.* at \*3.

**\*6** Thus, although cases discussing the elements of the doctrine of prior suit pending refer to both lawsuits involving the "same parties," the requirements of the doctrine may be met where the subject matter in both lawsuits is identical, and the parties involved in each are "sufficiently similar so as to make no practical difference." *Roy,* 16 S.W.3d at 790. In the instant case, then, the question becomes whether the parties in this lawsuit and the Humphreys County lawsuit are "sufficiently similar" so as to warrant the application of the doctrine of prior suit pending.

Federal courts have applied a principle that is similar, though not identical, to the doctrine of prior suit pending, termed the "first-filed rule."[3] Like the doctrine of prior suit pending, the first-filed rule was developed "to avoid

the danger of inconsistent results and duplication of judicial effort." *Martin v. Townsend,* No. 90-2616, 1990 WL 159923, at *4 (D.N .J. Oct. 15, 1990). In the federal system, absent exceptional circumstances, a district court may enjoin subsequent proceedings in a different federal court if those proceedings involve the same parties and the same issues in a case already before the first federal district court. As a corollary, the federal district court involved in the second-filed proceedings may dismiss the lawsuit before it or stay proceedings until the first suit is resolved. *Id.; see Commerce & Indus. Ins. Co. v. Cablewave Ltd.,* 412 F.Supp. 204, 207 (S.D.N.Y.1976) (noting the well-settled proposition that courts should not duplicate each other's work in cases involving the same parties and the same issues).

3    The first-filed rule is not identical to the doctrine of prior suit pending. For example, the federal rule involves the exercise of the federal court's discretion to issue an injunction under 28 U.S.C. § 2361, which is not a factor under Tennessee law. *See Commerce & Indus. Ins. Co. v. Cablewave, Ltd.,* 412 F.Supp. 204, 206 (S.D.N.Y.1976) (noting that granting an injunction under section 2361 is discretionary). In addition, interpleader relief may be denied in federal court if there is an adequate remedy elsewhere. *Id.; isee Metropolitan Life Ins. Co. v. Scott,* 587 F.Supp. 451, 452 (W.D.Pa.1984) (noting that discretion under section 2361 should not be taken lightly, and that interpleader relief may be denied if there is another adequate remedy).

Some federal courts have discussed the "first-filed rule" in cases in which a life insurance company has filed a separate interpleader action regarding the benefits of a policy after a named beneficiary has already filed a lawsuit to recover the proceeds of the same life insurance policy. In such situations, federal courts have adhered to "a widely recognized policy ... that where an action is already pending in one forum against an insurance carrier where interpleader was equally available, either as an independent action or by way of counterclaim, the interpleader should not be tried in another forum, absent exceptional circumstances." *Metropolitan Life Ins. Co. v. Scott,* 587 F.Supp. 451, 452 (W.D.Pa.1984). The district court in *Metropolitan Life* explained its reasoning:

We concur in the long standing belief that absent of [sic] exceptional circumstances, the federal court first seized of an action should be the one to adjudicate it. Although plaintiffs have filed the within interpleader action in the interest of protecting their rights, we do not feel that this factor standing alone entitles them to the right to choose the federal forum in which their interpleader claims to be heard. The interpleader action

may be asserted in an independent action ... or as a counterclaim to the primary action.... We believe it appropriate in the interest of judicial economy that the interpleader action be brought as a counterclaim to the federal court action already commenced by the defendant....

*7 *Id.* (citations omitted); *accord Prudential Ins. Co. of America v. Trowbridge,* 313 F.Supp. 428, 430 D.Conn.1970) (dismissing second-filed interpleader action and ordering the insurance company to file, as part of its answer in the first action, the same interpleader claim); *Massachusetts Mut. Life Ins. Co. v. Stern,* 124 F.Supp. 695, 696 (E.D.N.Y.1954) (holding that interpleader claims must be brought as a counterclaim in suit first filed); *see also Southwestern Life Ins. Co. v. Sanguinet,* 231 S.W.2d 727, 731 (Tex.Ct.App.1950) (when insurance company filed interpleader in first suit, and named insured subsequently filed separate action to recover insurance proceeds, court held that insured's suit must be dismissed, even though it had already gone to trial).

Like the doctrine of prior suit pending, the federal "first-filed rule" requires that both lawsuits involve the "same parties" in order to warrant a dismissal or a stay of the second-filed lawsuit. *Commerce & Indus. Ins. Co.,* 412 F.Supp. at 207. Federal courts, however, have found that this requirement was met where the primary parties in both lawsuits are the same, but the insurance company joins additional parties in the separate interpleader action involving the same insurance proceeds. This is analogous to Tennessee cases finding that the "same party" requirement in the doctrine of prior suit pending is satisfied when the parties in both lawsuits are "in effect the same" or "sufficiently similar so as to make no practical difference." *See Roy,* 16 S.W.3d at 790; *Cockburn,* 385 S.W.2d at 102. In this case, the interpleader action filed by F & G included the primary litigants in the Humphreys County Chancery Court action-F & G and Patterson. The ruling of the Henry County Circuit Court below does not mean that the Humphreys County lawsuit, filed by Patterson against F & G, would be dismissed or transferred. Rather, both lawsuits, involving the identical subject matter, would proceed to conclusion.[4] The doctrine of prior suit pending was intended to avoid such duplicative litigation on the same subject matter between parties that are essentially the same. Accordingly, we must conclude that the doctrine of prior suit pending is applicable in this case, requiring dismissal of the Henry County Circuit Court lawsuit.

4    Undoubtedly, F & G would be required to bring Wife and Corley's estate into the Humphreys County proceedings, because they are admittedly indispensable

parties.

Wife argues that the trial court was correct in rejecting Patterson's motion to dismiss, because all of the contacts in the case are in Henry County.[5] She argues that the trial court correctly determined that Henry County had more contacts based on the fact that the life insurance policy was purchased in Henry County, the issuing agency is in Henry County, Wife resides in Henry County, and Corley's estate is being probated in Henry County. Regardless of the accuracy of these findings, these factors relate to the issue of venue, not to jurisdiction in the Henry County Circuit Court or to the proper application of the doctrine of prior suit pending. The Court in *MDHA* observed that questions of jurisdiction and venue are distinct, in that "[j]urisdiction relates to physical power over person or property, while venue merely determines whether a court having the requisite power is an appropriate place for trial." *MDHA,* 637 S.W.2d at 880. In this case, arguments regarding contacts, i.e. venue, are premature because the doctrine of prior suit pending requires dismissal of the Henry County lawsuit and trial court below does not have jurisdiction to determine proper venue. Any question of venue must be presented to and decided by the Humphreys County Chancery Court, the court that first acquired jurisdiction.[6] *See id.* at 881.

[5]    Wife also argues that Patterson engaged in

inappropriate forum shopping by filing suit against F & G in Humphreys County and by not including Wife in her lawsuit. However, Patterson's "diligence in pursuing a remedy ... should not be punished" simply because she filed her lawsuit first. In any event, "the need to discourage improper forum shopping and/or races to the courthouse pales when measured against the necessity to preserve the principle of 'former suit pending.' " *MDHA,* 637 S.W.2d at 882.

[6]    It is ironic that, if F & G brings Wife and Corley's estate into the Humphreys County proceedings, if the issue of venue is raised in that proceeding, venue considerations may require transfer to Henry County. But the issues are distinct, and must be considered separately.

**8** The decision of the trial court is reversed. Costs on appeal are to be taxed equally to the appellees, Patricia Lee Futrell Corley, Estate of Robert Leon Corley, and Fidelity & Guaranty Life Insurance Company, for which execution may issue, if necessary.

**All Citations**

Not Reported in S.W.3d, 2003 WL 23099685

End of Document                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

352 F.Supp. 968
Judicial Panel on Multidistrict Litigation.

In re AIR CRASH DISASTER NEAR
SILVER PLUME, COLORADO, ON
OCTOBER 2, 1970.

No. 112.
|
Dec. 5, 1972.

**Synopsis**
The Judicial Panel on Multidistrict Litigation ordered actions for death of Kansas university football players in Colorado accident in airplane supplied by Oklahoma corporation and owned by Oklahoma company transferred to Kansas district court, where most plaintiffs lived and key witnesses were available and where majority of state court actions were pending, so that state and federal courts might coordinate discovery efforts.

Order accordingly.

Murrah, Chairman, took no part in consideration or decision.

**\*968** OPINION AND ORDER

Before ALFRED P. MURRAH\*, Chairman, and JOHN MINOR WISDOM, EDWARD WEINFELD, EDWIN A. ROBSON, WILLIAM H. BECKER, JOSEPH S. LORD, III, and STANLEY A. WEIGEL, Judges of the Panel.

\*        Judge Alfred P. Murrah took no part in the consideration or decision of this matter.

**Opinion**

PER CURIAM.

On October 2, 1970, a chartered aircraft transporting the

Wichita State University football team and associated personnel crashed in the Rocky Mountains near Silver Plume, Colorado. Of the forty persons aboard, thirty-two succumbed to injuries received in the crash. The Panel ordered the parties to actions pending in federal court to show cause why this litigation should not be transferred to a single district for coordinated or consolidated pretrial proceedings. The parties responding to the order to show cause do not oppose transfer. We find that the actions involve substantial common questions of fact, and, to insure that duplication of discovery is avoided and inconvenience to the parties and witnesses minimized, we order the actions listed on the appended Schedule A and pending in districts other than the District of Kansas transferred to that district for pretrial proceedings with the actions pending there.

Wichita State University in Wichita, Kansas, had an agreement with Golden Eagle Aviation, Inc. of Oklahoma City, Oklahoma, concerning transportation of the Wichita State football team to its game in Logan, Utah. Golden Eagle provided the necessary flight crew and services for the ill-fated flight. The aircraft that crashed was owned by the Jack Richards Aircraft Company of Oklahoma City.

Actions have been filed in three different federal district courts and in Kansas and Oklahoma state courts alleging that Jack Richards and Golden Eagle negligently failed to comply with regulations applicable to the flight. The federal court actions also allege that the United States, through its agent, the Federal Aviation Administration, was negligent in permitting Golden Eagle to operate without proper licenses. In addition, the Kansas and Oklahoma state court actions charge Wichita State University with negligence in failing to see that proper federal aviation regulations had been complied with.

The necessity for transfer of these actions to a single district having been established, **\*969** the choice of the appropriate transferee forum is the only question at issue. The majority of state court actions are pending in Kansas and most of the plaintiffs and prospective plaintiffs in this litigation are domiciliaries of Kansas. In addition, the key witnesses to the issues in this litigation are either located in or within easy commuting distance of the federal court in Wichita, Kansas. Transfer of all federal actions to the District of Kansas, therefore, provides a unique opportunity for the federal and Kansas state court parties to coordinate their discovery efforts. Such state-federal accommodation in discovery will significantly lessen the burdens on both courts' judicial resources and greatly enhance the expeditious processing of all actions arising out of the crash.

It is therefore ordered that all actions on the appended Schedule A be, and the same hereby are, transferred, pursuant to 28 U.S.C. § 1407, to the District of Kansas and assigned to the Honorable Frank G. Theis for coordinated or consolidated pretrial proceedings with the actions pending in that district.

## SCHEDULE A

### District of Kansas

| | |
|---|---|
| Marvin G. Brown, Sr. v. Jack Richards Aircraft Co., Inc., et al. | Civil Action No. W-4749 |
| Howard L. Johnson v. Jack Richards Aircraft Co., Inc., et al. | Civil Action No. W-4750 |
| Robert B. Krueger v. Jack Richards Aircraft Co., Inc., et al. | Civil Action No. W-4751 |
| Milton B. Moore, Sr. v. Jack Richards Aircraft Co., Inc., et al. | Civil Action No. W-4752 |
| Thomas B. Owen, Sr. v. Jack Richards Aircraft Co., Inc., et al. | Civil Action No. W-4753 |
| Mary P. Stines v. Jack Richards Aircraft Co., Inc., et al. | Civil Action No. W-4754 |
| Jack R. Vetter, Sr. v. Jack Richards Aircraft Co., Inc., et al. | Civil Action No. W-4755 |

### Southern District of Ohio

| | |
|---|---|
| Hallie Eugenia Robinson, etc. v. United States of America | Civil Action No. 4265 |

### Western District of Oklahoma

| | |
|---|---|
| Leo Loy Roberts, etc. v. The United States of America | Civ.-72-332 |
| Rick Stevens, et al. v. The United States of America | Civ.-72-233 |

352 F.Supp. 968

**All Citations**

**End of Document**                              © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 7135319 (Tenn.Ch.) (Trial Order)
Chancery Court of Tennessee,
Twentieth Judicial District,
Part IV.
Davidson County

In Re: SMILEDIRECTCLUB, INC., SECURITIES LITIGATION
This Document Relates to: ALL ACTIONS.

No. 19-1169-IV.
June 4, 2020.

**\*1** CLASS ACTION

**Order**

Russell T. Perkins, Chancellor.

This putative class action asserting federal securities claims on behalf of all purchasers of SmileDirectClub, Inc. ("SmileDirect" or "Company") Class A common stock issued pursuant and/or traceable to the Company's Registration Statement and Prospectus ("the Offering Documents") filed with the U.S. Securities and Exchange Commission ("SEC") in connection with the Company's September 2019 initial public stock offering ("IPO"). Plaintiffs allege that the Offering Documents violate Sections 11, 12 and 15 of the Securities Act of 1933 ("the Securities Act"). On February 10, 2020, Defendants moved to stay this action pending resolution of a parallel federal action or, alternatively, to dismiss this action under Tenn. R. Civ. P. 12.02(6) for failure to state a claim. Defendants' motion came before the Court for hearing by telephone conference on Wednesday, June 3, 2020.

This action (filed September 27, 2019) asserts the same claims being litigated in a parallel federal lawsuit (filed in early October 2019), *Franchi v. SmileDirectCub, Inc.*, Case No. 19-cv-962 (M.D. Tenn. 2019), against the same defendants on behalf of the same putative class based on substantially the same allegations ("the federal action"). All of the claims in this action and in the federal action stem from the Company's IPO in September 2019. Here, Plaintiffs assert claims under Sections 11, 12(a)(2) and 15 of the Securities Act against the Company, certain of its officers and/or directors, and its IPO underwriters on behalf of a putative class of purchasers of Company stock. It is undisputed that the plaintiffs in the federal action assert the same claims.

Two weeks after the IPO, various putative shareholders began filing securities actions in state and federal courts. All federal cases were consolidated into the *Franchi* federal action. Six other actions were filed in state courts in Tennessee, Michigan, and New York. The New York plaintiff agreed to a stay pending resolution of any motions to dismiss in the other actions. In Michigan, certain defendants, including SmileDirectClub, moved to dismiss for lack of personal jurisdiction. The remaining defendants moved to dismiss or stay in favor of the *Franchi* federal action and on the basis of *forum non conveniens*. Those motions have apparently not all been decided. The four actions filed in Tennessee state court were consolidated into this action. This Court and the *Franchi* Court are both located in Nashville, Tennessee.

**Stay**

Generally speaking, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936). "The exercise of this authority requires an exercise of judgment and the careful

weighing of the competing interests." *Bell v. Todd*, 206 S.W.3d 86, 93 (Tenn. Ct. App. 2005). "Those concerns include … whether a stay would promote judicial economy and the conservation of judicial resources by reducing the duplication of legal issues to be litigated[.]" *Sanjines v. Ortwein & Assocs., P.C.*, 984 S.W.2d 907, 911 (Tenn. 1998). Also, as a related general proposition, the first court having jurisdiction over a case usually has precedence over courts who later obtain concurrent jurisdiction over the same controversy. *See Chapman v. Davita, Inc.*, 380 S.W.3d 710, 712-13 (Tenn. 2012).

**\*2** In deciding whether to stay a civil proceeding, Tennessee courts customarily consider the following factors:
(1) the extent to which the issues in [cases] overlap, (2) the status of the [other] proceeding, (3) the plaintiff's interests in expeditious civil proceedings weighed against the prejudice to the plaintiff caused by the delay, (4) the hardship on the defendant, including the burden on the defendant if the cases go forward in tandem, (5) the convenience of both … courts, and (6) the interests of third parties and the public.

*Bell*, 206 S.W.3d at 94.

First, this action is essentially identical with the federal action. Both this action and the federal action assert the same claims under the Securities Act against the same defendants on behalf of the same putative class based on the same purported misstatements or omissions in the Offering Documents. Thus, adjudicating both actions would require the same parties to litigate the same issues.

Secondly, both this action and the federal action are in early stages of litigation. A class has not been certified in either case. Similarly, the pleadings are not closed. Although Plaintiffs in this action served written discovery requests on Defendants a few months ago, discovery has not yet actually begun here. This early litigation stage status also allows for more efficient coordination of efforts by the parties between the two cases if both cases remain active.

Thirdly, Plaintiffs and the putative class arguably face no substantive prejudice from a stay in this litigation. The same claims seeking the same relief for the same putative class are being pursued in the federal action. Furthermore, the SEIU Health Care Employees Pension Fund ("SEIU") is the court-appointed lead plaintiff in the federal action through what appears to be a well-considered process.

Fourthly, if this action is not stayed, Defendants could face costly duplication of effort to simultaneously defend against the claims in both actions. Proceeding with this action and the *Franchi* federal action could result in costly duplication of effort and some risk of inconsistent rulings. This possibility, however, is contemplated by the federal statutory scheme.

The public interest, however, favors this Court exercising the jurisdiction it has over the first-filed case. It is difficult for this Court to ascertain whether, as Plaintiffs urge, a difference in the state and federal pleading standards operates to prejudice them. Plaintiffs correctly assert that the Securities Act includes an express provision precluding removal of Securities Act claims from state to federal court. *See Cyan, Inc. v. Beaver Cty. Emps. Ret. Fund*, 138 S. Ct. 1061 (2018). Although Defendants are not seeking to remove this case to federal court, a blanket stay of this first-filed state court proceeding pending the full outcome of a parallel federal action, absent a showing of actual prejudice to Defendants is, in the Court's view, contrary to the spirit of the removal prohibition and the general Tennessee practice of deferring to the first-filed case. In short, absent cognizable concerns about the geographic location of a court, Tennessee trial courts do not usually allow adversary parties to disturb jurisdictionally proper forum choices made by the first-filing party. For the foregoing reasons, the Court determines that Defendants' motion to stay this litigation pending the outcome of the parallel *Franchi* federal action is not well taken and is, accordingly, DENIED.[1]

---

[1]      In making this ruling, the Court is not concluding that Defendants are attempting to make an "end run" around this Court's jurisdiction or the statutory removal prohibition. In the Court's view, Defendants, like Plaintiffs, are simply making good faith, reasonable arguments in furtherance of their rights and interests.

**Dismissal**

### *Motion to Dismiss for Failure to State a Claim*

**\*3** A motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint, admitting the truth of all relevant and material factual averments contained in the complaint. *See Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997). In deciding a motion to dismiss, courts are required to construe the complaint liberally, treating all factual allegations as true and considering all reasonable inferences in the plaintiff's favor. *See Webb v. Nashville Area Habitat for Humanity, Inc.,* 346 S.W.3d 422, 427 (Tenn. 2011); *Tigg v. Perelli Tire Corp.,* 232 S.W.3d 28, 31-32 (Tenn. 2007). Unless it appears from the pleadings and the applicable law that the plaintiff can prove no set of facts that would entitle the plaintiff to relief on his/her claims, a motion to dismiss for failure to state a claim should be denied. *See Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.,* 986 S.W.2d 550, 554 (Tenn. 1999).

### *Facts*

On December 20, 2019, Plaintiffs filed a Consolidated Complaint. For motion to dismiss purposes, the operative facts, in broadest terms, are as follows:

1. Plaintiffs purchased shares of SmileDirect's common stock issued under its Registration Statement and Offering.

2. Defendants are the company and several of its directors, officers, managers and/or underwriters.

3. SmileDirect was founded in 2014.

4. On September 13, 2019, certain Defendants filed the final prospectus for the IPO with the SEC.

5. Plaintiffs are claiming that the Offering Documents contained material misstatements and omissions.

6. Plaintiffs allege that "these material misstatements and omissions include (1) a false description of the level of professional care rendered to SmileDirectClub customers and critical omissions relating to the actual oversight provided by dental professionals; (2) material misstatements regarding regulatory and legal risks facing SmileDirectClub across the country and specifically omissions regarding investigations and imminent adverse legislation in the state of California; (3) material misstatements and omissions regarding customer satisfaction with SmileDirectClub's products and services; and (4) material misstatements and omissions regarding the magnitude of the Company's operating losses for the quarter in which it went public." Consolidated Complaint, ¶ 29.

7. Plaintiffs allege that the Offering Documents falsely overstate the caliber and scope of dental services SmileDirectClub customers receive and omit critical material information about the Company's true business model. *See* Consolidated Complaint, Heading A, p. 11.

8. Plaintiffs allege that the Offering Documents understate regulatory and legislative risks in numerous states around the country. *See* Consolidated Complaint, Heading B, p. 19.

9. Plaintiffs allege that SmileDirectClub makes false and misleading statements about customer satisfaction in its Offering Documents. *See* Consolidated Complaint, Heading C, p. 24.

10. Plaintiffs allege that SmileDirectClub failed to disclose increasing costs that had occurred at the time of the IPO. *See* Consolidated Complaint, Heading D, p. 27.

11. SmileDirectClub is offering what it views as an innovative, cost-saving tele-dentistry option for consumers.

12. The IPO had unfavorable results and the parties vigorously dispute what caused those results.

### *Discussion*

"Claims under sections 11 and 12(a)(2) are … Securities Act siblings with roughly parallel elements[.]" *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 359 (2d Cir. 2010). To state a claim under Section 11, Plaintiffs must allege facts demonstrating that "part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a). Stating a claim under Section 12(a)(2) requires the same showing for a Prospectus. *See* 15 U.S.C. § 77*l*(a)(2). Section 15 provides for liability of persons who "control" any person liable under Section 11 or 12. *See* 15 U.S.C. § 77*o*(a). In other words, for any of Plaintiffs' claims to survive dismissal, they must allege facts showing a material misstatement or actionable omission in the Offering Documents. Additionally, "[i]f it is apparent on the face of the complaint [that] the decline in share value is not related to any material misstatement and/or omission, dismissal is appropriate." *Azzolini v. Corts Tr. II for Provident Fin. Tr. I*, No. 103CV1003, 2005 WL 3448053, at *5 (E.D. Tenn. Dec. 14, 2005) (dismissing Securities Act claims based on negative causation).

**\*4** Where, as here, entrepreneurs offer what could be an innovative way to facilitate the less-expensive delivery of products or services related to regulated professions such as law, medicine, or dentistry, there will almost invariably be claims (rightly or wrongly) that the entrepreneurs are engaged in unauthorized practice or misleading descriptions of what they are offering. There may be intervening regulatory or legislative measures or uncertain indicia of the potential for such measures. When there is an IPO attended by unfavorable results and claims that the offering documents are in some respect misleading in this context, review of those claims is likely to be inherently complex and fact-intensive. This is roughly the Court's big picture view of this case upon the current state of the technical record.

After reviewing the papers and hearing the parties' arguments on June 3, 2020, the Court is not convinced that Plaintiffs' Consolidated Complaint is legally insufficient. Many of the parties' arguments turned on characterizations along a "how much is enough" continuum of what was disclosed in the Offering Documents and what was not. For example, the parties both make persuasive points about the extent to which the regulatory/legislative risks in California were, or should have been, more fully disclosed. The Court cannot now say that Plaintiffs' contentions in this respect are legally insufficient. The Court, accordingly, in deference to the motion to dismiss standard, respectfully DENIES Defendants' motion to dismiss for failure to state a claim.

### Conclusion

For the foregoing reasons, the Court hereby respectfully DENIES Defendants' motion to stay and the Court hereby respectfully DENIES Defendants' motion to dismiss. Defendants will have sixty days from the date of entry of this Order to respond to Plaintiffs' pending written discovery requests. The Court hereby VACATES the Scheduling Order entered in this case on December 9, 2019.

The Court hereby directs the parties to make an effort to agree upon a proposed Agreed Procedural Order within thirty days of the entry of this Order. This proposed Agreed Procedural Order should include a schedule for the orderly progression of this case (including a schedule for class certification filings and proceedings) and a discovery plan. The discovery plan will be designed to minimize duplication of discovery efforts and expense as between this case and the federal case. In this connection, the Court has no objection to the parties tailoring this proposed Agreed Procedural Order to any Case Management Order entered in the parallel federal court case. If the parties are unable to agree on the foregoing proposed Agreed Procedural Order, then they should contact Deputy Clerk and Master Sharifa Lewis-Allen at (615) 862-5713 to arrange a telephonic status conference to discuss these matters with the Court.

**IT IS SO ORDERED.**

<<signature>>

RUSSELL T. PERKINS, CHANCELLOR

cc: Steven A. Riley, Esq.

Elizabeth O. Gonser, Esq.

Sharon L. Nelles, Esq.

Andrew J. Finn, Esq.

Jay B. Kasner, Esq.

Scott D. Musoff, Esq.

Michael C. Griffin, Esq.

Jerry E. Martin, Esq.

David Garrison, Esq.

Scott P. Tift, Esq.

Thomas L. Laughlin, IV, Esq.

Max R. Schwartz, Esq.

Jeffrey P. Jacobson, Esq.

Jonathan M. Zimmerman, Esq.

Gregory Del Gaizo, Esq.

Brian J. Schall, Esq.

James G. Stranch, III, Esq.

Joe P. Leniski, Jr., Esq.

Benjamin A. Gastel, Esq.

Paul K. Bramlett, Esq.

Robert P. Bramlett, Esq.

Jeremy A. Liberman, Esq.

J. Alexander Hood, II, Esq.

Patrick V. Dahlstrom, Esq.

Christopher M. Wood, Esq.

Samuel H. Rudman, Esq.

Mary K. Blasy, Esq.

**In re SmileDirectClub, Inc., Securities Litigation, 2020 WL 7135319 (2020)**

Darren J. Robbins, Esq.

Briand Cochran, Esq.

---

                                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2005 WL 975337
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES
BEFORE CITING.

Superior Court of New Jersey, Law Division.

Kathleen Conley JONES, individually,
and on behalf of all others similarly
situated, Plaintiff,
v.
EDUCATIONAL TESTING SERVICE,
Defendant.

No. MER–L–1977–04.
|
Argued Dec. 3, 2004.
|
Decided Feb. 7, 2005.

Defendant's Motion to Dismiss Without Prejudice, or in
the Alternative, Stay the Action.

**Attorneys and Law Firms**

A. Stephen Hut, Jr., Wilmer, Cutler, Pickering, Hale &
Dorr, L.L.P., admitted Pro Hac Vice, and Mary Sue
Henifin, Buchanan Ingersoll, P.C., for Defendant ETS.

Seth A. Katz, Seeger Weiss, L.L.P., admitted Pro Hac
Vice, and Roopal P. Luhana, Seeger Weiss, L.L.P., for
Plaintiff Kathleen Jones.

Opinion

**Opinion**

JACOBSON, J.

**\*1** Plaintiff, Educational Testing Services [hereinafter
ETS], is a non-profit corporation organized under the
New York Education Law with its principal place of
business located in Princeton, New Jersey. ETS develops
and administers educational assessments, including the
Praxis series of tests that are used to assess beginning
teachers. These tests are used by state education agencies
to make licensing determinations. This litigation focuses

on the Praxis Principles of Learning and Teaching:
Grades 7–12 [hereinafter PPLT], which is one of the
many Praxis exams ETS develops, administers and
scores.

In 2004, ETS discovered a statistical anomaly in its
scoring of the PPLT exams taken between January 2003
and April 2004. This anomaly resulted in lower scores for
teacher candidates in nineteen states.[1] Upon a re-scoring
of those exams, approximately 4,100 candidates who had
initially received failing scores received passing scores.
Beginning on July 10, 2004, ETS made personal phone
calls to all affected candidates, to states using the PPLT,
and to clients of ETS in other states. ETS then sent letters
explaining the situation with updated scores attached.
Lastly, ETS refunded the registration and test fees of all
the affected candidates.

[1]   The nineteen states are Arkansas, Georgia, Hawaii,
      Kansas, Kentucky, Louisiana, Maryland, Minnesota,
      Missouri, Mississippi, Nevada, Ohio, Pennsylvania,
      Rhode Island, South Carolina, Tennessee, Texas, Utah
      and West Virginia. New Jersey is not among the
      affected states, and ETS asserts that no individual in
      New Jersey was affected by the scoring anomaly.

Plaintiff, Kathleen Conley Jones, is a resident of Georgia
who took the PPLT on November 15, 2003. She was a
resident of Louisiana when she took the exam. In
December 2003, ETS informed her that she had failed the
exam. As a result, plaintiff was unable to obtain her
teaching certificate in Louisiana. In July 2004, ETS
informed plaintiff that she had in fact passed the exam.
Plaintiff Jones subsequently filed this lawsuit in New
Jersey.

*PROCEDURAL HISTORY*

Beginning on July 15, 2004, class action lawsuits
concerning the Praxis scoring anamoly were filed against
ETS. On July 28, 2004, plaintiff filed this class action
lawsuit in Mercer County where ETS has its headquarters.
Prior to the filing of this lawsuit, eight Praxis test class
actions were filed in various federal courts and more have
been filed after this suit. After ETS was served with
plaintiff's complaint, nine more class actions were filed in
various courts as of December 2004, including three in
Mercer County.[2] Thus, there are at least twenty pending
actions, in addition to the one before this court, which

arise from the same nucleus of facts.

2    The two cases filed in Mercer County are *Mary Mathis–Cooper v. Educational Testing Service,* Docket Number MER–L–2274–04, and *Jonathan Arnold v. Educational Testing Service,* Docket Number MER–L–2856–04. *Mary Mathis–Cooper v. Educational Testing Service* was voluntarily stayed until February 1, 2005.

On August 12, 2004, ETS filed a motion pursuant to 28 U.S.C. § 1407[3] before the Federal Judicial Panel on Multidistrict Litigation [hereinafter MDL Panel] asking the MDL Panel to take jurisdiction over the then-known pending federal actions against ETS and to transfer those actions to the Eastern District of Louisiana where all of those cases as well as any future federal cases could be consolidated for pre-trial proceedings. On that same day, plaintiff's attorney filed a complaint in New Jersey state court on behalf of Kathleen Jones and filed as well three other virtually identical complaints in the Eastern District of Louisiana, the Western District of Louisiana, and the District of New Jersey. On December 16, 2004, the MDL Panel issued an Order transferring all related federal proceedings to the District Court of the Eastern District of Louisiana for consolidation. However, ETS cannot seek to remove plaintiff's complaint to federal court so that it can be consolidated under the MDL Panel's Order because 28 U.S.C. § 1441(b)[4] prohibits such removal if a defendant is a resident of the forum state. Thus, defendant ETS seeks to dismiss this action without prejudice or, in the alternative, to stay it pending resolution of the federal litigation.

3    28 U.S.C. § 1407(a) states:

When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions. Each action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated: *Provided, however,* That the panel may separate any claim, cross-claim, counter-claim, or third-party claim and remand any of such claims before the remainder of the action is remanded.

The remainder of the statute details the organization of the MDL Panel and the procedures for consolidated pre-trial proceedings.

4    28 U.S.C. § 1441(b) states:

Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

*DISCUSSION*

**\*2** Under 28 U.S.C. § 1441(b), plaintiff's complaint cannot be removed to federal court because the defendant, ETS, has its principal place of business in New Jersey and is therefore a resident of New Jersey. Consequently, to avoid litigation here that would be duplicative of the federal proceedings, ETS has moved to stay this lawsuit or to dismiss it without prejudice until the federal actions are resolved. This application is based in part on principles of comity—the recognition that one sovereignty gives to the legislative, executive or judicial acts of another. *Exxon Research and Engineering Company v. Industrial Risk Insurers,* 341 *N.J. Super.* 489, 503 (App.Div.2001). The doctrine is grounded in the "policy of avoiding conflicts in jurisdiction ..." *Id.* (citing *Fantory v. Fantory,* 21 *N.J.* 525, 533 (1956)).

The general rule in New Jersey is that the court first acquiring jurisdiction has precedence absent special equities. *Bass ex rel. Will of Bass v. DeVink,* 336 *N.J. Super.* 450, 455 (App.Div.2001); *see also Exxon,* 341 *N.J. Super.* at 505; *Cogen Technologies v. Boyce Engineering Int'l, Inc.,* 241 *N.J. Super.* 268, 273 (App.Div.1990). When an already pending suit in another jurisdiction presents the same claims and arises from the same set of facts,

Respect for our sister states and the strong public policy in favor of marshaling judicial resources require abstention in these circumstances. "There is ordinarily no reason to entertain subsequent local litigation paralleling an already instituted action in another state." An action may, "as a matter of sound discretion," be stayed by a court until the prior litigation has been adjudicated. [*Bass,* 336 *N.J. Super.* at 455–56 (citations omitted) ]

See also *Kaselaan & D'Angelo Associates, Inc. v. Soffian,* 290 *N.J. Super.* 293, 300 (App.Div.1996) (applying general rule of comity when the prior action is pending in federal court). "The fact that an action pending in another state involves the same parties and the same or substantially similar claims does not bar prosecution of a subsequent action here in New Jersey." *American Home Products Corp. v. Adriatic Ins. Co.,* 286 *N.J. Super.* 24, 33 (App.Div.1995). However, "[a] court having jurisdiction has the authority to refuse to proceed in a vexatious law suit focusing on a matter already proceeding in the courts of another state." *Cogen Technologies,* 241 *N.J. Super.* at 272. "[T]he determination whether to stay an action that is related to an action pending in another jurisdiction involves a careful weighing of the interests of the parties as well as the court's interest in conserving its resources." *Kaselaan,* 290 *N.J. Super.* at 301. In *American Home Products,* 286 *N.J. Super.* at 37, the Appellate Division set out the appropriate framework for determining whether a dismissal or stay is necessary under the principles of comity:

> **\*3** [W]hen requesting that the court dismiss or stay a New Jersey case for comity reasons, the defendant should be required to establish (1) that there is a first-filed action in another state, (2) that both cases involve substantially the same parties, the same claims, and the same legal issues, and (3) that plaintiff will have the opportunity for adequate relief in the prior jurisdiction. When a defendant establishes these requisites, it has shown a clear entitlement to comity-stay relief and the judge should grant the stay unless plaintiff demonstrates "special equities."

*Accord Exxon,* 341 *N.J. Super.* at 506; *Bass,* 336 *N.J. Super.* at 456. Thus, ETS bears the initial burden of establishing the these three prerequisites for a comity dismissal or stay have been met in the circumstances of this case.

To meet the first prong, defendant has established that there is an action pending in another state that was filed before plaintiff's complaint. In fact, defendant has established that eight lawsuits were filed in other jurisdictions prior to plaintiff's lawsuit, and that three of these prior suits were filed in Louisiana, the state where one of plaintiff's attorneys practices law and where plaintiff lived when she took the Praxis test that is at the heart of her claims. Plaintiff argues that because each of the prior-filed actions are pending in federal court and not in state court, this prong has not been met. Plaintiff is wrong.

In *Kaselaan & D'Angelo Associates, Inc. v. Soffian,* 290 *N.J . Super.* at 300, the issue before the court was whether

the plaintiff's state action must be dismissed because plaintiff had previously filed the same action in federal court. *Id.* at 296. The court concluded that the entire controversy doctrine did not mandate that the simultaneous state action be dismissed, and remanded the case back to the trial court to determine if a stay of the state action was appropriate. *Id.* at 299, 301. The *Kaselaan* court did not distinguish between simultaneous actions pending in two different state courts and simultaneous actions pending in state court and federal court, and cited the general rule of comity set forth in *American Home Products,* 286 *N.J. Super.* at 331, to be applied in either situation. *Kaselaan,* 290 *N.J. Super.* at 300. The principles of comity apply between states and also between the states and the federal government because, at base, they deal with how various sovereignties relate to each other and exercise powers when two or more sovereignties seek to act in the same realm. While comity principles in the federal-state context can involve constitutional issues such as federal preemption and prudential doctrines such as abstention, in the context of the present inquiry—whether the New Jersey courts should stay a duplicative, later-filed lawsuit while the first case is adjudicated in another forum—the filing of the first lawsuit in a federal and not a state court is a distinction without a difference. Indeed, the court in *Kaselaan* noted that the New Jersey courts have the "appropriate means" to address comity situations "when a related case is pending in a federal court or in the court of another state ..." 290 *N.J. Super.* at 300. ETS thus has met the first prong of the test.

**\*4** ETS must next establish that the prior pending lawsuits involve substantially the same parties, claims, and legal issues. ETS argues that plaintiff is a putative class member of the previously filed class action suits and that, accordingly, the parties are the same. In *Adams v. Educational Testing Service,* Docket Number 2:04–cv–1997, United States District Court for the Eastern District of Louisiana, one of the first suits filed against ETS, the plaintiff purports to represent himself and a class of similarly situated people, defined as "All individuals who presently reside in the United States of America who took the Praxis P.L.T. test between January 2003 and April 2004 and failed the test as a result of the negligence of ETS." Plaintiff Kathleen Jones is a person, residing within the United States, who took the test in November 2003 and failed based on the initial scoring by ETS. Thus, plaintiff Jones would be encompassed in the class of a previously filed suit.[5] There is no evidence that Ms. Jones has chosen to opt-out of *Adams v. Educational Testing Service* or any similar lawsuits. Moreover, Ms. Jones's own definition of the class echoes the class definitions of the other, previously filed complaints. She

Jones v. Educational Testing Service, Not Reported in A.2d (2005)

defines the class as:

<sup>5</sup>    Additional previously filed suits would include Ms. Jones as a class member. In *Billet v. Educational Testing Service,* Docket Number 04–563, originally filed in a Pennsylvania state court and later removed to the United States District Court for the Eastern District of Pennsylvania, the class is defined as "All persons who took the test known as the Praxis Principles of Learning and Teaching for grade 7 through 12 administered by ETS, who received a false failing score from ETS despite the fact that they had actually passed the test, and who were damaged thereby." In *Johnson v. Educational Testing Service,* Docket Number 2:04–cv–2291, originally filed in the Civil District Court for the Parish of New Orleans, Louisiana, and later removed to the United States District Court for the Eastern District of Louisiana, the class is defined as

> All persons, (including but not limited to the 486 Louisiana residents), who were erroneously told by ETS from 2001 to present that they had indeed failed all or part of the ETS tests necessary for them to receive their teacher certification, also including but not being limited to those persons who were forced to retake the test and passed it but had originally passed it upon the first administration.

The complaint in *Brouse v. Educational Testing Service,* Docket Number 1:04–cv–1599, filed in the Court of Common Pleas of Erie County, Ohio, and later removed to the United States District Court for the Eastern District of Pennsylvania, states:

> The named plaintiff brings this action on behalf of a Class consisting of all individuals who sat for teacher certification tests administered and graded by Defendant ETS from January 2003 through April of 2004, and who have subsequently been identified as having been mistakenly advised that they failed the tests when, in fact, they passed the tests.

In *Kochensky v. Educational Testing Service,* Docket Number 2:04–cv–3794, filed in the Court of Common Pleas of Philadelphia County, Pennsylvania, and later removed to the United States District Court for the Eastern District of Pennsylvania, the class is defined as "All persons who took the ETS Praxis examination since January 2003 where ETS gave the individual a non-passing grade due to its incorrect scoring of one or more sections of the examination." Lastly, *Rutledge v. Educational Testing Service,* Docket Number 2:04–cv–03465, filed in the United States District Court for the Eastern District of Pennsylvania, defines the class as:

> All persons in the United States who took the test known as the Praxis Principles of Learning and Teaching for grades 7 through 12 administered by Educational Testing Service, Inc. ("ETS"), who received a false failing score from ETS despite the fact that they had actually passed the test, and who were damaged thereby. The Class is limited to those persons who satisfy the amount in controversy requirement for federal diversity jurisdiction.

All persons in the United States who took the Praxis Principles of Learning and Teaching for grades 7 through 12 administered by ETS between the dates of January 1, 2003 and May 1, 2004, whose tests were incorrectly scored, erroneously received false failing scores from the ETS, and were damaged thereby.

Plaintiff argues that "though most of the previously filed complaints involve substantially similar parties, allegations, and legal issues, they involve different legal theories and claims." Thus, plaintiff concedes that the parties are substantially similar. It is clear that ETS has shown the parties to be the same.

As to the claims, Ms. Jones alleges negligence and breach of contract. ETS argues that all of the previously filed lawsuits allege negligence and breach of contract.<sup>6</sup> Plaintiff states that her claims differ from the claims in the previously filed complaints because she asserts negligence and breach of contract under New Jersey law. Plaintiff further argues that the claims are not substantially similar because some of the prior actions allege counts other than negligence or breach of contract. However, plaintiff fails to note that all prior-filed claims do allege negligence and breach of contract. Though there may be additional claims such as breach of fiduciary duty, public policy, and violation of civil rights in some of the previously filed complaints, all suits, including this one in New Jersey, allege negligence and/or breach of contract and thus the same proofs are necessary in every suit. Plaintiff makes a general statement that her complaint alleges breach of contract and negligence under New Jersey law, but fails to show how the law in New Jersey regarding those claims is materially different from the state laws that will be applied in federal court. Therefore, not only are the claims of the lawsuits "substantially similar" as *American Home Products* requires, in some instances the claims are identical. Moreover, a refusal to stay or dismiss an action on the grounds of comity due to the dissimilarity of claims generally involves substantially different claims. *Exxon,* 341 *N.J. Super.* at 514. That is not the situation here.

<sup>6</sup>    For example, *Billet v. Educational Testing Service,* Docket Number 2:04–cv–3795, United States District Court for the Eastern District of Pennsylvania, and *Riehle v. Educational Testing Service,* Docket Number 3:04–cv–7430, United States District Court for the Northern District of Ohio, allege negligence and breach of contract. The other previously-filed cases allege as follows: *Adams v. Educational Testing Service,* Docket

Number 2:04–cv–1997, United States District Court for the Eastern District of Louisiana (negligence); *Johnson v. Educational Testing Service,* Docket Number 2:04–cv–2291, United States District Court for the Eastern District of Louisiana (negligence); *Brouse v. Educational Testing Service,* Docket Number 1:04–cv–1599, United States District Court for the Northern District of Ohio (negligence and public policy); *Kochensky v. Educational Testing Service,* Docket Number 2:04–cv–3794, United States District Court for the Eastern District of Pennsylvania (negligence, breach of contract, breach of fiduciary duty, violation of civil rights and equitable relief); and *Rutledge v. Educational Testing Service,* Docket Number 2:04–cv–03465, United States District Court for the Eastern District Pennsylvania (negligence and breach of contract).

**\*5** In conjunction with the requirement that there be substantially similar claims is the requirement that there be substantially similar legal issues. ETS argues that the issues presented in Ms. Jones' case are substantially similar to the issues presented in the previously-filed cases. Plaintiff appears to argue in her brief that the legal issues are not substantially similar. However, if the legal claims are substantially similar, it follows that many of the legal issues will be the same. The questions raised by these lawsuits are whether ETS erroneously scored the tests, whether ETS was negligent in doing so, whether ETS was negligent in failing to set up procedures to protect against such an error, and whether or not the plaintiffs suffered damages as a result of the scoring error. These very issues are at the heart of each case, and whether there are additional, more tangential issues to be determined in only one or some of the cases does not refute the fact that the key questions are substantially similar, if not identical. Therefore, defendant ETS has established that the issues in the previously filed actions are substantially similar.

Lastly, to meet the third prong, defendant must show that plaintiff can obtain adequate relief in the prior jurisdiction. As noted before, plaintiff meets the criteria to be a class member in many of the previously-filed suits. Moreover, the MDL Panel has issued an Order transferring and consolidating all related federal suits into the District Court for the Eastern District of Louisiana. At the time plaintiff took the Praxis test, she was a Louisiana resident. Moreover, plaintiff had her scores sent to Louisiana and intended to teach there. Certainly, plaintiff is not lacking contacts to Louisiana, nor would she be prejudiced if she had to adjudicate her claims in federal court. As stated before, the claims and issues are substantially similar, and based on the parties'

submissions, plaintiff has not shown that all relief available to Ms. Jones in the New Jersey courts would not be available to her in federal court.

She nonetheless argues that "while plaintiff may have the opportunity to receive relief in another jurisdiction, plaintiff's relief will be swifter in this court because discovery is moving at a faster pace than the others, and is, indeed, already underway. Therefore, there exists an opportunity for plaintiff to receive quicker relief in this state action." While plaintiff's chance to obtain quicker relief in this court should be considered when determining special equities, the fact remains that plaintiff can still obtain adequate relief in the other pending suits. Moreover, now that all federal cases have been consolidated for MDL case management in the United States District Court for the Eastern District of Louisiana, discovery is starting and it is not clear that a New Jersey State court action would conclude more quickly.[7] Therefore, defendant has established the third prong.

[7]    Plaintiff cites to *In re Pick-up Truck Fuel Tank Prod. Liability Litigation,* 1996 *WL* 683785, at *13 (E.D.Pa.1996), for the proposition that where there are simultaneous actions pending in federal and state courts, the federal court has no claim of priority to the litigation, as any one of the pending cases could be resolved first and would then have a preclusive effect on the others. First, this decision is unreported. Secondly, the question presented in *In re Pick-up Truck* was whether the federal court, where consolidated and coordinated cases are pending, should enjoin suits with the same facts and issues from proceeding in state court. *Id.* at *1. That issue is not before this court, and plaintiff's reliance on *In re Pick-up Truck* is thus unpersuasive.

**\*6** Because ETS can establish the three prongs required by the court in *American Home Products* to stay this action, it is entitled to have this matter held in abeyance, unless plaintiff can demonstrate special equities that would make such a result unjust. *American Home Products,* 286 *N.J. Super.* at 74. In determining whether special equities exist, a court may consider New Jersey's connection to the controversy or parties, whether or not a stay would thwart the public policy of New Jersey, how well advanced to the trial stage the New Jersey case is in comparison with the first-filed action, and convenience and fairness to the parties. *American Home Products,* 286 *N.J. Super.* at 74. First, New Jersey is connected to this action only because ETS has its principal place of business in Princeton, New Jersey. Plaintiff is a Georgia resident, was a Louisiana resident at the time she took the test in Louisiana, had her scores sent to Louisiana education authorities, and allegedly suffered damages

when she was not certified to teach in Louisiana. ETS is a New York corporation. In addition, ETS asserts that no resident of New Jersey was affected by the erroneous scoring, and that no one who took the test in or sent scores to New Jersey was affected. Therefore, the putative class of plaintiffs is not connected to New Jersey at all, and the effects of the alleged wrongful conduct were all experienced in other states.

Plaintiff attests that "[t]he scoring and statistical analysis that was conducted for the PPLT examination *most likely* occurred in New Jersey as a greater portion of all of ETS's Centers, including those for Statistical Analysis and Assessment Design and Scoring are located at ETS's headquarters in Princeton, New Jersey and therefore nearly all of the tortuous conduct complained of in those proceedings occurred there." (emphasis added). While that assertion may be borne out in discovery, it has not been confirmed at this stage of the litigation, and the only definitive connection between plaintiff's claims and New Jersey at present is that ETS's principal place of business is in Princeton. That fact alone is insufficient to deny the requested dismissal or stay. In *Bass v. DeVink*, 336 *N.J. Super.* at 455, the Appellate Division affirmed a stay entered by the trial court where a previously-filed case was pending in Delaware Chancery Court. The *Bass* Court explained: "Although Warner–Lambert and American Home Products have a strong presence in New Jersey, the subject of the litigation and the relief sought have no particular nexus to this state." *Id.* at 457. The lack of connection between the litigation and New Jersey, combined with the fact that both defendant corporations were incorporated in Delaware where that state's Chancery Court has widely acknowledged special expertise in shareholder litigation, convinced the *Bass* Court that there were no special equities warranting a refusal to stay the case. *Id.* at 457–58. Here, as in *Bass,* ETS's "strong presence" in New Jersey is not enough to warrant allowing a duplicative lawsuit to proceed here.

**\*7** Similarly, the court in *Exxon,* 341 *N.J. Super.* at 516–17, concluded that the establishment of a principal place of business in New Jersey for a company incorporated elsewhere does not, in and of itself, create a sufficient nexus to proceed in this state in the face of previously filed litigation where the subject matter of the lawsuit and the damages occurred elsewhere. There a technology was developed in New Jersey, but installed and operated in another jurisdiction, where it was alleged to have caused a serious industrial fire. The Appellate Division held, as had the trial court, that the fact that the technology was developed in this state was offset "by the simple fact that the final application and focus of the technology" was at the site of the fire in another

jurisdiction. *Id.* at 517. In this case, therefore, even if plaintiff Kathleen Jones can eventually show that the Praxis test was developed in New Jersey, the fact that the test was administered in Louisiana to the named plaintiff who was then a Louisiana resident, that the results were reported to education authorities in Louisiana and other states but not in New Jersey, and that plaintiff was thus not certified to teach in Louisiana and thus sustained her damages there, all support the conclusion that this New Jersey court should stay its consideration of the case in favor of the federal multidistrict litigation recently assigned to proceed in Louisiana.

Fairness to the parties also requires that this court yield to the first-filed action. In general, New Jersey's public policy seeks to protect its residents, and to deny the stay in this matter would thwart that public policy by forcing ETS to defend itself simultaneously in two separate class action suits in two separate forums. Not only will simultaneous lawsuits place great burden and expense upon defendant, but it will also utilize this court's time, for a duplicative action, contrary to New Jersey's public policy of conserving judicial resources. "The stay advances our strong policy of avoiding vexatious and oppressive multiple litigation in different jurisdictions." *Bass,* 336 *N.J. Super.* at 458; *Exxon,* 341 *N.J. Super.* at 517–18.

Plaintiff further argues that she will receive quicker relief in this action than she would in the federal actions because discovery is already underway here. However, discovery has just begun in this matter, as plaintiff served ETS with discovery requests and interrogatories on September 10, 2004. ETS should not be forced to defend itself in two simultaneous litigations simply because discovery is moving "quicker" in the New Jersey case. Moreover, the multidistrict court has now conferenced the case and initiated a coordinated discovery process. It is not at all clear, therefore, that the New Jersey state case could be concluded any quicker than the parallel federal actions. In any event, staying this court's hand where there is a comprehensive, coordinated discovery process now begun in Louisiana would conserve judicial resources and promote sound judicial administration.

**\*8** Lastly, plaintiff argues that the *forum non conveniens* analysis applies when determining whether special equities exist. However, the court in *American Home Products* specifically compared the principles of comity and *forum non conveniens,* and stated, at 286 *N.J. Super.* at 35:

> *Forum non conveniens* and comity are separate concepts and the reasoning animating each, though somewhat overlapping, is distinct....The general rule

favors stay or dismissals in comity-stay situations, in the absence of special equities. The general rule in a *forum non conveniens* analysis favors retention of jurisdiction, unless the forum is manifestly inappropriate.

The court further explained:

> The insurers are correct in reasoning that "special equities" should not simply be interchangeable with the *forum non conveniens* factors; doing this effectively transforms a comity-stay analysis into a *forum non conveniens* analysis, equating the two. However, the insurers' contention that *forum non conveniens* factors are "wholly irrelevant" is not correct. Considerations such as convenience and fairness to the parties, as well as connections with the respective forums, could, in a particular case, give rise to special equities. The difference in a comity analysis is that these factors should be examined, not to determine if litigation in the forum is generally appropriate, but to determine whether a particular case presents specific facts making a stay in New Jersey unjust to the interests of the parties or an unfair and inefficient use of the courts of this State. [*Id.* at 39.]

Therefore, while a strict *forum non conveniens* analysis should not be used to determine special equities, a court may borrow some of the considerations from that analysis. Such considerations are the fairness and convenience to the parties. In staying this action, plaintiff will not be prejudiced because she is not a New Jersey resident. Whether this litigation occurs in New Jersey state court or in the Eastern District of Louisiana, plaintiff will have to travel from Georgia to another jurisdiction. Plaintiff argues that ETS's centers and employees are in New Jersey and thus the litigation should remain in New Jersey for the sake of those potential witnesses. However,

litigation is already pending in federal court, and those ETS employees that are targeted as witnesses will be forced to travel to Louisiana anyway. ETS, furthermore, sought to have the matters managed in Louisiana and has agreed to whatever inconveniences that forum might present. Fairness and convenience to the parties thus support this court's staying its hand.

ETS has moved to either stay this case or dismiss the complaint without prejudice. Now that the MDL Panel has consolidated the federal actions in Louisiana, and that matter is proceeding, this court will dismiss the complaint of Kathleen Jones without prejudice to her reinstating it, if appropriate, following the conclusion of the parallel federal proceedings. A dismissal without prejudice rather than a stay makes more sense as a matter of judicial administration because it is unclear how long the federal litigation will take to conclude, as it could conceivably extend beyond the length of a typical stay. As the court noted in *Exxon,* 341 *N.J* . *Super.* at 519, "a dismissal subject to affording a plaintiff the right to reopen, depending upon future events, is a proper disposition when exercising discretionary power to yield to an earl[ier] filed action." Of course, the dismissal without prejudice preserves the plaintiff's claims as of the filing of the original complaint, so that statute of limitations concerns have been satisfied. The court thus will grant defendant ETS's motion to dismiss the complaint without prejudice.

**All Citations**

Not Reported in A.2d, 2005 WL 975337

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

CASE 0:24-md-03108-DWF-DJF   Doc. 57-2   Filed 09/05/24   Page 73 of 81

Van Emden Management Corp. v. Marsh & McLennan..., Not Reported in...

20 Mass.L.Rptr. 79

20 Mass.L.Rptr. 79
Superior Court of Massachusetts.

VAN EMDEN MANAGEMENT
CORPORATION, Plaintiff

v.

MARSH & McLENNAN
COMPANIES, et al, Defendants.

No. 05-0066-A.
|
Sept. 21, 2005.

*MEMORANDUM AND ORDER ON DEFENDANTS'
MOTION FOR STAY OF PROCEEDING PENDING
FEDERAL MULTI-DISTRICT LITIGATION*

D. LLOYD MACDONALD, Justice.

**\*1** *After hearing in which counsel for all parties were
present, the Defendants' motion is ALLOWED.*

*Pertinent Background*

The Plaintiff Van Emden Management Corporation
("Plaintiff" or "Van Emden") is a property manager
for several commercial and residential properties in
Massachusetts. In January 2005 it brought this action
against the Defendant Marsh & McLennan Companies,
Inc. and Marsh, Inc. (collectively, "Marsh") and six
insurance companies (collectively, the "Insurance Company
Defendants"). Van Emden did so on its own behalf and on
behalf of two classes of similarly situated plaintiffs. The first
class Van Emden seeks to be certified is pursuant to G.L. c.
93A, § 11 (the "93A Subclass"). The other class is pursuant
to Mass. R. Civ. P. 23 (the "Non-93A subclass").

The factual allegations rest on purported intersecting schemes
by Marsh (described as the largest commercial insurance
brokerage house in the world) and the Insurance Company
Defendants. In the first of the alleged schemes Marsh is
said to have taken kickbacks in the form of "contingent
commissions" from the Insurance Company Defendants
for placing commercial insurance business with Marsh's
customers (one of which was the Plaintiff). The second
scheme is described as a bid-rigging swindle whereby Marsh

solicited and obtained fictitious high quotes from insurance
companies to protect favored insurance companies, including
the Insurance Company Defendants.

The complaint sounds in breach of fiduciary duty against
Marsh, violation of the Massachusetts antitrust statute, G.L.
c. 93 § 4 (all defendants), G.L. c. 93A, § 11 [predicated on
violations of G.L. c. 176D, § 3(8) ] (the Insurance Company
Defendants), G.L. c. 93A, § 11 [predicated on alleged unfair
competition and unfair and deceptive acts] (all defendants),
civil conspiracy (all defendants) and injunctive relief (all
defendants).

The Plaintiff filed the instant complaint in January 2005.
However, as early as August 2004 a class action complaint
involving substantially identical allegations of fact was filed
against Marsh in the federal court in the Southern District
of New York. Before the present action was filed, eight
additional class actions were filed against Marsh in various
federal courts. By March 2005 nine other federal class
complaints were entered against Marsh and various insurance
company defendants, which were alleged (as the Insurance
Company Defendants here are) to have conspired with Marsh
in the perpetrating the schemes noted above. As of the date
of the hearing in this matter, all but one of the Insurance
Company Defendants had been named as a defendant in one
or the other of the other pending federal class actions.

All the above litigation arose from disclosures emanating
from an investigation by the office of the Attorney General
of the State of New York, Eliot Spitzer ("Spitzer"). And in
October 2004 Spitzer filed a civil fraud complaint against
Marsh in the New York courts resting on the "contingent
commission" and "bid-rigging" allegations underlying the
Van Emden complaint. On January 30, 2005 Spitzer
announced a settlement with Marsh wherein an $850 million
settlement fund was set up for payment to the victims of
Marsh's alleged schemes (the "New York Settlement"). The
deadline for the filing of claims in the New York Settlement
is September 20, 2005.

**\*2** Meanwhile, in the wake of the filing of the various
federal class action complaints, the Federal Judicial Panel
on Multi-District Litigation ordered that pending and future
class actions alleging the Marsh schemes be consolidated in
the District of New Jersey before U.S. District Judge Faith
Hochberg (the "MDL Litigation") [1]. Since her designation
as the MDL judge, Judge Hochberg has issued orders that,
*inter alia,* designated lead counsel, approved the formation

and constitution of a plaintiffs executive committee and established discovery and briefing schedules. Pursuant to the latter, close of discovery in the MDL Litigation is set for August 31, 2006.

*Merits of the Issue Before the Court*

The Defendants have moved to stay the present action. They urge that in light of the MDL Litigation (and to a lesser extent, the New York Settlement) considerations of judicial economy compel it. The Plaintiff agrees that reasons of judicial economy should guide the Court's decision, but the Plaintiff submits that the unique aspects of 93A relief, both from a substantive law perspective and procedurally for class certification, make the Massachusetts state court forum the most appropriate one for the resolution of the issues raised in its complaint. (The Plaintiff also cites the state interest in having Massachusetts courts interpret G.L. c. 176D's application to the facts of the alleged scheme as a compelling reason to permit the litigation to go forward here.)

The decision whether to grant a stay in these circumstances requires a judgment that balances the judicial interest in the efficient disposition of cases, principles of comity and the substantive interests underlying the causes of action in the proceeding being sought to be stayed. *Danvers v. Wexler Const. Co., Inc.,* 12 Mass.App.Ct. 160, 164 (1981), citing *Landis v. North American Co.,* 299 U.S. 248, 254-255 (1936). How the efficient disposition of cases "can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. North American Co.,* 299 U .S. 248, 254-255 (1936). See also *Travenol Laboratories, Inc. v. Zotal, Ltd.,* 394 Mass. 95, 97 (1985); *Consolidated Ordnance Co. v. Marsh,* 227 Mass. 15, 20 (1917) (two concurrent suits brought respectively in a District Court of the United States and in a court of equity of the Commonwealth against the same defendant and for the same cause of action).

On the facts before the Court, the balance appears strongly weighted toward an order to stay. In the Court's judgment, to permit the litigation here to go forward would disserve the public interest in fair and efficient case management and would compromise principles of comity.

The most significant factor, in the Court's estimation, is the nature and status of the MDL Litigation in the federal court in New Jersey. The MDL Litigation represents a *national* forum

for the disposition of the grave allegations against Marsh and (at this point, all but one of) the Insurance Company Defendants.

**\*3** The factual allegations in the Van Emden complaint are identical in substance to the federal class actions that have been consolidated before Judge Hochberg. (Without disagreement by Plaintiff's counsel, it was asserted by the defendants at the hearing on the present motion that the schemes at issue were all hatched and thereafter overseen by Marsh's senior corporate management, who were physically located at Marsh's headquarters in New York City.) Moreover, the theories of relief advanced, whether under federal (civil RICO) or state (unfair and deceptive practices) claims, are in essence similar to the c. 93A, § 11 relief sought by Van Emden. [2]

The Court is mindful that the SJC has emphasized the strong state interest in ensuring that 93A's expansive class certification standard be respected in practice. 93A "was designed to meet a pressing need for an effective private remedy for consumers, and ... traditional technicalities are not to be read into the statute in such a way as to impede the accomplishment of substantial justice". *Aspinall v. Philip Morris Co., Inc.,* 422 Mass. 381, 392 (2004).

However, here there appears to be no such risk. As noted above, procedural orders have entered in the MDL Litigation that clearly demonstrate that the MDL Litigation is being diligently managed by the presiding federal judge. Thus, this is not a situation where substantial Massachusetts-based interests would be held in limbo in deference to a stalled proceeding in another forum. Moreover, the effective enforcement of rights arising under G.L. c. 93A is a routine occurrence in the exercise of the federal courts' diversity jurisdiction. See, e.g., *Cambridge Plating Co., Inc. v. Napco, Inc.,* 85 F.3d 752, 769 (1st Cir.1996). And there is no bar, of course, to 93A claims being pressed in the MDL Litigation (as the Court understands they already are).

Furthermore, if the Court were to deny the stay, inconsistent rulings on issues of discovery, class certification and other substantive matters would be likely. That circumstance would disrupt the orderly disposition of the national litigation and generate substantial economic costs for all the parties involved.

By way of illustration, at the motion hearing in this matter, counsel informed the Court that the document inventory

Van Emden Management Corp. v. Marsh & McLennan..., Not Reported in...

20 Mass.L.Rptr. 79

and index in the MDL Litigation already contain over a million documents. If discovery orders are at odds with each other were to issue from multiple courts under such circumstances, acute (and unnecessary) hardship to the parties would be caused. Further, the fact of such conflicting orders would (also unnecessarily) burden the courts then exercising concurrent jurisdiction as such conflicts would fuel additional motion practice before those courts.

In a matter like this that involves substantial commercial interests, the Court looks, as well, for guidance from decisions of the Business Litigation Session of the Superior Court. No decision precisely paralleling the case before the Court was found, but in an analogous setting that arose under *Mass. R. Civ. P. 12(b)(9)*, Judge van Gestel addressed a situation of competing federal and state actions in a manner instructive to the resolution of the issues here. *Seidman v. Central Bancorp, Inc.,* 2003 WL 369678 (Mass.Superior) (February 3, 2003).

**\*4** In that case, despite the circumstance that the express terms of *Rule 12(b)(9)* did not apply because the cases at issue were not all state cases, the *Seidman* court noted that "[t]his is a classic situation for which *Mass. R. Civ. P. 12(b)(9)* was adopted". This was because "aside from perhaps inconsequential issues about some additional claims and parties in each case, the thrust of all three actions is essentially identical." *Id.*

Judge van Gestel ordered the state action stayed because to do otherwise, he ruled, would "set up the potential for differing declarations by two separate judges, after duplicate hearings or trials, on identical issues of facts and law.... [T]here certainly is no reason to proceed further with [the state] actions until there is some indication-which there is absolutely none now-that the matters are not moving forward in the Federal Court." *Id.* The facts before the Court here compel a similar result.

In this time of increasingly rapid communication and flow of information and goods and services across state borders, it is to be anticipated that litigation will increasingly arise in multiple forums. Under such circumstances, it is especially important that the scarce judicial resources of the Commonwealth be applied in a manner that maximizes the protection and validation of substantively significant interests. Those interests are best served by staying further action on the Van Emden complaint.

### *ORDER*

The present matter is stayed pending disposition of *In Re Insurance Brokerage Antitrust Litigation,* MDL No. 1663, Civil Action No. 04-5185(FSH) (USDC D.N.J.) or until further order of this Court.

**All Citations**

Not Reported in N.E.2d, 20 Mass.L.Rptr. 79, 2005 WL 2456737

---

### Footnotes

1    *In Re Insurance Brokerage Antitrust Litigation,* MDL No. 1663, Civil Action No. 04-5185(FSH) (USDC D.N.J.).

2    In evaluating whether a practice is unfair in a *G.L. c. 93A, § 11* claim, a court assesses "(1) whether the practice ... is at least within the penumbra of some common-law, statutory or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive or unscrupulous; [and] (3) whether [the conduct] caused substantial injury...." *PMP Associates, Inc. v. Globe Newspaper Co.,* 366 Mass. 593, 596 (1975). "[The statute] 'ties liability for multiple damages to the degree of the defendant's culpability by creating two classes of defendants.' Those defendants who have committed 'relatively innocent violations' of the statute are not liable for multiple damages, while a second class of defendants who have committed 'willful or knowing' violations are." *DataComm Interface v. ComputerWorld, Inc., et al,* 396 Mass. 760, 779 (1986). A "willful or knowing" violation is one where either the defendant affirmatively knew that a material representation was false or that the defendant made the representation with reckless disregard of its truth or falsity. See *Shaw v. Rodman Ford Truck Center, Inc.,* 19 Mass.App.Ct. 709, 711-12 (1985). See also *Anthony's Pier Four, Inc., v. HBC Associates, et al,* 411 Mass. 451, 475 (1991). The Van Emden complaint and the various complaints

comprising the MDL Litigation allege exactly this type of egregious conduct. As to the allegations in the MDL cases, see Commercial Insurance Plaintiffs' RICO Statement Pursuant to Local Rule 16.1(B)(4) (appearing as Exhibit 2 to the Affidavit of Daniel Savrin, dated September 8, 2005).

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

23 Mass.L.Rptr. 192
Superior Court of Massachusetts,
Worcester County.

Robert WILLIAMS

v.

FEDEX GROUND PACKAGE SYSTEM, INC. et al. [1]

No. 062344C.
|
Sept. 20, 2007.

*MEMORANDUM OF DECISION AND ORDER
ON DEFENDANTS' MOTION TO STAY CASE
PENDING PARALLEL FEDERAL MULTI–
DISTRICT LITIGATION PROCEEDING*

JAMES R. LEMIRE, Justice.

**\*1**  The defendants, FedEx Ground Package System, Inc., FedEx Home Delivery, and John Ciappi (collectively "FedEx") move to stay this action, brought by Robert Williams ("Williams"), pending the outcome of certain cases proceeding in the federal courts. For the following reasons, the defendants' motion is *ALLOWED*.

*BACKGROUND*

Williams was a FedEx delivery driver until his termination in December 2005. He alleges that FedEx wrongfully terminated him because of an on the job injury, in violation of Massachusetts anti-discrimination laws. Williams alleges employment discrimination under G.L.c. 151B. Alternatively, he alleges violation of G.L.c. 93, § 103, the Massachusetts Equal Rights Act ("MERA"). In addition, Williams asserts a claim for misclassification of his employment status under the Massachusetts Independent Contractor Law, G.L.c. 149, § 148B.

Similar claims against Fed Ex have been asserted in numerous federal courts, including two cases filed in the District of Massachusetts. [2] The Judicial Panel on Multi–District Litigation ("MDL") has consolidated many of these cases because they contain common "factual questions arising from the classification of certain package delivery drivers as independent contractors rather than employees."

*In Re FedEx Ground Package System, Inc., Employment Practices Litigation (No. II),* 381 F.Sup.2d 1380, \* \*2–3 (J.P.M.L.2005). Williams is a potential member of the putative class in one of the consolidated cases transferred to the MDL proceeding from the District of Massachusetts. Certification of that class is pending. Williams contends that, if certified, he will opt-out of the class and pursue his claims in this court.

*DISCUSSION*

FedEx seeks a stay of this action pending the outcome of the MDL, in order to avoid a waste of judicial resources, duplicative discovery, and the risk of inconsistent outcomes. Specifically, FedEx seeks to avoid litigating the employment classification issue in both federal and state court, where different results could occur. The Supreme Court set forth the following standard by which courts must assess a motion to stay:

> [T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance ... Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.

*Landis v. North American Co.,* 299 U.S. 248, 254–55 (1936). Here, the court must assess whether FedEx's interest in avoiding duplicative proceedings, and potentially conflicting legal rulings, outweighs Williams' interest in proceeding with his claims in this court without delay.

In support of his opposition, Williams contends that federal litigation over the employment classification issue has no relevance to the outcome of his case in this court, because he can prevail on his discrimination claims regardless of

CASE 0:24-md-03108-DWF-DJF   Doc. 57-2   Filed 09/05/24   Page 78 of 81
Williams v. Fedex Ground Package System, Inc., Not Reported in N.E.2d (2007)

23 Mass.L.Rptr. 192

his employment status.[3] In essence, Williams argues that because G.L.c. 93, § 103 prohibits discrimination against all persons, and G.L.c. 151B prohibits discrimination against employees, he is protected no matter what his employment status is.

**\*2** However, Williams' rights as a non-employee, or independent contractor, are more limited. G.L.c. 93, § 103 states that "[a]ny person within the commonwealth, regardless of handicap ... shall, with reasonable accommodation, have the same rights as other persons to make and enforce contracts ..." Until 1991, "[42 U.S.C. § ] 1981 [which is the federal counterpart to the MERA] was read literally as [prohibiting discrimination with respect] only to the *making* and *enforcement* of contracts, and 'enforcement' was read narrowly to include only enforcement by legal process." *Danco, Inc. v. Wal–Mart Stores, Inc.,* 178 F.3d 8, 13 (1st Cir.1999) (emphasis in original), citing *Patterson v. McLean Credit Union,* 491 U.S. 164, 177–78 (1989). In applying this narrow interpretation to the phrase "make and enforce contracts," it is not clear whether Williams could prevail on the theory that FedEx violated his rights under the MERA in the absence of allegations that FedEx discriminated against him in the making of, or enforcement of, his contract.[4]

Although this court makes no determinations regarding Williams' MERA claim, it appears that G.L.c. 151B would afford him greater rights. To proceed under G.L.c. 151B, however, Williams must first establish that he was a FedEx employee.[5] This threshold legal issue is identical to the issue being litigated in the MDL, and this court finds that it is material to the outcome of Williams' claims in this case. Thus, the court rejects Williams' contention that the employment classification question is unrelated, or irrelevant to his discrimination claims.

Beyond the existence of a common legal question Williams acknowledges that the factual allegations surrounding his employment status are identical in both this action and the federal actions. Williams argues that this commonality weighs against a stay because no duplicative discovery on the issue will be required in this proceeding.[6] Williams argues that the only discovery required in this case will relate to the specific circumstances surrounding his termination, which are not at issue in the MDL. However, even assuming that no additional discovery is required with respect to the misclassification issue proceeding with this case will result in multiple adjudications of the issue in different courts, with potentially conflicting results.[7] This situation is precisely why the court has discretion to stay this proceeding, in order to promote the orderly and efficient disposition of the matters before it.

As discussed above, none of Williams' claims can be resolved absent a determination of his employment status, which is squarely at issue in the MDL. Given that the MDL proceedings appear to be progressing at a fair pace,[8] and that Williams' own attorneys are representing the Massachusetts plaintiffs in those proceedings, it is not unreasonable to stay this action temporarily so as to allow the federal courts a chance to address the classification issue.[9] Indeed, a ruling favorable to Williams in the federal action may have preclusive effect on FedEx in this action, thereby strengthening Williams' discrimination claims and negating the need for multiple determinations of identical issues.

**\*3** Finally, Williams argues that a Massachusetts court should decide the classification issue as a matter of first impression. The Massachusetts Independent Contractor Law, G.L.c. 149. § 148B, was enacted in July 2004. Williams claims that, due to the unique standards set forth in the statute, and the lack of cases construing it, it would be most appropriate for a Massachusetts court to decide the issue. However, Williams has offered no argument why a federal court would be unable to properly apply the new Massachusetts law.[10] See *Fidler v. E.M. Parker Co.,* 394 Mass. 534, 542 (1985) (rejecting plaintiff's argument that she should be allowed to relitigate a novel issue of state law simply because it was decided by a federal court). In sum, this court concludes that the risk of important Massachusetts' policies being ignored in the MDL is minimal, and does not weigh against a stay of these proceedings.

*ORDER*

For the above-stated reasons, the Defendants' Motion to Stay Pending Parallel Federal Multi–District Litigation Proceeding is *ALLOWED*.

**All Citations**

Not Reported in N.E.2d, 23 Mass.L.Rptr. 192, 2007 WL 3013266

23 Mass.L.Rptr. 192

## Footnotes

1   FedEx Ground Package System, Inc. d/b/a FedEx Home Delivery and John Ciappi.

2   *Sheehan et al. v. FedEx Ground Package System, Inc.* (class action) (D.Mass. Civil Action No. 1:05–10936), and *Perry et al. v. FedEx Ground Package System, Inc.* (D.Mass. Civil Action No. 1:05–10976).

3   Although Williams asserts a misclassification claim under G.L.c. 149, § 148B, he argues that this claim is ancillary to his primary discrimination claims. Even assuming this is the case, as discussed below, Williams' employment status is material to his discrimination claims.

4   Congress amended § 1981 in 1991, explicitly defining "the phrase 'make and enforce contracts' to include 'the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.' " *Danco,* 178 F.3d at 13, quoting 42 U.S.C. § 1981(b). However, the Massachusetts legislature has not followed suit, and no Massachusetts court appears to have expanded the narrow interpretation of the *Patterson* Court. See *Greaney v. Heritage Hospital,* 4 Mass. L. Rptr. 663, 1995 WL 1146185, *5 (Mass.Super. Dec. 28, 1995)* (finding that "[i]t is not up to the court to impose on the statute some amendment that the legislature has not seen fit to adopt," and therefore, a plaintiff, who does not demonstrate any "infringement of his right to 'make' [a] contract, nor any infringement of his right to come to court and enforce that contract," fails to state a claim).

5   Indeed, even if Williams has an otherwise viable claim under the MERA, his employment status must be resolved as a threshold issue because G.L.c. 151B is an exclusive remedy for employees. See *Agin v. Federal White Cement, Inc.,* 417 Mass. 669, 672 (1994) (where "G.L.c. 151B is ... available to the plaintiff, the plaintiff would have no viable c. 93, § 103, claim").

6   Williams contends that, because his attorney is the attorney for the Massachusetts plaintiffs in the MDL, he has ready access to completed discovery on the independent contractor/employee issue, negating any risk of duplicative discovery in this court.

7   Williams argues that the risk of conflicting results already exists because the Division of Unemployment Assistance, in awarding him unemployment compensation, determined that he was an employee of FedEx. However, courts have accepted the risk of inconsistent rulings in the unemployment context, in order to further the policy of prompt resolution of unemployment matters. See *Tuper v. North Adams Ambulance Service, Inc.,* 428 Mass. 132, 136–37 (1998) (finding that employer is not precluded from relitigating issues determined in unemployment compensation proceedings because of the brevity of those proceedings). In contrast, no such policy outweighs the risk of inconsistent rulings in the circumstances of this case.

8   The MDL deadline for filing summary judgment motions on the issue of employment classification is September 21, 2007, approximately two months from the date of this decision.

9   While this court acknowledges Williams' right to opt-out of any certified class and pursue his claims individually, his doing so does not affect the court's analysis of whether a stay should be granted.

10  Williams' own lawyers will presumably be briefing and arguing the new law in the federal proceedings.

---

**End of Document**                                        © 2024 Thomson Reuters. No claim to original U.S. Government Works.

E-FILED
8/15/2024 9:01 PM
CLERK & MASTER
DAVIDSON CO. CHANCERY CT.

IN THE CHANCERY COURT FOR DAVIDSON COUNTY, TENNESSEE
AT NASHVILLE

| | | |
|---|---|---|
| MID-SOUTH IMAGING & THERAPEUTICS, P.A. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No.: 24-0723-III |
| | ) | |
| UNITEDHEALTH GROUP INCORPORATED, | ) | |
| OPTUM, INC., CHANGE HEALTHCARE, INC., and | ) | |
| CHANGE HEALTHCARE TECHNOLOGY | ) | |
| ENABLED SERVICES, | ) | |
| | ) | |
| Defendants. | ) | |

## [PROPOSED] ORDER GRANTING MOTION TO STAY PROCEEDINGS

**THIS MATTER** came before the Court on Defendants Change Healthcare Inc., UnitedHealth Group Incorporated, Optum, Inc., and Change Healthcare Technology Enabled Services, LLC's Motion to Stay Proceedings Pending Resolution of, or Pertinent Guidance From, Substantially Related Multidistrict Litigation captioned *In re: Change Healthcare, Inc. Customer Data Security Breach Litigation*, MDL No. 3108 (the "Substantially Related MDL") (the "Motion"). The Court has considered the Motion, and hereby **GRANTS** the Motion and **ORDERS** that, in the interests of comity and due to the overlapping issues of fact and law between this action and those in the pending Substantially Related MDL, these proceedings are stayed pending resolution of the Substantially Related MDL. Defendants' deadline to respond to the Complaint is hereby vacated until further notice.

**IT IS SO ORDERED** this ____ day of _____, 2024.

_____
**CHANCELLOR I'ASHEA L. MYLES**

Dated: August 15, 2024

Respectfully submitted,

*/s/ Kimberly M. Ingram-Hogan*
Allison M. Ryan (BPR 028584)
Hogan Lovells US LLP
555 13th Street NW
Washington, DC 20004
T. (202) 637-5600
F. (202) 637-5910
allison.holt-ryan@hoganlovells.com

E. Todd Presnell (BPR 017521)
Kimberly M. Ingram-Hogan (BPR 35191)
**BRADLEY ARANT BOULT CUMMINGS LLP**
One 22 One
1221 Broadway, Suite 2400
Nashville, TN 37203
T. (615) 252-2355
F. (615) 252-6355
tpresnell@bradley.com
kingram@bradley.com

*Counsel for Defendants*