**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| **IN RE: CHANGE HEALTHCARE, INC. CUSTOMER DATA SECURITY BREACH LITIGATION**<br><br>*This Document Relates to All Actions* | Case No. 24-md-3108 (DWF/DJF)<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |

**TABLE OF CONTENTS**

**Page**

**INTRODUCTION** ........ 1

**BACKGROUND** ........ 3

**ARGUMENT** ........ **6**

I. Personal Jurisdiction ........ 6

*A. The Court Lacks General Personal Jurisdiction Over Change and Change Operations* ........ 9

*B. The Court Lacks Specific Personal Jurisdiction Over The Non-Minnesota Plaintiffs' Claims Against Change And Change Operations* ........ 10

II. Plaintiffs' Misuse of the MDL Process Is Barred by This Court's Prior Orders and the MDL Statute ........ 13

**CONCLUSION** ........ **16**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Am. Med. Collection Agency*,
No. CV 19-MD-2904 (D.N.J.) .......... 3, 15, 16

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*,
582 U.S. 255 (2017) .......... 7, 8, 9, 10

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) .......... 9, 10

*Dever v. Hentzen Coatings, Inc.*,
380 F.3d 1070 (8th Cir. 2004) .......... 8

*Epps v. Stewart Info. Servs. Corp.*,
327 F.3d 642 (8th Cir. 2003) .......... 11

*Fastpath, Inc. v. Arbela Techs. Corp.*,
760 F.3d 816 (8th Cir. 2014) .......... 8, 10

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) .......... 9

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
No. H-10-171, 2011 WL 1232352 (S.D. Tex. Mar. 31, 2011) .......... 14

*International Shoe Co. v. Wash. Office of Unemployment Comp. and Placement*,
326 U.S. 310 (1945) .......... 7, 9

*Juelich v. Yamazaki Mazak Optonics Corp.*,
682 N.W.2d 565 (Minn. 2004) .......... 7

*K-V Pharm. Co. v. J. Uriach & CIA, S.A.*,
648 F.3d 588 (8th Cir. 2011) .......... 8

*Klein v. Arkoma Prod. Co.*,
73 F.3d 779 (8th Cir. 1996) .......... 14

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
523 U.S. 26 (1998) .......... 3, 13, 14

*Rush v. Savchuk*,
444 U.S. 320 (1980) .......... 11

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Sleep Number Corp. v. Young*,
507 F. Supp. 3d 1081 (D. Minn. 2020) ........................................ 10

*In re Takata Airbag Prods. Liab. Litig.*,
379 F. Supp. 3d 1333 (S.D. Fla. 2019) ........................................ 3, 15

*Thompson v. Comm'r*,
821 F.3d 1008 (8th Cir. 2016) ........................................ 14

*Vallone v. CJS Sols. Grp., LLC*,
9 F.4th 861 (8th Cir. 2021) ........................................ 8, 10, 13

*Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*,
646 F.3d 589 (8th Cir. 2011) ........................................ 8

*Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*,
65 F.3d 1427 (8th Cir. 1995) ........................................ 10

**Statutes**

28 U.S.C. § 1407 ........................................ 1, 2, 13, 16

28 U.S.C. § 1407(a) ........................................ 3, 13, 16

**Rules**

Fed. R. Civ. P. 4(k)(1)(A) ........................................ 7

Fed. R. Civ. P. 12(b)(2) ........................................ 8

Plaintiffs are attempting to direct-file the claims of an entire MDL before this Court notwithstanding a lack of jurisdiction over the vast majority of those claims, this Court's prior orders, and the MDL requirements under 28 U.S.C. § 1407. This strategic maneuvering by Plaintiffs should not be allowed for the reasons discussed below.

On January 15, 2025, Plaintiffs advised Defendants that they would file their Consolidated Class Action Complaints ("Consolidated CACs") directly in the District of Minnesota pursuant to PTO No. 1. Decl. of Allison M. Ryan ¶ 2, Ex. A at 4 (Jan. 15, 2025 Email). Under PTO No. 1, and consistent with the MDL statute, 28 U.S.C. § 1407 (which grants nationwide venue in any court for MDL pretrial proceedings), cases may be filed "directly in the District of Minnesota for *pretrial proceedings only*" unless the Parties "agree[], at a future date, to try [directly filed cases] in this District." Dkt. 54 ¶ 7 (emphasis added). Plaintiffs and Defendants never agreed to try the Consolidated CACs cases in this District, so Defendants reasonably expected that Plaintiffs would identify a transferor court for the claims included in the Consolidated CACs, allowing them to be transferred to the appropriate court for trial after the conclusion of pretrial proceedings.

On February 10, 2025, however, Plaintiffs stated for the first time that the Consolidated CACs were *not* filed under PTO No. 1 or in the MDL docket, but instead asserted that they were filed in the District of Minnesota as a Court of original jurisdiction. Ryan Decl. ¶ 3, Ex. B (Feb. 10, 2025 Email). Plaintiffs subsequently have refused to identify a transferor court and instead have informed Defendants that they intend to try the nationwide class actions pled in the directly filed Complaints in this Court.

Plaintiffs' position is untenable (and wholly inappropriate) for at least two reasons. *First*, under Plaintiffs' own allegations, this Court lacks personal jurisdiction over the vast majority of named Plaintiffs' claims asserted against Change Healthcare Inc. ("Change") and Change Healthcare Operations ("Change Operations"), who are the primary defendants in these suits. These defendants, as alleged in the Complaints, are incorporated in Delaware and have their principal place of business in Tennessee, and Plaintiffs' claims do not arise out of either entity's purposeful contacts with Minnesota, particularly as to claims brought by any named Plaintiff that is not a resident of Minnesota.[1] *Second*, Plaintiffs' attempt to directly-file an entire MDL Complaint before this Court for trial undercuts Defendants procedural rights under 28 U.S.C. § 1407 and this Court's Orders.

The purpose of an MDL is to coordinate the pretrial proceedings for *all* MDL cases, particularly those transferred by the Judicial Panel on Multidistrict Litigation ("JPML") from other federal districts across the country. *See* Dkt. 1 at 2 ("Centralization will avoid the possibility of inconsistent pretrial rulings, particularly with respect to class certification."). Plaintiffs' strategic pleading strategy, however, would not allow the Court to resolve pretrial issues for all cases in the MDL and has left Defendants with no choice but to file a motion seeking dismissal for lack of personal jurisdiction of (1) all claims brought by the 88 non-Minnesota Plaintiffs in the Consolidated CACs against Change; and

[1] Change and Change Operations are not challenging the Court's personal jurisdiction over the claims brought by Minnesota residents as their alleged injury was felt within the State of Minnesota providing a nexus between Change's alleged contacts with Minnesota and these Plaintiffs' claims.

(2) all claims except for Count IV brought by the 26 the non-Minnesota Plaintiffs in the Provider Consolidated CAC against Change Operations.

Alternatively, and for reasons of efficiency, the Court could resolve this motion by finding that it "cannot permit this kind of strategic pleading" under the MDL statute, 28 U.S.C. § 1407(a), and PTO No. 1 and identifying a proper transferor court for the directly filed claims.[2] *In re Takata Airbag Prods. Liab. Litig.*, 379 F. Supp. 3d 1333, 1344 (S.D. Fla. 2019) (discussing § 1407(a) and *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 40 (1998)). Defendants respectfully submit that the appropriate transferor court for these claims is the district in which each Plaintiff resided at the time of filing and where personal jurisdiction over all Defendants would be proper. *See In re Am. Med. Collection Agency,* No. CV 19-MD-2904 (D.N.J.), Dkt 301 (entering similar direct file order).

## BACKGROUND

For the sake of brevity, Defendants incorporate by reference the statements of fact included in the corresponding motions to dismiss filed by Defendants in each of the Consolidated CACs. Facts most pertinent to this motion are included below.

On March 12, 2024, certain plaintiffs—each of whom sought to represent a putative class action—filed a motion with the JPML asking for the transfer and centralization for pretrial proceedings of all data-breach-related actions brought against "primary defendant"

---

[2] Defendants expect that, if the Court finds personal jurisdiction lacking over any of the Plaintiffs' claims, Plaintiffs will follow standard MDL procedure and refile their claims in their home states to be transferred into the MDL.

Change. *See In Re Change Healthcare Inc. Data Breach Litigation*, Case MDL No. 3108 (J.P.M.L.) [hereinafter, "JPML"], Dkt. 1 at 4. The plaintiffs noted that "the data breach involved Change Healthcare's systems, not the systems of its parent corporation UnitedHealth Group" and that Change "is headquartered in Nashville, Tennessee, and its officers and executives are located in Tennessee." *Id.* at 11. The JPML granted the motion, consolidated the cases in this MDL for pretrial proceedings, and transferred them to this Court. *See In Re Change Healthcare Inc. Customer Data Security Breach Litig.* Case No. 24-md-3108 (DWF/DJF), Dkt. 1 at 2 ("Centralization will avoid the possibility of inconsistent pretrial rulings, particularly with respect to class certification.").

Between the MDL's initiation and August 24, 2024, the JPML transferred over 40 cases into the MDL from federal district courts across the country. *See id.*, Dkt. 43 (noting that as of July 9, 2024, 41 cases had been transferred and transferring 2 additional cases). On August 24, 2024, the Court issued PTO No. 1 establishing preliminary procedures and appointing temporary interim counsel. Dkt. 54. PTO No. 1 included a direct-filing provision, allowing "[a]ny Plaintiff whose case would be subject to transfer into this MDL [to] file their case directly in the District of Minnesota *for pretrial proceedings only*." *Id.* ¶ 7 (emphasis added). The Court noted, however, that "[n]othing in this Order shall preclude the Parties from agreeing, at a future date, to try cases filed pursuant to this Order in this District." *Id.* Following PTO No. 1, the JPML transferred another five cases into the MDL from federal district courts across the country. *See id.*, Dkt. 64 (noting that as of September 9, 2024, 44 cases had been transferred and transferring 3 additional cases); *id.*

Dkt. 111 (noting that as of November 18, 2024, 47 cases had been transferred and transferring 2 additional cases).

On January 15, 2025, Plaintiffs informed Defendants that they would be directly filing the two Consolidated CACs under PTO No. 1 in this Court. *See* Ryan Decl. ¶ 2, Ex. A at 4 (Jan. 15, 2025 Email). Later that same day, the Individual and Provider Consolidated CACs were directly filed in this Court, but not in the MDL Docket. *Christenson v. UnitedHealth Grp. Inc.*, Case No. 25-cv-00183 (D. Minn), Dkt. 1 [hereinafter "Individual CAC"]; *Total Care Dental and Orthodontics v. UnitedHealth Grp. Inc.*, Case No. 25-cv-00179 (D. Minn.), Dkt. 1 [hereinafter "Provider CAC"].

Both Consolidated CACs contained new named Plaintiffs, meaning that those new named Plaintiffs were not a part of the previously filed cases the JPML transferred to the MDL from other jurisdictions or directly filed in the District of Minnesota. Indeed, the Consolidated CAC filed in the Individual Track is made up of 65 entirely new named Plaintiffs, seeking to represent a nationwide class and subclasses in all 50 States. Individual CAC ¶¶ 386-87. [3] *None* of the Plaintiffs in the Individual CAC were a part of any of the underlying cases that created this MDL, and only three of the newly named individual Plaintiffs reside in Minnesota. *Id.* ¶¶ 72, 74, 76.

The Consolidated CAC filed in the Provider Track included 28 named provider Plaintiffs, 14 of which had not previously filed suit in the MDL. The 28 named provider

[3] Given that the Consolidated Individual CAC included all new plaintiffs, it is unclear what "consolidation" was accomplished by the filing of the Consolidated Class Action Complaint.

Plaintiffs seek to represent a nationwide class and subclasses of providers that (1) participated in the Temporary Funding Assistance Program ("TFAP"); (2) directly contracted with Change; and (3) certain "Statewide Classes." *See generally id.* ¶¶ 266-436. Only two of the 28 named provider Plaintiffs reside in Minnesota. *Id.* ¶¶ 348, 355. Nine days later, Plaintiffs again represented to Defendants that they relied on PTO No. 1's direct-file provision to file the Consolidated CACs in this Court. Ryan Decl. ¶ 2, Ex. A at 1 (Jan. 24, 2025 Email).

Between January 24, 2025 and February 10, 2025—under PTO No. 1 and standard MDL procedure—Defendants repeatedly asked Plaintiffs to name the transferor court to which the directly filed Consolidated CACs would be returned. Plaintiffs refused, and on February 10, 2025, for the first time, informed Defendants that they do not view their Consolidated CACs as having been filed under PTO No. 1. Ryan Decl. ¶ 3, Ex. B at 1 (Feb. 10, 2025 Email). Plaintiffs now claim that they filed both Consolidated CACs in this Court and intend for all named Plaintiffs' claims to be tried in the District of Minnesota.

## ARGUMENT

### I. Personal Jurisdiction Is Lacking Over Claims Brought by the Non-Minnesota Plaintiffs

All claims brought against Change by the 88 non-Minnesota Plaintiffs in both the Individual and Provider Tracks should be dismissed for lack of personal jurisdiction.[4]

[4] For the avoidance of doubt, specific personal jurisdiction is lacking over all named Plaintiffs' claims brought against Change *except* for claims brought by named Minnesota Plaintiffs (1) Lisa Brooks, Individual CAC ¶ 72; (2) David Powers, *id.* ¶ 74; and (3) Roxanne Allen, *id.* ¶ 76, in the Individual Track and (4) Beginnings and Beyond

Similarly, all claims brought by the 26 non-Minnesota Plaintiffs against Change Operations should be dismissed for lack of personal jurisdiction, with the narrow exception of 11 Plaintiffs' claim related to the Temporary Funding Program (Count IV).[5]

Personal jurisdiction over Plaintiffs' claims before this Court can be exercised to the same extent as a Minnesota court of general jurisdiction, Fed. R. Civ. P. 4(k)(1)(A), and Minnesota law permits courts to exercise personal jurisdiction equivalent to the limits of the federal Due Process Clause. *Juelich v. Yamazaki Mazak Optonics Corp.*, 682 N.W.2d 565, 570 (Minn. 2004). For personal jurisdiction to be proper under the Due Process Clause, the defendant must have sufficient "minimum contacts" with the forum state so as not to offend traditional "notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945). Personal jurisdiction must be met on a defendant-by-defendant, claim-by-claim basis, and the contacts of one defendant may not be imputed to another. *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 265 (2017) ("The mere fact that other plaintiffs were prescribed, obtained, and ingested Plavix in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert

---

Counseling d/b/a Play Therapy Minnesota, Provider CAC ¶ 348; and (5) Dillman Clinic and Lab, Inc., *id.* ¶ 355, in the Provider Track.

[5] The 11 non-Minnesota provider Plaintiffs for whom jurisdiction exists only as to Count IV but not any other Count are: (1) Total Care Dental and Orthodontics; (2) Ridge Eye Care, Inc.; (3) K. Wade Foster MD, PA, d/b/a Florida Dermatology and Cancer Centers; (4) Pediatric Clinic, Ltd.; (5) Irwin Counseling Service, PLLC; (6) Advanced Cardiology of South Jersey, P.C.; (7) AMB Medical Services d/b/a DocCare; (8) Cultivating Mind LLC; (9) MedCare Pediatric Therapy, LP; (10) MedCare Pediatric Rehab Center, LP; and (11) MedCare Pediatric Nursing, LP. *See id.*

specific jurisdiction over the nonresidents' claims."); *Vallone v. CJS Sols. Grp., LLC*, 9 F.4th 861, 865 (8th Cir. 2021) ("Personal jurisdiction must be determined on a claim-by-claim basis."). "When personal jurisdiction is challenged by a defendant, the plaintiff bears the burden to show that jurisdiction exists" and "that burden does not shift." *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014) (citations omitted).

When personal jurisdiction over a defendant is lacking, a court has no power to adjudicate claims brought against that defendant, and the defendant must be dismissed from the litigation. *See, e.g.*, *Bristol-Myers*, 582 U.S. at 261–62 ("Because a state court's assertion of jurisdiction exposes defendants to the State's coercive power, it is subject to review for compatibility with the Fourteenth Amendment's Due Process Clause, which limits the power of a state court to render a valid personal judgment against a nonresident defendant." (cleaned up)). To survive a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, Plaintiffs "must make a prima facie showing that personal jurisdiction exists, which is accomplished by pleading sufficient facts 'to support a reasonable inference that the defendant[ ] can be subjected to jurisdiction within the state.'" *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591-92 (8th Cir. 2011) (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)) (brackets in original). Personal jurisdiction can be general or specific. *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593 (8th Cir. 2011). Here the vast majority of Plaintiffs do not—and cannot—demonstrate either as it relates to Change or Change Operations.

### A. *The Court Lacks General Personal Jurisdiction Over Change and Change Operations*

"A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Bristol-Myers*, 582 U.S. at 262 (emphasis in original). Because of its broad scope, general personal jurisdiction is limited and proper only if the defendant's "affiliations with the [forum] State are so 'continuous and systematic' as to render them essentially at home in the forum state." *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe,* 326 U.S. at 317). When the defendant is a corporation, it is "at home" for purposes of general jurisdiction in its "place of incorporation and principal place of business." *Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014) (cleaned up) (quoting *Goodyear,* 564 U.S. at 924).

Here, general personal jurisdiction over Change and Change Operations is lacking because neither is "at home" in Minnesota.[6] As Plaintiffs allege, both Change and Change Operations are incorporated in Delaware and have their principal places of businesses in Tennessee. Individual CAC ¶ 157; Provider CAC ¶¶ 21-22. Plaintiffs also do not allege that either entities' contacts with Minnesota is otherwise "so substantial and of such a nature" to allow the Court to find that either Change or Change Operations are "at home" in any place other than "its formal place of incorporation or principal place of business."

---

[6] Change Operations is a Defendant only in the Provider Track Complaint, not the Individual Track Complaint. *See Christenson v. UnitedHealth Grp. Inc.*, Case No. 25-cv-183 (D. Minn), Dkt. 1 at 1 (individual track complaint); *Total Care Dental and Orthodontics. v. UnitedHealth Grp. Inc.*, Case No. 25-cv-179 (D. Minn.), Dkt. 1 at 1 (provider track complaint).

*Daimler*, 571 U.S. at 139 n.19. The Court thus lacks general personal jurisdiction over Change and Change Operations. *See*, *e.g.*, *Sleep Number Corp. v. Young*, 507 F. Supp. 3d 1081, 1088 (D. Minn. 2020) (observing that the "[t]he parties do not dispute that the Court lacks general jurisdiction over" a corporation that was "neither incorporated nor headquartered in Minnesota.").

### *B. The Court Lacks Specific Personal Jurisdiction Over the Non-Minnesota Plaintiffs' Claims Against Change and Change Operations*

Specific jurisdiction refers to jurisdiction over claims that arise from a Defendant's purposeful contacts with the forum state. *Fastpath*, 760 F.3d at 820. Put another way, "[w]here a forum state seeks specific personal jurisdiction over a non-resident defendant, due process is satisfied if the defendant has purposely directed his activities at residents of the forum . . . and the litigation results from alleged injuries that arise out of or relate to those activities." *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1432 (8th Cir. 1995) (internal quotation marks omitted). The Court must determine whether specific jurisdiction exists on a claim-by-claim, defendant-by-defendant basis and may not impute one defendant's contacts with the forum state onto another. *See Bristol-Myers*, 582 U.S. at 265; *Vallone*, 9 F.4th at 865.

Courts within the Eighth Circuit examine five factors to determine whether specific personal jurisdiction exists: "(1) the nature and quality of defendant's contacts with the forum state; (2) quantity of contacts; (3) source and connection of the cause of action with those contacts; and to a lesser degree, (4) the interest of the forum state; and (5) the convenience of the parties." *Wessels*, 65 F.3d at 1432.

Specific personal jurisdiction is lacking as to Change for *all* 88 non-Minnesota Plaintiffs' claims in both the Individual and Provider Tracks. Specific personal jurisdiction is also lacking as to Change Operations for *all* claims brought by the 26 non-Minnesota provider Plaintiffs with the exception of Count IV, which is brought by only a small subset of the non-Minnesota providers (11 providers).[7] Beyond this single claim for these 11 provider Plaintiffs, all claims brought by Plaintiffs that do not reside in Minnesota must be dismissed for lack of specific jurisdiction.

***Change.*** None of the 88 non-Minnesota Plaintiffs in the Individual or Provider Track allege a connection between *any* of their claims and any Change contact with Minnesota. *See generally* Individual CAC; Provider CAC. When pressed for the basis that the Court has personal jurisdiction over Change, Plaintiffs did not reference a *single* contact between Change and Minnesota, let alone a purposeful contact between Change and Minnesota from which their claims arose. Instead, Plaintiffs could only point to alleged contacts with Minnesota by Change's affiliate Optum Insight. Ryan Decl., ¶ 4, Ex. C at 1-2 (Feb. 14, 2025 Email). But Plaintiffs cannot graft an affiliate company's contacts onto Change. *See Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 648-49 (8th Cir. 2003) (contacts can be imputed from corporation with personal jurisdiction to non-resident only if the corporation with personal jurisdiction "so controlled and dominated the affairs of the subsidiary that the latter's corporate existence was disregarded"); *Rush v. Savchuk*, 444

[7] These 11 providers have personal jurisdiction over Count IV as to Change Operations because that claim arises out of the TFAP contract, which consents to personal jurisdiction in Minnesota for claims arising out of that contract. Change Operations has not consented to personal jurisdiction to any other claim.

U.S. 320, 332 (1980) (personal jurisdiction "must be met as to each defendant over whom a . . . court exercises jurisdiction" and the contacts of one defendant may not be imputed to another). Moreover, none of the contacts Plaintiffs referenced between Optum Insight and Minnesota have anything to do with Plaintiffs' causes of action related to the data breach. *See* Ryan Decl, ¶ 4, Ex. C at 2 (Feb. 14, 2025 Email).

Specific personal jurisdiction, therefore, is lacking over Change for all of the 88 non-Minnesota Plaintiffs in the Individual and Provider Tracks.

***Change Operations.*** Specific jurisdiction over Change Operations similarly is lacking over claims brought by the 26 provider Plaintiffs that do not reside in Minnesota. Indeed, all claims brought by the 15 non-Minnesota provider Plaintiffs that do not allege a claim under Count IV lack personal jurisdiction. And the 11 non-Minnesota provider Plaintiffs that bring a claim under Count IV (the "Loan Plaintiffs") lack personal jurisdiction over any of their other claims. As with the non-Minnesota Plaintiffs' claims against Change, these Plaintiffs fail to identify even a single purposeful contact between Change Operations and Minnesota that their claims allegedly arise out of. That is because no such contacts exist.

When asked for their basis for alleging personal jurisdiction over Change Operations, Plaintiffs pointed only to the TFAP contracts entered into by Change Operations and the Loan Plaintiffs. Ryan Decl. ¶ 4, Ex. C at 1 (Feb. 14, 2025 Email). There is only one claim in this case related to the TFAP contract (Count IV), and that claim is only brought by the Loan Plaintiffs, not by any of the 15 non-Loan Plaintiffs who reside outside of Minnesota. Provider CAC ¶ 500. Plaintiffs have presented no basis for the

Court's personal jurisdiction over the claims brought by these 15 non-Minnesota entities.

Moreover, because "[p]ersonal jurisdiction must be determined on a claim-by-claim basis," meaning that "jurisdiction to entertain a claim with connections to Minnesota" cannot be used to "establish[] jurisdiction to hear another claim with no such connection," specific personal jurisdiction is also lacking over all claims brought by the 11 non-Minnesota Loan Plaintiffs except for Count IV. *Vallone*, 9 F.4th at 865-66.

Thus, with the exception of Count IV, specific personal jurisdiction is lacking over all claims brought by the 26 non-Minnesota provider Plaintiffs.

## II. Plaintiffs' Misuse of the MDL Process Is Barred by This Court's Prior Orders and the MDL Statute

Plaintiffs' strategic pleading is also barred by the MDL statute and this Court's prior orders.

The MDL procedure is a creature of federal statute and designed to increase efficiency by allowing multiple actions that share related facts to be transferred to a single federal district court for coordinated *pretrial proceedings* only. 28 U.S.C. § 1407(a) ("When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings."). Section 1407(a) unequivocally requires transfer back to the districts from which the cases came upon the conclusion of pretrial matters. *Id.* ("Each action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated."); *Lexecon*, 523 U.S. at 40 (holding that § 1407 "impos[es]

the Panel's responsibility to remand"). Put another way, the MDL court may not self-assign directly filed cases in the MDL to itself for trial. *Id.* at 40.

PTO No. 1, unsurprisingly, comports with this well-established rule. PTO No. 1 allows direct filing of cases in the "District of Minnesota *for pretrial proceedings only*" unless the parties agree to try the directly filed cases in this District. Dkt. 54 ¶ 7 (emphasis added). PTO No. 1 is also law of the case and should not be relitigated. *See, e.g.*, *Thompson v. Comm'r*, 821 F.3d 1008, 1011 (8th Cir. 2016) (noting that the law of the case doctrine "prevents relitigation of a settled issue in a case and requires that courts follow decisions made in earlier proceedings to insure uniformity of decisions, protect the expectations of the parties, and promote judicial economy" (cleaned up) (quoting *Klein v. Arkoma Prod. Co.*, 73 F.3d 779, 784 (8th Cir. 1996))).

Plaintiffs' strategic pleading of the Consolidated CACs violates the Court's expectations in PTO No. 1, the MDL statute, and the Supreme Court's decision in *Lexecon*. By (i) directly filing two entirely new cases in the District of Minnesota, containing nearly all new Plaintiffs (some of whose claims the Court plainly lacks personal jurisdiction over), and (ii) refusing to name a transferor court, Plaintiffs are attempting to turn the entire MDL process on its head and thwart the efficiencies and protections the MDL process was intended to create. *See, e.g.*, *See In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 2011 WL 1232352, at *4 (S.D. Tex. Mar. 31, 2011) (noting that direct filing "may present jurisdictional, venue, or related issues" that would not normally be present in a standard MDL proceeding). Indeed, if Plaintiffs' strategic pleading is allowed, Defendants expect that Plaintiffs will attempt to paper over glaring individualized and

manageability issues that would normally preclude class certification in a case like this by arguing that this Court may manage the nationwide class (and all subclasses) itself and not remand any cases to Plaintiffs' home states or originating districts. But Plaintiffs' maneuvering in an attempt to create a path to class certification where one does not exist is exactly the type of harm the MDL rules are intended to prevent.

Indeed, when other courts have faced similar direct filing maneuvers they have refused to abide this tactic. *See, e.g.*, *In re Takata*, 379 F.Supp.3d at 1344-45 (S.D. Fla. 2019) (not permitting similar direct filing maneuvers); *In re Am. Med. Collection Agency,* No. CV 19-MD-2904 (D.N.J.), Dkt 301 (entering direct file order deeming directly filed cases to have been filed in plaintiffs' home districts). For example, in *In re Takata*, after the MDL process began, plaintiffs directly filed a nationwide class action containing new plaintiffs, some of which resided in the forum state and some of which did not, and attempted to have that case heard by the MDL court. *In re Takata*, 379 F. Supp. 3d at 1344. In finding plaintiffs' request improper, the court noted that allowing plaintiffs to obtain a jury trial in the MDL transferee court "would not only thwart the entire purpose of the MDL statute, but it would also turn the Supreme Court's ruling in *Lexecon* on its head," noting that both "unequivocal[ly]" require transfer of the cases back to the district court from which they came upon the conclusion for pretrial proceedings. *Id.* at 1344-45.

This case is similar to *In re Takata*. Like *In re Takata*, Plaintiffs here (1) directly filed "consolidated" nationwide putative class actions in the MDL transferee district; (2) did so after the creation of the MDL; (3) included new plaintiffs in their directly filed actions that are not residents of Minnesota; and (4) are attempting to hold a trial (should

the case reach that point) in the MDL transferee district. *See id.* at 1343-45. Like the plaintiffs in *In re Takata,* Plaintiffs here should not be "permit[ed] this kind of strategic pleading" because it is in direct violation of PTO No. 1 and the federal MDL statute, § 1407(a). *Id.* at 1344.

To resolve this issue, an appropriate transferor court for the directly filed claims can be identified. Defendants respectfully submit that the appropriate transferor court for these claims is the district in which each Plaintiff resided at the time of filing and where personal jurisdiction over all Defendants would be proper. *See In re Am. Med. Collection Agency,* No. CV 19-MD-2904 (D.N.J.), Dkt 301 (entering similar direct file order).

## CONCLUSION

For all of these reasons, all claims brought by all 88 non-Minnesota Plaintiffs against Change in the Individual and Provider Track should be dismissed for lack of personal jurisdiction. All claims brought by the non-Minnesota provider Plaintiffs against Change Operations should be dismissed, save the claims of 11 providers as to a single count (Count IV). Alternatively, Plaintiffs' strategic pleading should not be allowed pursuant to PTO No. 1 and 28 U.S.C. § 1407.

Respectfully submitted,

Dated: March 21, 2025

*_/s/ Allison M. Ryan_*
Allison M. Ryan
Alicia J. Paller (MN No. 0397780)
Joseph J. Cavanaugh
**HOGAN LOVELLS US LLP**
555 13th Street NW
Washington, DC 20004
Tel: (202) 637-5600
Fax: (202) 637-5910
allison.holt-ryan@hogbanlovells.com
alicia.paller@hoganlovells.com
joe.cavanaugh@hoganlovells.com

*_/s/ Peter H. Walsh_*
Peter H. Walsh (MN No. 0388672)
**HOGAN LOVELLS US LLP**
80 South Eighth Street, Suite 1225
Minneapolis, MN 55402
Tel: (612) 402-3017
Fax: (612) 339-5167
peter.walsh@hoganlovells.com

Vassi Iliadis
**HOGAN LOVELLS US LLP**
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Vassi.iliadis@hoganlovells.com
Tel: (310) 785-4727
Fax: (310) 785-4601

***Attorneys for Defendants***