**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| **IN RE: CHANGE HEALTHCARE, INC. CUSTOMER DATA SECURITY BREACH LITIGATION**<br><br>*This Document Relates To All Actions* | MDL No. 24-3108 (DWF/DJF)<br><br>**MEMORANDUM OF LAW ADDRESSING CHOICE-OF-LAW DETERMINATION IN INDIVIDUAL AND PROVIDER TRACK MOTIONS TO DISMISS** |

The named Plaintiffs in the individual and provider track cases are individuals, hospitals, doctors, and pharmacists who hail from all 50 states and the District of Columbia. These named Plaintiffs interacted with Defendants ***in their home states***. If they entered into contracts with Defendants, they did so ***in their home states***. They allege that they suffered harm ***in their home states*** as a result of a criminal threat actor's cyberattack on Change Healthcare Inc.

Under Minnesota choice-of-law principles, each Plaintiff's tort claims are governed by the substantive law of their home states, as that is where that Plaintiff interacted with Defendants, if at all, and allegedly experienced harm. As for their contract claims, those are governed by any choice-of-law provision in the contracts themselves. In the absence of any such provision, each Plaintiff's contract claim is governed by the law of the place where that contract was formed and performed—again, Plaintiff's home state.[1]

## I. THIS MDL COURT MUST APPLY THE CHOICE-OF-LAW RULES OF THE FORUM IN WHICH THE INDIVIDUAL PLAINTIFF'S SUIT WAS FILED.

An MDL court applies the choice-of-law rules "of the forum the individual complaint was or would have been brought in." *In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, 999 F.3d 534, 538 (8th Cir. 2021). Plaintiffs contend that each

[1] For ease of the Court's review, Defendants have addressed all choice-of-law issues in this single memorandum to apply to both the Provider Track Motion to Dismiss ("MTD") and Individual Track MTD. Defendants have, accordingly, subtracted the number of pages in the motions from the page limits permitted by the Court in those Motions such that the combined total for this Memorandum and both MTDs does not exceed 120 pages.

Class Action Complaint ("CAC") was filed in the District of Minnesota. Therefore, Minnesota's choice-of-law rules apply to the claims of every named Plaintiff in the CACs.[2]

## II. THIS COURT MUST ENFORCE CONTRACTUAL CHOICE-OF-LAW PROVISIONS.

For contract claims, Minnesota is "committed" to enforcing contractual choice-of-law provisions. *See, e.g.*, *C.H. Robinson Worldwide, Inc. v. Traffic Tech, Inc.*, 60 F. 4th 1144, 1148 (8th Cir. 2023) (quoting *Combined Ins. Co. v. Bode*, 77 N.W.2d 533, 536 (Minn. 1956)). Where the parties to a contract have agreed upon a choice-of-law provision, the Court should enforce that agreement. *Combined Ins. Co.*, 77 N.W.2d at 536.

Choice-of-law provisions likewise apply to contract claims made by alleged third-party beneficiaries, such as the claims brought here by the Individual Track Plaintiffs. *See Russo v. NCS Pearson, Inc.*, 462 F.Supp.2d 981, 1000 (D. Minn. 2006) (holding that third-party beneficiaries are bound by choice-of-law provisions in a contract); *see also Am. Patriot Ins. Agency Inc. v. Mut. Risk Mgmt Ltd.*, 364 F.3d 884, 890 (7th Cir. 2004) (same).

## III. UNDER MINNESOTA CHOICE-OF-LAW RULES, THIS COURT SHOULD APPLY THE LAW OF EACH PLAINTIFF'S HOME STATE.

For contracts lacking a choice-of-law provision and for common law torts, a court must conduct a choice-of-law analysis to determine which substantive law applies. In

[2] This application of Minnesota choice-of-law rules—and only Minnesota choice-of-law rules—does little to aid the pretrial coordination of the dozens of cases that were filed in other transferor districts. Those cases must apply the choice-of-law rules of the transferor districts, which span states across the country. This is another example of how Plaintiffs' strategic pleading decisions undermine the purpose of this MDL, as described in Defendants' parallel Motion to Dismiss for Lack of Personal Jurisdiction ("Personal Jurisdiction Motion"). Defendants reserve all rights to argue that the choice-of-law rules of another jurisdiction, or multiple jurisdictions, should apply to future motions.

Minnesota, a court can conduct this analysis at the motion to dismiss stage when the complaint "details where relevant conduct took place." *Greenstate Credit Union v. Hy-Vee Inc.*, 549 F. Supp. 3d 969, 974 (D. Minn. 2021).[3] Under Minnesota's choice-of-law framework, a court conducts a three-stage inquiry to determine which state's law applies.

First, a court ascertains "whether the choice of one state's law over another's creates an actual conflict." *Jepson v. Gen. Cas. Co. of Wis.*, 513 N.W.2d 467, 469 (Minn. 1994). As described at length in the accompanying Motions to Dismiss, there are extensive and material conflicts between various states' laws. *See* Individual Track MTD §§ V-VIII; Provider Track MTD §§ II-VII.

Second, if there is a conflict between potentially applicable state laws, a court "must consider whether the law of [the various] states can be constitutionally applied." *Jepson*, 513 N.W.2d at 469. This inquiry requires a court to assess whether the parties have sufficient minimum contacts so that applying a particular state's law to a Plaintiff's claims "is neither arbitrary nor fundamentally unfair." *Id.* (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312-13 (1981)). The Court may not constitutionally apply Minnesota law where, as here, it lacks personal jurisdiction over certain Defendants. *Jepson*, 513 N.W.2d at 469; *see* Defendants' Motion to Dismiss for Lack of Personal Jurisdiction.[4] On the other hand,

---

[3] *See also Lapushner v. Admedus Ltd.*, 2020 WL 5106818, at *3 (D. Minn. Aug. 31, 2020) (conducting choice-of-law analysis at the motion to dismiss stage).

[4] Should the Court determine that it has personal jurisdiction over Change Healthcare Inc. or Change Healthcare Operations, the substantive law of Plaintiffs' home states still applies for the reasons articulated in Section III, *infra*.

there are no jurisdictional hurdles concerning the application of Plaintiffs' home state laws. *Id.* § I.

Third, a court must consider certain "choice influencing factors," including (1) predictability of result, (2) maintenance of interstate and international order, (3) simplification of the judicial task, (4) advancement of the forum's governmental interest, and (5) application of the better rule of law. *Id.* at 470 (citing *Milkovich v. Saari*, 203 N.W.2d 408, 412 (1973)). In tort cases, Minnesota courts place greater weight on maintenance of interstate and international order and advancement of the forum's governmental interest. *Perry, Tr. for Sherrell v. Beltrami Cnty.*, 520 F. Supp. 3d 1115, 1122-24 (D. Minn. 2021). In contract cases, by contrast, courts place greater significance on predictability of result. *See Jepson*, 513 N.W.2d at 470.

Minnesota's first choice-of-law factor—predictability of result—"acts to preserve the parties' justified contractual expectations."[5] *Edney Distrib. Co. v. Buhlery Trading, Inc.*, No. 10-4929, 2012 WL 685250, at *3 (D. Minn. Mar. 2, 2012) (Frank, J.) (citation omitted). Where the contract is silent on choice-of-law, this factor weighs in favor of the state where the contract is to be performed and the parties are located. *See, e.g.*, *Edney*, 2012 WL 685250 at *3 (predictability of result weighed in favor of applying law of state where Plaintiff was located and contract was to be performed); *Pesente v. Minn. Life Ins. Co.*, 12 N.W.3d 768, 780-81 (Ct. App. Minn. 2024) (predictability of result "strongly favored"

[5] This factor is only given weight when evaluating contract claims. *See Jepson*, 513 N.W.2d at 470 (noting that "[p]redictability of result as it relates to the tort aspect of a case is not of great importance" because of the unplanned nature of torts).

application of Plaintiffs' home state where contract was for the benefit of organization in that state). Here, Change contracted with providers to "submit claims to insurance companies and receive reimbursement for services." Provider CAC ¶¶ 1, 437. This Court should apply the law of the Plaintiff's home state—the state where Plaintiffs received Change's services, where the party who was the direct beneficiary of the contract resided, and where the Plaintiff's contract claims originated.

The second choice-of-law factor—maintenance of interstate order—turns on "the contacts that each competing state has with the dispute," with the location of the injury as "an especially relevant contact." *Perry*, 520 F. Supp. 3d at 1123. In a data breach case, the Plaintiffs' home state typically has the most significant contact with the dispute.[6] *See Bonewit v. New-Indy Containerboard LLC*, No. 24-cv-11338-DJC, 2024 WL 4932186, at *2 (D. Mass. Dec. 2, 2024) (applying the law of Plaintiff's home state under Massachusetts law in data breach case because no other state presented a more significant relationship than where Plaintiff was injured). So too here. The contacts between this action and each Plaintiff's home state are extensive. Any interaction between a provider Plaintiff and Defendants took place in the Plaintiff's home state. Any contract between a provider Plaintiff and Defendants was entered into and performed in the Plaintiff's home state. Individual Plaintiffs did not interact with any Defendant, but to the extent they interacted

[6] Regardless of whether a Plaintiff alleges injury from a successful fraud, attempted fraud, or a disruption in their ability to process claims, these alleged injuries took place in the Plaintiff's home state. *See generally* CAC ¶ 17-147; *c.f. Restatement (First) of Conflict of Laws* § 377 (stating that when a person sustains loss by fraud, the place of the wrong is where the loss is sustained, not where the fraudulent representations are made).

with a healthcare provider that was a customer of a Defendant, that interaction took place in the Plaintiff's home state. Any alleged injuries were felt in the Plaintiff's home state. Thus, the second factor weighs strongly in favor of the substantive law of a Plaintiff's home state.

The third factor—simplification of the judicial task—is not significant where the laws of each state can be applied by the Court. *See, e.g. Nodak Mut. Ins. Co. v. Am. Family Mut. Ins. Co.*, 604 N.W.2d 91, 95 (Minn. 2000) (noting that this factor "has not been given much weigh in this court's precedent"). While Defendants recognize the application of the substantive law of 51 jurisdictions is more complex than applying the law of a single state, that complexity cannot deter the Court from the appropriate conclusion here; namely, that Minnesota's choice-of-law rules dictate that the substantive law of each Plaintiff's home state applies to their claims. As another court in this District observed: "a court presiding over an MDL must take steps to ensure that efficiency does not trump fundamental fairness and that the desire for certainty does not deprive any individual party of substantive rights." *In re Fluoroquinolone Prods. Liab. Litig.*, No. 0:17-cv-00260-JRT, 2020 WL 6489186, at *2 (D. Minn. Nov. 4, 2020) (quoting *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MC-2543, 2015 WL 3619584, at *1 (S.D.N.Y. June 10, 2015). Thus, because this Court can apply the law of each state, the Court should faithfully apply the choice-of-law rules and center each Plaintiffs' claims where they allege they were injured—their home states, and need not give the third factor much weight.

The fourth factor—advancement of the forum's governmental interests—"considers the relative policy interests of the [potential] states." *Greenstate*, 549 F. Supp. 3d at 978

(citation omitted). The interests of Plaintiffs' home states are obvious in this matter: states want to protect their citizens from tortious acts, and states want to regulate commerce—including reimbursement for healthcare services—within their borders. *See Hughes v. Wal-Mart Stores Inc.*, 250 F. 3d 618, 621 (8th Cir. 2001). Minnesota's interests in this matter, by contrast, are not obvious. Indeed, Minnesota has little interest in this matter—outside of protecting the interests of Plaintiffs from Minnesota—because no "important [state] governmental interest is significantly furthered by ensuring that nonresidents are compensated for injuries that occur in *another state*." *Id.* While a state may also have an interest in regulating the conduct of its corporations, as applied to this case, that interest could be furthered equally by the application of Tennessee law because that is where Change is headquartered. Thus, the fourth choice-of-law factor again strongly supports application of the law of Plaintiffs' home states.

The final choice-of-law factor—application of the better rule—is only applied "when the first four factors do not resolve the choice of law question." *Edney*, 2012 WL 685250, at *4. Here, the first four factors compel application of the law of each Plaintiff's home state, rendering the fifth factor irrelevant.

## **CONCLUSION**

In sum, the Minnesota three-part choice-of-law inquiry compels that the substantive law of each Plaintiff's home state applies to the claims at issue in both the individual and provider track cases unless those claims are otherwise governed by an applicable contract.

Dated: March 21, 2025

/s/ Allison M. Ryan

Allison M. Ryan
Alicia J. Paller (#0397780)
Joseph J. Cavanaugh
**HOGAN LOVELLS US LLP**
555 13th Street NW
Washington, D.C. 20004
T. (202) 637-5600
F. (202) 637-5910
allison.holt-ryan@hoganlovells.com
alicia.paller@hoganlovells.com
joe.cavanaugh@hoganlovells.com

Vassi Iliadis
**HOGAN LOVELLS US LLP**
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
T. (310) 785 4600
F. (310) 785-4601
vassi.iliadis@hoganlovells.com

Peter Walsh (#0397780)
**HOGAN LOVELLS US LLP**
80 South Eighth Street, Suite 1225
Minneapolis, MN 55402
T. (612) 402-3017
F. (612) 339-5167
peter.walsh@hoganlovells.com

Counsel for Defendants