# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE: CHANGE HEALTHCARE, INC. CUSTOMER DATA SECURITY BREACH LITIGATION<br><br>*This Document Relates To All Provider Actions* | Case No. 24-md-3108 (DWF/DJF)<br><br>**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR COURT SUPERVISION OF COMMUNICATIONS BETWEEN DEFENDANTS AND THE PUTATIVE CLASS** |
| This Document Relates to:<br><br>TOTAL CARE DENTAL and ORTHODONTICS, ET AL.,<br>   Plaintiffs,<br>v.<br>UNITEDHEALTH GROUP INCORPORATED, ET AL.<br>   Defendants.<br><br>[Case No. 25-cv-00179] | |

**TABLE OF CONTENTS**

**Page(s)**

I. BACKGROUND ..................................................................................................... 3

II. ARGUMENT .......................................................................................................... 3

    A. Legal Standard .............................................................................................. 4

    B. Defendants' Communications Have Been Entirely Proper and Do Not Rise to the Level of Misconduct—Let Alone Serious Misconduct ....................... 5

    C. Defendants Are Soliciting Repayment of TFAP Loans, Not Releases, and This Action Therefore Falls Outside the Scope of Rule 23(d) .................... 10

    D. Plaintiffs' Requested Relief Infringes on Defendants' First Amendment Rights and Is Coercive ............................................................................... 12

III. CONCLUSION ..................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Domiano v. Schnucks Mkts., Inc.*,
  No. 4:13–CV–683, 2014 WL 495456 (E.D. Mo. Feb. 6, 2014) ................................... 7

*F.G. v. Coopersurgical, Inc.*,
  No. 24-cv-01261, 2024 WL 2274448 (N.D. Cal. May 20, 2024) ............................... 11

*Friedman v Intervet Inc.*,
  730 F. Supp. 2d 758 (N.D. Ohio 2010) ...................................................................... 11

*Great Rivers Coop. of Se. Iowa v. Farmland Indus., Inc.*,
  59 F.3d 764 (8th Cir. 1995) .............................................................................. 4, 11, 13

*Grove v. Meltech, Inc.*,
  No. 8:20CV193, 2020 WL 7126554 (D. Neb. Dec. 3, 2020) ....................................... 5

*Gulf Oil Co. v. Bernard*,
  452 U.S. 89 (1981) ................................................................................................. 4, 10

*Jackson v. Motel 6 Multipurpose, Inc.*,
  130 F.3d 999 (11th Cir. 1997) ................................................................................... 13

*Kleiner v. First Nat'l Bank*,
  751 F.2d 1193 (11th Cir. 1985) ................................................................................. 11

*Larson v. Mulcahy Drywall, Inc.*,
  Nos. 08-178, 08-306, 2008 WL 11463253 (D. Minn. July 7, 2008) ............................ 9

*Pacific Gas & Elec. Co. v. Public Utils. Comm'n.*,
  475 U.S. 1 (1986) ....................................................................................................... 13

*Ralph Oldsmobile, Inc. v. Gen. Motors Corp.*,
  No. 99 Civ. 4567, 2001 WL 1035132 (S.D.N.Y. Sept. 7, 2001) ................................ 11

*Rothe v. Wayzata Nissan LLC*,
  No. Civ. 02–3233, 2003 WL 21181343 (D. Minn. May 14, 2003) ................. 7, 8, 9, 11

*St. Barnabas Hosp., Inc v. Ovation Pharms., Inc.*,
  Civ. No. 09-1375, 2010 WL 11574952 (D. Minn. June 24, 2010) ...................... 4, 6, 9

*Walston v. Nat'l Retail Sols., Inc.*,
    No. 24 C 83, 2025 WL 580518 (N.D. Ill. Feb. 21, 2025) ............................................ 10

*Wells v. Volf*,
    Nos. 4:04CV3193, 4:04CV3184, 2005 WL 8176325 (D. Neb. Mar. 7,
    2005) ................................................................................................................................ 8

**Other Authorities**

FED. R. CIV. P. 23 ................................................................................................................. 2

FED. R. CIV. P. 23(d) ...................................................................................................... 4, 10

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.12 (2004) ........................................... 4

Having sought neither provisional class certification nor a stay to prevent Defendants from taking steps to collect Temporary Funding Assistance Program ("TFAP") loans offered to providers during a temporary service disruption, Plaintiffs ask the Court to take action as though they have *both* a provisionally certified class *and* a right to dictate the terms of Defendants' ongoing business relationships with thousands of providers who entered into temporary interest-free, fee-free loans pursuant to express terms stating when those loans would come due. The Court should reject Plaintiffs' meritless invitation to wade into these thousands of day-to-day business communications.

The Named Plaintiffs are providers who entered into temporary, voluntary loans with Defendants through a novel effort by Defendants to help providers avoid cash flow issues following Change Healthcare Inc.'s ("Change") temporary service disruption after it discovered a cyberattack in February 2024 (the "Cyberattack"). The TFAP loans came with express terms setting out the repayment terms, timing, and obligations for providers. But as Plaintiffs see it, the mere filing of a class action about TFAP loan repayment gives them authority to insert themselves into any interactions about those loans between Defendants and the thousands of providers who received them—apparently, on the basis that Plaintiffs intend, someday, to move to certify a class.

Setting aside how unlikely it is that a class will ever be certified here, Plaintiffs offer no legal basis for the assertion that they have a right to control the content of Defendants' ongoing efforts to collect TFAP loans. The existence of this suit does not alter that Defendants, as part of their ongoing business-to-business relationships with providers, may seek repayment of TFAP loans consistent with the terms governing those loans. Plaintiffs'

1

lack of precedent to support their requested relief is telling: no court has ever endorsed such a sweeping assumption of power on such flimsy procedural grounds. This Court should decline to do so as well.

Plaintiffs' motion is especially brazen because it seeks to regulate communications having nothing to do with the proper functioning of a Rule 23 class. Defendants are seeking to collect the billions of dollars in TFAP loans they are contractually owed, not to alter or limit the size of the putative provider class. TFAP repayment has no impact on a provider's ability to participate in the class—as the Named Plaintiffs and their counsel know full well, given that some Named Plaintiffs have already repaid all or some portion of their loans. There is no legal justification or authority for judicial regulation of communications between Defendants and providers in these circumstances—especially where it is unclear that a class will ever be certified.

At bottom, Plaintiffs' motion is an attempt to inject Plaintiffs' lawyers into Defendants' day-to-day communications with their business and contract partners, and to increase the size of the uncertified class. Judicial scrutiny of the content of Defendants' communications would be improper interference with Defendants' business operations and management and would severely infringe Defendants' First Amendment rights. Courts have declined to issue such extreme relief, except in only those extreme cases involving serious misconduct. This case—which involves Defendants working *with* providers to lend them billions of dollars in TFAP loans, to consider their individual circumstances as their contractually-required repayment process begins, and to communicate with them about

those particular needs—does not come close to that high bar, and would comparatively cause Defendants significant harm. Plaintiffs' motion should be denied.

## I. BACKGROUND

This Opposition incorporates the Background section of Defendants' Combined Response in Opposition to Plaintiffs' Motion for Preliminary Injunction and Declaratory Judgment, filed contemporaneously with the instant Opposition.

## II. ARGUMENT

The Court should give no credence to the Named Plaintiffs' motion, which offers zero evidence that Defendants have engaged in the "serious misconduct" required to obtain such extraordinary relief. In particular, Plaintiffs request that: (i) the Court supervise Defendants' communications with putative provider class members—*thousands* of providers nationwide; (ii) the Court require Defendants to issue a curative disclosure relating to prior communications with putative class members—when there is nothing to cure; and (iii) Defendants produce newly requested discovery concerning their communications with putative class members to the Court and Plaintiffs' Lead Counsel. *See* Dkt. 285 Mot. Class Comms. The Court should decline this exceptional relief for a number of reasons, but most especially because (i) Plaintiffs have offered *zero* basis to grant such relief where Defendants have not engaged in *any* misconduct—let alone the "serious misconduct" required to grant their motion; (ii) the requested relief would place unconstitutional restrictions on Defendants' free speech; and (iii) granting Plaintiffs' motion would require a massive undertaking for the Court to wade into these nuanced

3

business-to-business discussions with thousands of providers that are *not* Named Plaintiffs—some of whom are already represented by capable outside counsel.

### A. Legal Standard

"In a class-action lawsuit, a district court may not order restraints on speech under FED. R. CIV. P. 23(d) except when justified by actual or threatened misconduct of a serious nature." *Great Rivers Coop. of Se. Iowa v. Farmland Indus., Inc.*, 59 F.3d 764, 766 (8th Cir. 1995). Misconduct does not include communications with potential class members in the ordinary course of business or discussing settlement before class certification. *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.12 (2004). Rather, misconduct in this context only extends to "provid[ing] false or misleading information, intimidate[ing] the prospective class members, or attempt[ing] to influence the decision to seek exclusion from a certified class." *St. Barnabas Hosp., Inc v. Ovation Pharms., Inc*., Civ. No. 09-1375, 2010 WL 11574952, at *1 (D. Minn. June 24, 2010). Before entering an order restraining a party's speech, there must be "a clear record and specific findings" demonstrating that the restraint is necessary, and the order must "limit[] speech as little as possible, consistent with the rights of the parties under the circumstances." *Great Rivers*, 59 F.3d at 766–67 (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101–02 (1981)).

Fatal to the instant motion is the fact that Plaintiffs have not—and cannot—point to a single statement in any of Defendants' TFAP communications that a reasonable reader would consider "intimidating." Nor can they articulate how a request for the return of loans pursuant to an agreed-upon contract amounts to "soliciting releases" that in any way affects the putative—and unlikely to be certified—provider class. Plaintiffs have not met the

4

Eighth Circuit's required showing of "serious misconduct" justifying a restriction on Defendants' constitutional free speech rights. In fact, they have not shown any misconduct at all. Plaintiffs' motion should therefore be denied.

### B. Defendants' Communications Have Been Entirely Proper and Do Not Rise to the Level of Misconduct—Let Alone Serious Misconduct

Plaintiffs claim that Defendants' communications are "intimidating, incomplete, and misleading." Dkt. 285 Mot. Class Comms. at 10-11. This is flatly wrong. The only evidence Plaintiffs cite in support of their motion consists of communications that are courteous in tone and that involve professional business-to-business emails and letters seeking the return of interest-free, fee-free loans pursuant to the express terms of a contract. *See generally* Dkt. 286 Decl. of Richard Dillman ("Dillman Decl."); Dkt. 287 Decl. of Ugonma Adiukwu ("Odom Decl."). The language used in Defendants' communications is a far cry from that found coercive in Eighth Circuit case law. *Compare* Dkt. 286-1 Dillman Decl. Ex. B ("Since we have restored the connectivity of our systems, the service disruption has ended for most clients, and we are requesting repayment."), *with Grove v. Meltech, Inc.*, No. 8:20CV193, 2020 WL 7126554, at *2 (D. Neb. Dec. 3, 2020) (finding defendant "unequivocally stated in a group chat message that any [employees] who join this case would be fired"). To the contrary, Defendants' communications have been entirely consistent with the TFAP Agreement's terms, which TFAP recipients voluntarily accepted and which authorized Defendants to request repayment "after claims processing and/or payment processing services have resumed and payments impacted during the service disruption period are being processed." *See* Dkt. No. 332, Defs.' Opp'n Mot. Prelim. Inj.

5

and Mot. Declar. J. § II.A.2.  That Plaintiffs may now be dissatisfied that Defendants have exercised their rights under those agreed-upon terms does not render Defendants' communications false, misleading, or intimidating.

Unable to identify any actual false, misleading, or intimidating communication, Plaintiffs instead argue that Defendants' communications are inherently threatening because potential class members are at "the mercy" of Defendants.  Dkt. 285 Mot. Class Comms. at 12.  Not so.  The existence of an "ongoing business relationship with the proposed class members, alone, is not enough to show coercion." *St. Barnabas Hosp., Inc*, 2010 WL 11574952, at *2.  Moreover, Plaintiffs ignore Defendants' repeated willingness to negotiate payment plans or other arrangements to account for providers' respective financial situations. *See, e.g.*, Dkt. 287-1 Odom Decl. Ex. J ("Nonetheless, in the spirit of good faith, and subject to their reservation of rights and without waiver of their defenses, the Change Entities are willing to consider pausing the repayment process as to Odom while we review the claim damages in your demand letter.").

In addition to those shortcomings, Plaintiffs have provided no evidence that the putative class is in the same financial position as Dillman Clinic & Labs ("Dillman") and Odom Sports Medicine P.A. d/b/a Odom Health & Wellness ("Odom"), and the only evidence that does exist demonstrates that there are significant individualized and subjective factors at play.  Restrictions on speech to putative class members is wholly improper in these circumstances. *See Domiano v. Schnucks Mkts., Inc.*, No. 4:13–CV–683, 2014 WL 495456, at *1-2 (E.D. Mo. Feb. 6, 2014) (denying plaintiffs' "proposed overly burdensome sanction" to restrict defendant's website communications regarding its

6

security incident and to require such communications be included in all future communications, as such relief would "limit [d]efendant's communications with its customers who are not yet represented by counsel"); *Rothe v. Wayzata Nissan LLC*, No. Civ. 02–3233, 2003 WL 21181343, at *1 (D. Minn. May 14, 2003) (declining to impose restrictions because "[i]t would be disproportionate to regulate [defendant's] contact with its former customers" considering "[e]ach prospective plaintiff was at the time, and still is, a free agent"). The individualized nature of Plaintiffs' claims is particularly apparent when considering the fact that *thousands* of providers—including some of the Named Plaintiffs—have already entirely or partially repaid their TFAP loans.[1] *See* Decl. of Sally Sidwell ("Sidwell Decl.") ¶ 10. Plaintiffs' requested restrictions would therefore require Defendants to impose a one-size-fits-all approach that ignores the particular circumstances of each provider's case.

Indeed, through their communications with Defendants, many providers have expressed a distinct appreciation for Defendants' cooperative approach to resolving issues associated with TFAP repayment. *Id.* ¶ 16. Plaintiffs' requests, if granted, would likely *delay* Defendants' ability to satisfy requests made by providers that have elected not to

---

[1] Plaintiffs contend that "many Providers have not attempted to negotiate repayment plans" because of threatening communications. *See* Dkt. 285 Mot. Class Comms. at 12. Plaintiffs cite no evidence to support this inflammatory contention, and there is none. The more straightforward explanation for why certain providers have not attempted to renegotiate the terms of their TFAP Agreement is that such renegotiation was not necessary. As Defendants have explained, *see* Defs.' Opp'n to Mot. Prelim. Inj. and Mot. Declar. J. § II.A.2, once services were restored, providers would eventually receive payment for the clean and covered claims that would have been processed "but for the disruption in processing of electronic healthcare transactions." Dkt. 279-1 at 2 (TFAP Agreement).

7

engage in litigation, thereby *harming* those providers that prefer to communicate directly with Defendants regarding their contracts, services, TFAP repayment, and related topics. *Cf. Rothe*, 2003 WL 21181343, at *1 (noting that prior to class certification, each plaintiff is "a free agent who should be entitled to settle with the defendant"). Such prejudice to these non-parties would be significant.

Plaintiffs' claim that Defendants' communications are "misleading" and "incomplete" because they fail to inform providers of the existence of this action and provide the contact information for Lead Counsel is equally meritless. Dkt. 285 Mot. Class Comms. at 11. Plaintiffs do not—and cannot—cite any authority for their claim that the filing of a civil action triggers an ongoing obligation to reference that civil action in every communication a defendant has with its business partners involving a similar subject matter. This would be an extraordinary exertion of judicial oversight if courts across the nation were to require such notice following the initiation of a class action. As one court noted: "[c]ourts cannot simply interpose themselves in others' business relationships each time a customer files a putative class action lawsuit." *Wells v. Volf*, Nos. 4:04CV3193, 4:04CV3184, 2005 WL 8176325, at *11 (D. Neb. Mar. 7, 2005).

Moreover, this class is not certified, and Lead Counsel therefore "do[es] not represent the other prospective plaintiffs," as their requested relief seems to imply. *Rothe*, 2003 WL 21181343, at *1-2 (declining to regulate communications in part because class had not been certified); *see also St. Barnabas Hosp., Inc*, 2010 WL 11574952, at *2-3 (same); *Larson v. Mulcahy Drywall, Inc.*, Nos. 08-178, 08-306, 2008 WL 11463253 (D. Minn. July 7, 2008) (declining to regulate communications beyond harassing or

8

intimidating conduct in part because class had not been certified). Tellingly, Plaintiffs did not seek to address this issue by filing an early motion for class certification. *Rothe*, 2003 WL 21181343, at *1-2.

Finally, Plaintiffs, including Dillman and Odom in their declarations, have not averred that putative class members are actually unaware of this action. *See generally* Dkt. 286 Dillman Decl.; Dkt. 287 Odom Decl. In fact, these Plaintiffs' own evidence shows that they were fully aware of ongoing litigation regarding TFAP repayments. *See* Dkt. 287-1 Odom Decl. Ex. E at 1 (letter from Odom's counsel to Defendants) ("UHG, of course, is well aware of this fallout, being on the receiving end of numerous lawsuits"). Like Dillman and Odom, the putative provider class members are sophisticated businesses—some of which are represented by capable counsel—that do not need to be informed of the existence of an ongoing class action following a disruption like the Cyberattack. *See St. Barnabas Hosp., Inc*, 2010 WL 11574952, at *2 (declining to order relief where "prospective class members are sophisticated business entities"). As another district court recently observed: "without a showing of actual harm, there must be some other evidence that justifies interfering with a defendant's ability to communicate with individuals who are yet to be a member of any class." *Walston v. Nat'l Retail Sols., Inc.*, No. 24 C 83, 2025 WL 580518, at *1 (N.D. Ill. Feb. 21, 2025) (declining to restrict defendant's pre-certification communications because plaintiff failed to provide any evidence that a potential class member was misled).

### C. Defendants Are Soliciting Repayment of TFAP Loans, Not Releases, and This Action Therefore Falls Outside the Scope of Rule 23(d)

Every case cited by Plaintiffs in support of their motion is concerned with a solicitation of class action waivers or similar releases. Indeed, the Court's authority to restrain a party's speech in this context is derived from its authority to regulate class actions under FED. R. CIV. P. 23(d). *See Gulf Oil*, 452 U.S. at 99-100. Therefore, communications that have no impact on the fair and proper functioning of a class action under Rule 23(d) fall outside of the Court's authority and should not be regulated.

As Defendants have explained, the TFAP Agreement did not limit the class action rights of any recipients. *See* Defs.' Opp'n to Mot. Prelim. Inj. and Mot. Declar. J. § I.B. Defendants' efforts to collect TFAP repayment pursuant to the TFAP Agreements likewise have no effect on a provider's right to participate in this action. Defendants' communications attached to the motion make no mention of a release, waiver, or similar restriction. *See generally* Dkt. 286 Dillman Decl.; Dkt. 287 Odom Decl. In fact, a number of Named Plaintiffs in the Provider Track received and repaid their TFAP loans entirely, while several others were in the midst of repaying their loans before Defendants voluntarily halted recollection. *See* Sidwell Decl. ¶ 10.

Plaintiffs are simply wrong when they say that Defendants are "soliciting releases." Dkt. 285 Mot. Class Comms. at 11. Defendants are seeking repayment of interest-free, fee-free loans pursuant to a contract. The facts of the instant matter therefore differ significantly from the few out-of-circuit cases that Plaintiffs cite. *See Kleiner v. First Nat'l Bank*, 751 F.2d 1193, 1197-98 (11th Cir. 1985) (defendants engaged in an "unprecedented"

10

telephone campaign to solicit class members to opt out); *Ralph Oldsmobile, Inc. v. Gen. Motors Corp.*, No. 99 Civ. 4567, 2001 WL 1035132, at *1 (S.D.N.Y. Sept. 7, 2001) (defendants included class-action waiver in letter to customer car dealerships); *Friedman v Intervet Inc.*, 730 F. Supp. 2d 758, 760 (N.D. Ohio 2010) (defendant included release along with offer of payment in letter to customers following complaints); *F.G. v. Coopersurgical, Inc.*, No. 24-cv-01261, 2024 WL 2274448, at *2 (N.D. Cal. May 20, 2024) (defendant contacted fertility patients through a "settlement program" and sought releases of claims).[2]

In unique and limited circumstances, Defendants have agreed with certain providers to a release of claims that might encompass those providers' TFAP loan obligations. *See* Sidwell Decl. ¶ 17. However, these circumstances have only arisen after a provider has initiated a discussion with the Defendants regarding that specific provider's claims for alleged damages or expenses ***and*** the provider's existing TFAP loan obligations. *See id.* The key factor that has influenced Defendants' decision to agree to offset a provider's claims for alleged damages against the provider's outstanding TFAP loan is whether the provider has submitted documented evidence of its claims for alleged damages or expenses, separate from difficulties associated with the TFAP repayment itself. *Id.* Defendants have

---

[2] Many of the cases cited by Plaintiffs flow from the Eleventh Circuit's decision in *Kleiner*. However, *Kleiner* did not apply the "serious misconduct" standard articulated by the Eighth Circuit in *Great Rivers*, and therefore *Kleiner* and its progeny are unreliable authority when evaluating restrictions on class communications in this district. Moreover, *Kleiner* is procedurally and factually distinct from the instant matter. As another district court in the Eighth Circuit noted: "*Kleiner* has been distinguished in this district because it dealt with a post-class certification communication urging putative class members to opt out of the litigation." *Rothe*, 2003 WL 21181343, at *2.

11

not sought independent releases related to TFAP, and their TFAP-related outreach has been consistently the same—to obtain TFAP repayment. *Id.* Plaintiffs have not identified any provider that claims it was unaware of this action, misled by Defendants, or otherwise unsatisfied with the result of its negotiations. *See generally* Dkt. 285 Mot. Class Comms.

### D. **Plaintiffs' Requested Relief Infringes on Defendants' First Amendment Rights and Is Coercive**

Plaintiffs seek to convert a large portion of Defendants' communications with its customers into an advertisement for Plaintiffs' counsel and their theory of the case. The motion requests that Defendants "issue corrective notice including language about this litigation," yet provides no guidance on what such "corrective notice" would entail. Dkt. 285 Mot. Class Comms. at 16. Defendants have outlined how Plaintiffs' TFAP repayment theory is meritless and based on a tortured interpretation of the English language. *See generally* Defs.' Opp'n to Mot. Prelim. Inj. and Mot. Declar. J. To compel Defendants to say otherwise in their communications is just as injurious to their First Amendment rights as any limitation on speech would be. *See Pacific Gas & Elec. Co. v. Public Utils. Comm'n.*, 475 U.S. 1, 2 (1986) ("For corporations as for individuals, the choice to speak includes within it the choice of what not to say."). Such restrictions are only called for in the case of "serious misconduct" that affects the fair management of a potential class action, which Plaintiffs have failed to show with their motion.

Even more importantly, Plaintiffs' requested relief is deeply coercive. Class communications, particularly pre-certification class communications, present "the possibility that plaintiffs might use widespread publication of their claims, disguised as

12

class communications, to coerce defendants into settlement." *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1004 (11th Cir. 1997). In *Jackson*, the Eleventh Circuit held that an order authorizing class-wide communications prior to class certification was an abuse of discretion because "(1) the communication authorized by the order [was] widespread and clearly injurious[,] and (2) a certification decision [was] not imminent or [it was] unlikely that a class [would] in fact be certified." *Id.* Applying this same reasoning in a data breach case—and applying the "serious misconduct" standard articulated in *Great Rivers*—the court in *In re Blackbaud, Inc. Customer Data Breach Litig.*, declined to order the distribution of a corrective notice in part because the "broad dissemination of the corrective notice is likely to cause serious harm to Blackbaud's general reputation and to its relationships with its customers." No. 3:20-mn-02972, 2022 WL 1137885, at *3 (D.S.C. Apr. 18, 2022).

In light of these considerations, the Court should deny Plaintiffs' Motion for Court Supervision of Communications Between Defendants and the Putative Class, which seeks to unnecessarily inject this Court into thousands of communications and to use Defendants as a megaphone to broadcast Plaintiffs' TFAP-related agenda, without any factual basis to do so.

## III. CONCLUSION

For all the forgoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion for Court Supervision of Communications Between Defendants and the Putative Class.

13

Respectfully submitted,

Dated: April 25, 2025

*/s/ Allison M. Ryan*
Allison M. Ryan
Alicia J. Paller (MN No. 0397780)
Joseph J. Cavanaugh
**HOGAN LOVELLS US LLP**
555 13th Street NW
Washington, DC 20004
Tel:  (202) 637-5600
Fax:  (202) 637-5910
allison.holt-ryan@hogbanlovells.com
alicia.paller@hoganlovells.com
joe.cavanaugh@hoganlovells.com

*/s/ Peter H. Walsh*
Peter H. Walsh (MN No. 0388672)
**HOGAN LOVELLS US LLP**
80 South Eighth Street, Suite 1225
Minneapolis, MN 55402
Tel:  (612) 402-3017
Fax:  (612) 339-5167
peter.walsh@hoganlovells.com

Vassi Iliadis
**HOGAN LOVELLS US LLP**
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Vassi.iliadis@hoganlovells.com
Tel:  (310) 785-4727
Fax:  (310) 785-4601

***Attorneys for Defendants***