# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE: CHANGE HEALTHCARE, INC. CUSTOMER DATA SECURITY BREACH LITIGATION  *This document relates to all provider actions.* | MDL No. 24-3108 (DWF/DJF)  **Amicus Curiae Brief of the American Society of Anesthesiologists** |

## TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................................. ii

Statement of Amicus Curiae ......................................................................................1

Introduction................................................................................................................2

Argument....................................................................................................................3

I.  The defendants owe providers a duty to exercise reasonable care in the defendants' own conduct: storing sensitive information..............3

II. One of the duties that arises in a bailment (i.e., the duty to protect the relevant property) applies here, even if other bailment duties (such as the duty to return the property) do not apply. ..............5

Conclusion and Relief Requested............................................................................. 12

i

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Air & Liquid Sys. Corp. v. DeVries*,
   586 U.S. 446 (2019) ............................................................................................. 4

*Carpenter v. United States*,
   585 U.S. 296 (2018) ......................................................................................... 5, 6

*De Wald v. Quarnstrom*,
   60 So. 2d 919 (Fla. 1952) ................................................................................... 4

*Doe-2 v. McLean Cnty. Unit Dist. No. 5 Bd. of Directors*,
   593 F.3d 507 (7th Cir. 2010) ............................................................................... 5

Domagala v. Rolland,
   805 N.W.2d 14 (Minn. 2011) ............................................................................. 4

*In re Target Corp. Data Sec. Breach Litig.*,
   66 F. Supp. 3d 1154 (D. Minn. 2014) ................................................................. 8

*Johnson v. Nice Pak Prods., Inc.*,
   736 F. Supp. 3d 639 (S.D. Ind. 2024) ................................................................. 8

*Krupa v. TIC Int'l Corp.*,
   2023 WL 143140 (S.D. Ind. Jan. 10, 2023) ....................................................... 9

*Kuciemba v. Victory Woodworks, Inc.*,
   531 P.3d 924 (Cal. 2023) .................................................................................... 4

*Liddle v. Salem Sch. Dist. No. 600*,
   619 N.E.2d 530 (Ill. App. Ct. 1993) ................................................................... 7

*Miller v. NextGen Healthcare, Inc.*,
   742 F. Supp. 3d 1304 (N.D. Ga. 2024) ............................................................. 11

*Minnesota v. Fleet Farm LLC*,
   679 F. Supp. 3d 825 (D. Minn. 2023) ................................................................. 4

**OTHER AUTHORITIES**

1 Restatement (Third) of Torts: Liability for Physical and Emotional Harm
    § 7 (2005) .................................................................................................. 4

8 C.J.S., Bailments § 36 (2017) .................................................................... 7

8A Am. Jur. 2d Bailments § 77 ............................................................. 7, 8, 10

Austin Headrick, *Redefining the Injury-in-Fact: Treating Personally
    Identifying Information As Bailed Property*, 58 Ga. L. Rev. 871 (2024) ..... 11

Black's Law Dictionary 169 (10th ed. 2014) ...................................................... 6

Danielle D'Onfro, *The New Bailments*, 97 Wash. L. Rev. 97 (2022) ................. 7

Health Insurance Portability and Accountability Act of 1996 .......................... 2

J. Story, Commentaries on the Law of Bailments § 2 (1832) ............................ 6

Jenna Tugaoen, *Standing on the Ledge: Balancing Data Breaches in the Era
    of Technology*, 50 Cap. U. L. Rev. 27 (2022) .................................................. 8

Miles Skedsvold, *A Duty to Safeguard: Data Breach Litigation Through A
    Quasi-Bailment Lens*, 25 J. Intell. Prop. L. 201 (2018) ............................... 11

## STATEMENT OF AMICUS CURIAE

The American Society of Anesthesiologists ("ASA") is a voluntary, national professional association that advocates for the interests of its members. This advocacy includes addressing matters that affect the financial stability of anesthesia practices across the country and therefore affect their ability to deliver anesthesia care. It also includes addressing matters that threaten the security of their patients' information. The ASA is comprised of more than 59,000 anesthesiologists and others involved in the medical specialty of anesthesiology, critical care, and pain medicine.

The ASA submits this brief on behalf of its members to explain the Change Health Defendants owe a duty to protect the sensitive patient information that they receive (including personally identifying information and medical information) from loss through unsecure data systems.[1] The data breach underlying this litigation compromised the private information of millions of patients and had a significant financial impact on the U.S. healthcare system. Because the insurers and Change Health Defendants have argued that they owe no duty at all to protect this information, the ASA

---

[1] No party or party's counsel authored the brief in whole or in part or contributed money that was intended to fund preparing or submitting the brief. No person other than the *amicus curiae* and its members contributed money that was intended to fund preparing or submitting the brief.

1

submits this brief to explain that the law does impose a duty under these circumstances.

## INTRODUCTION

According to the complaint, "the Change Health Defendants store massive volumes of highly sensitive and confidential Private Information, including full names, phone numbers, addresses, Social Security numbers, emails, and payment information." (Compl., RE 1, No. 25-179, at ¶ 44.) They also store "massive volumes of information protected by the Health Insurance Portability and Accountability Act of 1996 ('HIPAA')," such as medical records, and "massive volumes of health insurance information . . . ." (*Id.* at ¶ 45.) "[T]he Change Platform processes medical claims relating to 15 billion health care transactions annually, encompassing a third of the patient records in the United States." (*Id.* at ¶ 50.)

Despite the fact that they accept this sensitive information daily, the defendants argue that they have "no obligation" to safeguard it against cyberattacks. (Defs. Br., RE 261, at 1.) As they see it, they have no duty to safeguard the information that providers pass on to them for processing insurance claims, not even a duty to exercise reasonable care.

That view is not consistent with the law. It is a basic principle of tort law that if one's own conduct creates a risk for others, then one owes a duty to exercise reasonable care. Here, the defendants created a risk by accepting

2

what they knew to be sensitive patient information and storing it in systems that failed to use "even rudimentary cybersecurity precautions" to protect the information from loss. (Compl., ¶ 3.)

This conduct—accepting valuable property in the form of information—is analogous to accepting a bailment, and with it comes a duty to exercise reasonable care to protect that property from loss. Accordingly, this Court should deny dismissal of the negligence claims and hold that the defendants did have a duty to protect and safeguard the sensitive information that they accept when processing of insurance claims.

## ARGUMENT

### I. The defendants owe providers a duty to exercise reasonable care in the defendants' own conduct: storing sensitive information.

In their motion to dismiss, the defendants argue that they have no duty—none at all—to protect the sensitive information that the providers entrust them with so that the defendants can process insurance claims. (Mot., RE 261, at 6 ("Plaintiffs cannot show that Defendants owed them *any* duty") (footnoted omitted; emphasis in original).) The defendants try to support this argument by framing the duty at issue in a very context-specific manner as a "duty to safeguard information" or as a duty "to provide uninterrupted services" (*id.* at 7), and then they argue that this duty as they have narrowly defined it does not exist.

3

But a general principle of tort law creates a duty requiring the defendants to exercise reasonable care in their own conduct, regardless of what the conduct is, when it risks harming others. Under "basic tort-law principles," the Supreme Court recently explained, "[t]ort law imposes 'a duty to exercise reasonable care' on those *whose conduct* presents a risk of harm to others." *Air & Liquid Sys. Corp. v. DeVries*, 586 U.S. 446, 452 (2019) (citing 1 Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 7, p. 77 (2005) (emphasis added)). This basic principle of tort law applies under Minnesota law and the law of other states relevant to this case. *E.g.*, *Minnesota v. Fleet Farm LLC*, 679 F. Supp. 3d 825, 843 (D. Minn. 2023) ("In Minnesota, 'general negligence law imposes a general duty of reasonable care when *the defendant's own conduct* creates a foreseeable risk of injury to a foreseeable plaintiff.") (quoting Domagala v. Rolland, 805 N.W.2d 14, 23 (Minn. 2011)) (emphasis added); *Kuciemba v. Victory Woodworks, Inc.*, 531 P.3d 924, 940 (Cal. 2023) ("[A] defendant had a duty to prevent injuries due to *its own conduct or possessory control*.") (emphasis added); *De Wald v. Quarnstrom*, 60 So. 2d 919, 921 (Fla. 1952) ("Ordinary negligence is the failure to exercise that degree of care and precaution and vigilance which an ordinary prudent man would exercise, whereby and *as a consequence whereof* the person or property of another is injured.") (emphasis added); *Doe-2 v. McLean Cnty. Unit Dist. No. 5 Bd. of Directors*, 593 F.3d 507, 515 (7th Cir.

4

2010) ("Illinois common law imposes a duty of 'reasonable care to avoid injuring other people,'" and while "persons generally have no duty to protect against dangers created by third parties, they do have a duty to protect against harms created by *their own conduct*.") (emphasis added).

Here, the defendants engaged in conduct that created a risk: they accepted "huge volumes of confidential information" from the healthcare providers, knowing it contained "highly sensitive and confidential patient information," for the purpose of processing insurance claims, and then they stored that sensitive information in systems that lacked "even rudimentary cybersecurity precautions to protect the information. (Compl., ¶¶ 2–3.) Because their own conduct created the risk, they owed a duty to exercise reasonable care to protect the information that they accepted—the same duty that arises with a bailment.

II. **One of the duties that arises in a bailment (i.e., the duty to protect the relevant property) applies here, even if other bailment duties (such as the duty to return the property) do not apply.**

This conduct of accepting someone else's property has long been understood to create a duty to exercise reasonable care in protecting that property against loss. As Justice Gorsuch recently explained, "[e]ntrusting your stuff to others is a *bailment*." *Carpenter v. United States*, 585 U.S. 296, 399 (2018) (Gorsuch, J., dissenting on issue of how the Fourth Amendment

5

applies to smartphones and arguing for a property-based approach). "A bailment is the 'delivery of personal property by one person (the *bailor*) to another (the *bailee*) who holds the property for a certain purpose.'" *Id.* (quoting Black's Law Dictionary 169 (10th ed. 2014)); *id.* ("[A] bailment is a delivery of a thing in trust for some special object or purpose, and upon a contract, expressed or implied, to conform to the object or purpose of the trust") (quoting J. Story, Commentaries on the Law of Bailments § 2, p. 2 (1832)). "A bailee normally owes a legal duty to keep the item safe, according to the terms of the parties' contract if they have one, and according to the 'implication[s] from their conduct' if they don't.'" *Id.* (quoting 8 C.J.S., Bailments § 36, pp. 468–469 (2017)).

The concept of bailment is ancient. Danielle D'Onfro, *The New Bailments*, 97 Wash. L. Rev. 97, 103 (2022) ("For several millennia, bailment has been a body of law that governs the relationship between the owner of a property and the person storing that property.") "It appears in the Code of Hammurabi and Roman law in forms not much different from the modern common law doctrine." *Id.* (footnote omitted). For example, section 125 of the Code of Hammurabi says:

> If a man give anything of his on deposit, and at the place of deposit either by burglary or pillage he suffer loss in common with the owner of the house, the owner of the house who has been negligent and has lost what was given to him on deposit shall

6

make good (the loss) and restore (it) to the owner of the goods
. . . . [*Id.* at 103–04.]

The same principles apply today. D'Onfro, *The New Bailments*, 97 Wash. L. Rev. at 105 ("the core principle of bailees owing bailors a duty of care has remained constant"). "A bailee has a legal duty—independent of any contractual duty—to exercise ordinary care to protect the subject of the bailment from negligent loss, damage, or destruction." 8A Am. Jur. 2d Bailments § 77. "Where a bailment is implied in law, the holder or bailee is obligated to keep and preserve the property for the benefit of the owner notwithstanding the lack of any mutual assent to create a bailment." *Id.* Bailment applies to intangible property too, not just to tangible property. *E.g.*, *Liddle v. Salem Sch. Dist. No. 600*, 619 N.E.2d 530, 531 (Ill. App. Ct. 1993) ("Both tangible and intangible property may be the subject of a bailment.").

The law of bailment confirms the intuition that naturally arises in a case like this: if a business accepts sensitive information into its systems, then it has a duty to take reasonable care to preserve that information from loss. *See* Jenna Tugaoen, *Standing on the Ledge: Balancing Data Breaches in the Era of Technology*, 50 Cap. U. L. Rev. 27, 54–55 (2022) ("Data breaches are analogous to traditional cases of bailment . . . where a customer has entrusted their intangible, confidential information to another for a business

7

transaction, which should, in turn, obligate the possessor to exercise reasonable care in protecting the consumer's private data. Under negligence law, a basic principle is that 'ordinarily everyone has a duty to refrain from affirmative acts that unreasonably expose others to a risk of harm.' Thus, it is rational to conclude that when a business affirmatively collects a customer's confidential data and subsequently fails to exercise reasonable care in protecting such data from theft or identity fraud, the failure to do so foreseeably causes injury to the customer.") (footnotes omitted).

To be clear, the plaintiffs here have not asserted a specific claim for a breach of a bailment. This may be because a number of district courts have rejected bailment claims in the context of data breaches based on specific elements of a bailment claim that are distinct from the duty to protect. For example, because bailment law developed in the context of physical property, it typically includes as an element that the bailee have exclusive possession of the property, which gives rise to a duty to return the property. *E.g.*, *Johnson v. Nice Pak Prods., Inc.*, 736 F. Supp. 3d 639, 652 (S.D. Ind. 2024) ("[I]n this case Plaintiffs' [personally identifiable information] was not in Defendants' exclusive possession. . . . Lacking this essential element of bailment, Plaintiffs' bailment claim does not support each essential element . . . ."); *In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1177 (D. Minn. 2014) ("Even if Plaintiffs are correct that intangible property such

8

as their personal financial information can constitute property subject to bailment principles, they have not—and cannot—allege that they and Target agreed that Target would return the property to them."); *but see Krupa v. TIC Int'l Corp.*, 2023 WL 143140, at *5 (S.D. Ind. Jan. 10, 2023) ("Krupa alleges that TIC held his personal data subject to a shared understanding that it would remain confidential, but that TIC negligently exposed that data to hackers. Krupa needs nothing more to establish a breach of bailment claim. He plausibly alleges that his data is 'personal property' that is in TIC's 'exclusive possession' once on TIC's servers, and that TIC had 'accepted' the data in the course of business.") (citation omitted).

Yet even if the circumstances of a data breach do not satisfy all of the elements of a bailment claim, that is not because the company accepting the data does not have *any* duties, as the defendants argue here. Rather, it is because a bailment of a physical item gives rise to *multiple* duties, not just a duty to return the property. The first duty is the duty to *protect*: "A bailee has a legal duty—independent of any contractual duty—to exercise ordinary care *to protect the subject of the bailment from negligent loss, damage, or destruction*." 8A Am. Jur. 2d Bailments § 77 (emphasis added). The duty to *return* the object is a separate duty: "The bailee *also* has certain duties of absolute obligation, such as *restoring or accounting for the subject matter of the bailment*, and keeping within the terms of the bailment." 8A Am. Jur. 2d

9

Bailments § 77 (emphasis added); *see also id.* ("The bailee *additionally* has duties of relative obligation, such as the duty to exercise the degree of care or skill required by the particular bailment, the precise nature of which is largely determined by who benefits from the bailment.") (emphasis added). Thus, even if Change Healthcare did not have a duty to return the data, it did have a duty to exercise reasonable care to protect the data and to dispose of it at the end. Austin Headrick, *Redefining the Injury-in-Fact: Treating Personally Identifying Information As Bailed Property*, 58 Ga. L. Rev. 871, 889 (2024) ("When the bailor gives their PII to the bailee, the duty of reasonable care should be imposed upon the bailee to ensure that the PII remains in its possession and is ultimately disposed of according to the agreement between the parties. This duty mirrors the duty imposed upon bailees in traditional bailments. *The duty of the bailee is an essential aspect of the bailment.*") (footnote omitted; emphasis added); Miles Skedsvold, *A Duty to Safeguard: Data Breach Litigation Through A Quasi-Bailment Lens*, 25 J. Intell. Prop. L. 201, 225 (2018) ("[M]odern usage of PII and common law bailment principles lead one to conclude that commercial holders of PII may have a duty of reasonable care to protect that information against third-party criminal theft.").

In short, recognizing the existence of a duty here would not be extending the law of bailments; rather, it would simply be recognizing that

10

one duty (a duty to protect) exists under bailment law even if another duty (the duty to return) does not apply in the information context.

Indeed, Change acknowledges that it owes duties in its Code of Conduct: it promises to "*exercise care* and discretion when handling [restricted and confidential] information" and to "collect, *store*, access, use, share, transfer, and *dispose* of [personally identifiable information] responsibly." (Compl., RE 1, Case No. 25-179, ¶ 171 (emphasis added; alterations in complaint).) Thus, unlike in cases where the plaintiffs did not allege a duty to dispose of the data (which can substitute for a duty to return the property), here the plaintiffs have alleged this duty. *Compare Miller v. NextGen Healthcare, Inc.*, 742 F. Supp. 3d 1304, 1317 (N.D. Ga. 2024) (not resolving whether a bailment theory was sufficient because "[t]he Plaintiffs do not allege any requirement—contractual or legal—that NextGen had to return, destroy, or otherwise dispose of the Plaintiffs' information within a certain period of time or upon the Plaintiffs' demand."), *with* Compl., RE 1, ¶ 160 (alleging that "fundamental data security principles" require businesses to "(a) protect the personal customer information that they collect and store" and to "(b) properly dispose of personal information that is no longer needed").)

In the end, the defendants claim that they have no duty to protect and safeguard the sensitive information that they accepted from the plaintiffs.

11

But the duty to exercise reasonable care in one's own conduct (here, accepting sensitive information for the purpose of claims processing) creates a duty to exercise reasonable care to protect that sensitive information from loss. Accordingly, this Court should recognize that the defendants do owe the plaintiffs a duty under basic tort-law principles, as illustrated by the law of bailment, and so should deny dismissal of the negligence claims.

## CONCLUSION AND RELIEF REQUESTED

For these reasons, this Court should deny dismissal of the negligence claims.

Dated:  July 7, 2025

**BARNES & THORNBURG LLP**

By: */s/ Christopher L. Lynch*
Christopher L. Lynch (#0284154)
225 South Sixth Street, Suite 2800
Minneapolis, MN 55402-4662
Tel: (612) 367 – 8768
Fax: (612) 333 – 6798
Christopher.lynch@btlaw.com

*ATTORNEYS FOR AMICUS CURIAE,*
*THE AMERICAN SOCIETY OF*
*ANESTHESIOLOGISTS*