**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| **IN RE: CHANGE HEALTHCARE, INC. CUSTOMER DATA SECURITY BREACH LITIGATION**<br><br>*This Document Relates to All Actions* | MDL No. 24-md-3108 (DWF/DJF)<br><br>**DEFENDANTS' MEMORANDUM OF LAW ADDRESSING APPLICATION OF THE CHOICE-OF-LAW RULES OF TENNESSEE AND LOUISIAINA** |

Although Tennessee and Louisiana employ different choice-of-law methodologies than Minnesota, those methodologies yield the same result. For Plaintiffs' common law tort claims, the Court should apply each Plaintiffs' home state law. For Plaintiffs' contract claims, the Court should respect any contractual choice-of-law provision – or, in its absence, apply Plaintiffs' home state law to their contract claims as well.

The underlying facts that drove this conclusion under Minnesota's choice-of-law analysis compel the same result under Tennessee and Louisiana law. The named Plaintiffs subject to Tennessee's or Louisiana's laws interacted with Defendants ***in their home states***. The named Plaintiffs who entered into contracts with Defendants did so ***in their home states***. The named Plaintiffs allege that they suffered harm ***in their home states.***[1]

## I. THE COURT SHOULD APPLY TENNESSEE'S CHOICE-OF-LAW RULES TO THREE NAMED PLAINTIFFS, AND LOUISIANA'S CHOICE-OF-LAW RULES TO ONE

As a result of Pretrial Order No. 18, Plaintiffs removed from *Total Care Dental & Orthodontics, et al. v. UnitedHealth Grp. Inc., et al.*, No. 25-cv-179 thirteen providers that were also Plaintiffs in other underlying cases in this MDL. *See* Am. Compl., *Total Care*, Dkt. No. 95.[2] These thirteen Plaintiffs are now part of the Provider Master Complaint, Dkt.

---

[1] Capitalized terms and acronyms carry the same meaning as in Defendants' Memorandum Regarding Choice-of-Law. Dkt. No. 255.

[2] One additional provider, Bay Area Therapy Group A Marriage and Family Counseling Corp., was removed from *Total Care* but the underlying case was dismissed. *See Bay Area Therapy Grp. A Marriage and Family Counseling Corp. v. Change Healthcare Inc. et al*, No. 0:24-cv-02354-DWF-DJF (D. Minn.), Dismissal Order, Dkt. No. 26 (originally docketed as No. 3:24-cv-01682 (N.D. Cal.)). Therefore, this plaintiff is no longer in the MDL and need not be considered in the Court's analysis. There are no duplicate Plaintiffs in the individual track.

No. 407, as a result of their original underlying MDL case.

For nine of these Plaintiffs, their underlying case was also filed in the District of Minnesota, and therefore Minnesota's choice-of-law rules still apply. *See In re Bair Hugger Forced Air Warming Devices Prods. Liability. Litig.*, 999 F.3d 534, 538 (8th Cir. 2021); *see also* App. A (Duplicate Plaintiff Chart). However, three provider Plaintiffs had underlying cases filed in Tennessee, and one provider Plaintiff's underlying case was filed in Louisiana. App. A. Under *In re Bair Hugger*, the Court must apply the choice-of-law rules of Tennessee and Louisiana, respectively, to these Plaintiffs.

## II. TENNESSEE AND LOUISIANA RESPECT CHOICE-OF-LAW PROVISIONS IN CONTRACTS

Like Minnesota, Tennessee and Louisiana courts enforce contractual choice-of-law provisions. In Tennessee, "parties ordinarily are free to contract that the law of some jurisdiction other than that of the place of making will govern their relationship." *Carroll v. CMH Homes, Inc.*, 2013 WL 2431432, at *4 (E.D. Tenn. June 4, 2013). Similarly, Louisiana has codified this rule at La. Civ. Code art. 3540, which states that "[a]ll other issues of conventional obligations are governed by the law expressly chosen or clearly relied upon by the parties." Thus, the Court should honor the agreements between the parties for any claims based on contracts containing such agreements.[3]

[3] Both Tennessee and Louisiana contain exceptions under which choice-of-law provisions might be invalidated. *See Carroll*, 2013 WL 2431432, at *4; La. Civ. Code art. 3540. Since Plaintiffs have not identified a particular contract, Defendants do not have any reason to believe that any of these exceptions apply. Defendants reserve all rights to challenge a particular contract if and when it is identified.

## III. UNDER TENNESSEE'S CHOICE-OF-LAW RULES, THIS COURT SHOULD APPLY THE LAW OF EACH PLAINTIFF'S HOME STATE

Tennessee's choice-of-law rules focus on which state has the "most significant relationship" to a claim (for tort claims) or where a contract is "executed" (for contract claims). *Haney v. Charter Foods N., LLC*, 747 F. Supp. 3d 1093, 1107 (E.D. Tenn. 2024). To date, at least four courts have considered the application of Tennessee's choice-of-law rules to a data breach involving a single, Tennessee-based defendant. Each of those courts found that Tennessee law applies.[4] In this case, however, the Defendants are split between Minnesota and Tennessee, with Plaintiffs arguing at length that Minnesota has substantial connections to this case. *See generally* Pl. Mem. on Choice-of-Law (Dkt. No. 331). Under a straight-forward application of Tennessee's rules, the state with the ***most*** significant connection to the Cyberattack is the place where each Plaintiff was injured and conducted all of their contractual relationships with Defendants: their home state.[5]

### *A. Plaintiffs' Home States Have the "Most Significant Relationship" to the Cyberattack*

Tennessee applies the "most significant relationship" test to tort claims, which considers four key factors: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, place of incorporation,

---

[4] *See Mason v. Wright Bros. Constr. Co., Inc.*, 2025 WL 939709, at *3-4 (E.D. Tenn. Mar. 27, 2025); *In re Numotion Data Incident Litig.*, 2025 WL 57712, at *6-7 (M.D. Tenn. Jan. 9, 2025); *Cahill v. Mem. Heart Inst., LLC*, 2024 WL 4311648, *4-5 (E.D. Tenn. Sept. 26, 2024); *Haney*, 747 F. Supp. 3d at 1107.

[5] The three Named Plaintiffs that are subject to Tennessee's choice-of-law rules are based in Florida (H. Lee Moffitt Institute Hospital, Inc.), Illinois (Revival Therapy, P.C.), and New Jersey (Advanced Cardiology of South Jersey, P.C.). *See* App. A.

and place of business of the parties; and (4) the place where the parties' relationship is centered. *Hataway v. McKinley*, 830 S.W.2d 53, 59 (Tenn. 1992). Here, these factors point toward Plaintiffs' home states.

The first factor—the place where the injury occurred—cuts strongly in favor of each Plaintiffs' home states. In data breach cases, the Plaintiffs' domicile is presumed to be the location of the injury. *See, e.g.*, *Haney*, 747 F. Supp. 3d at 1107.

The effect of the second factor—the place where the conduct causing the injury occurred—is split between at least Minnesota, Tennessee, and Plaintiffs' home states, plus the unknown location of the ALPHV/Blackcat criminal gang that perpetrated the Cyberattack. Plaintiffs extensively argued that Defendants undertook substantial activities in Minnesota that allegedly led to the Cyberattack. *See* Pl. Mem. on Choice-of-Law, at 7-9 (Dkt. No. 331). However, it is obvious that Tennessee has substantial connections to this case as well: Change is a Tennessee corporation and was the direct victim of the Cyberattack. Furthermore, Plaintiffs provided data from their operations in their home states to Plaintiffs, making their conduct relevant as well. Thus, this factor is split between at least three different jurisdictions—Tennessee (Change's home state), Minnesota (where Plaintiffs allege Defendants undertook substantial activities), and each Plaintiff's home state.

The third factor—the domicile and place of business of the parties—is similarly split, for the same reasons.

Finally, the fourth factor—where the parties' relationship is centered—strongly supports applying the law of Plaintiffs' home states. Two of the applicable Named

Plaintiffs did not have ***any*** direct relationship with Defendants because they accessed the Change Platform through a third-party intermediary. *See* Provider CAC ¶ 313 (Revival Therapy, P.C.); ¶ 367 (Advanced Cardiology of South Jersey, P.C.). The one remaining named Plaintiff did not contract with Change either, but with Defendant Change Healthcare Technologies LLC, a Minnesota LLC that was at least one step removed from the target of the Cyberattack. What is clear is that each of these Plaintiffs used the Change Platform in their home states, and their home states therefore can most appropriately be considered the place where their relationship is centered.

In sum, two of the four factors point conclusively to Plaintiffs' home states, while the remaining two factors are split between Tennessee, Minnesota, and Plaintiffs' home states. Other cases examining Tennessee's rules in data breach cases did not have this ambiguity because all Defendants were clearly based, and made all of their decisions in, Tennessee. *See Mason*, 2025 WL 939709, at *4; *In re Numotion*, 2025 WL 57712, at *7; *Cahill*, 2024 WL 4311648, at *5; *Haney*, 747 F. Supp. 3d 1107. Here, Plaintiffs cannot point to a single jurisdiction where Defendants' conduct took place. Under this analysis, each Plaintiff's home state has the most significant relationship to the case, and each Plaintiff's home state law should be applied to the respective Plaintiffs' tort claims.

*B. Plaintiffs' Contracts Presumably Were Executed in Their Home States and the Court Therefore Should Apply Their Home State Substantive Law to Their Contract Claims.*

Tennessee follows the traditional rule that a contract is governed by the law of the state where it was executed. *Williams v. Smith*, 465 S.W.3d 150, 153 (Tenn. Ct. App. 2014). Plaintiffs have not identified any specific contract or alleged where it was executed, *see*

*generally* Provider Master Complaint, and two of the applicable Named Plaintiffs did not contract with any Defendant for use of the Change Platform at all. However, each Named Plaintiff used the Change Platform to facilitate healthcare services in their home states, and the most natural assumption under these circumstances is that all such contracts were executed in their home states. Therefore, the law of Plaintiffs' home states should apply to their contract claims in the absence of an enforceable choice-of-law provision.

## IV. LOUISIANA'S CHOICE-OF-LAW RULES COMPEL THE APPLICATION OF LOUISIANA LAW TO THE CLAIMS OF THE LOUISIANA PLAINTIFF

Louisiana's choice-of-law rules are codified in Louisiana Civil Code articles 3515 through 3556. These provisions adopt a comparative impairment approach: the Court must determine which state's policies would be most seriously impaired if its law were not applied to the issue. *Marchesani v. Pellerin-Milnor Corp.*, 269 F.3d 481,488 (5th Cir. 2001). This framework applies both to contract disputes, La. Civ. Code art. 3537, and torts, *id.* art. 3542. *NOLA Ventures, LLC v. Upshaw Ins. Agency, Inc.*, 932 F. Supp. 2d 743, 753 (E.D. La. 2013).

Importantly, MDL Courts applying Louisiana's choice-of-law rules have flatly rejected the idea that the law of a Defendant's home state applies to a nationwide class. In *In re Ford Motor Co. Bronco II Prod. Liability Litig.*, an MDL Court held that Louisiana's choice-of-law determination was "a function of the individual defendant, plaintiff, and the circumstances of the claim" and that a blanket application of the law of the defendant's home state was inappropriate despite various design and marketing decisions being made there. 177 F.R.D. 360, 370-72 (E.D. La. 1997); *see also In re Vioxx Prods. Liability Litig.*,

478 F. Supp. 2d 897, 905-06 (E.D. La. 2007) (applying substantive laws of Plaintiffs' home states to the merits of negligence claims because the home state is where plaintiffs resided and were injured).

### *A. Louisiana's Policies Regarding the Economic Loss Rule Would be Seriously Impaired if Another State's Law Was Applied to Injuries that Occurred in Louisiana*

Tort claims, whether intentional (also known as "delictual") or negligent ("quasi-delictual") are governed by La. Civ. Code art. 3542, which incorporates the policies of La. Civ. Code art. 3515. The Fifth Circuit has developed a three-step process for applying the methodology required by these statues:

> (1) examine the pertinent contacts of each state with respect to the particular issue as to which there exists an actual conflict of laws (so as to determine the relationship of each state to the parties and the dispute), (2) identify the various state policies that might be implicated in the choice of law, and then (3) evaluate the strength and pertinence of these policies in light of the relationship of each state to the parties and the dispute, and in light of the policies and needs of the interstate and international systems (so as to resolve the ultimate question of which state's policies would be most seriously impaired if its law were not applied to that issue).

*Marchesani*, 269 F.3d at 487 (internal citations and quotations omitted).

The first step of Louisiana's analysis, identifying the pertinent contacts of each state to the issue, shows that multiple states are involved in this issue. The lone Louisiana Plaintiff, Professional Arts Pharmacy, conducts its business in Louisiana, utilized the Change Platform in Louisiana, and was allegedly injured in Louisiana. Change is a Tennessee Corporation and was the victim of the Cyberattack. As discussed previously, Plaintiffs make much of the role of various Minnesota Defendants in their choice-of-law arguments, potentially adding that state to the mix. And finally, Professional Arts

Pharmacy did not contract with Change directly but with a Maine corporation, Change Pharmacy Solutions. Provider Master Compl. ¶¶ 26, 319. Of these varied contacts, the most salient and significant is the Plaintiff's domicile and place of injury: Louisiana.

The second step is to consider the various policies that might be implicated by the choice-of-law in this matter. Fundamentally, the Provider Plaintiffs seek to recover various economic losses as a result of the temporary disruption caused by the Cyberattack on Change and Defendants' alleged negligent actions that led to the disruption. *See* Provider Master Compl. ¶¶ 95-107. Louisiana has adopted a particular interpretation of the economic loss rule that reflects its policy judgment on how to allocate liability when negligence actions injure individuals in Louisiana. *Wiltz v. Bayer CropScience, Ltd. P'ship*, 645 F.3d 690, 697-99 (5th Cir. 2011). "For 'policy reasons,' [Louisiana] law does not 'require that a party who negligently causes injury to property must be held legally responsible to *all* persons for *all* damages flowing in a 'but for' sequence from the negligent conduct.'" *Id.* at 697 (quoting *PPG Indus., Inc. v. Bean Dredging*, 447 So.2d 1058, 1069, 1061 (La. 1984) (emphasis in original)). Instead of liability bounded only by foreseeability, Louisiana's version of the economic loss rule considers whether the "moral, social, and economic values involved" support imposing liability on a defendant for purely economic losses. *PPG Indus.*, 447 So.2d at 1061.

The final step of Louisiana's methodology is to determine which of any applicable policies would be most seriously impaired by the substitution of a different state's policies. Given the strength of Louisiana's economic loss doctrine, it is clear that substituting the law of another state—which may not match Louisiana's nuanced and case-specific analysis

of economic losses in negligence actions—would seriously impede Louisiana policy with regard to this action.[6] Other states, such as Tennessee or Minnesota, have much less of an interest in applying their own versions of the economic loss rule to economic losses that occur outside of their borders, and thus would suffer comparatively little policy impairment by the imposition of Louisiana law to these tort claims.

In sum, Louisiana's policies would suffer the most impairment if another state's law were applied to the tort claims of the lone Louisiana Plaintiff.

### *B. For Similar Reasons, Louisiana's Policies Would be Impaired if Another State's Laws Were Applied to Plaintiffs' Contract Claims in the Absence of a Choice-of-Law Provision*

Louisiana's choice-of-law rules with regard to contract claims are governed by LA. Civ. Code art. 3537, which also incorporates La. Civ. Code art. 3515. "The first step of the process is to identify the relevant policies of the involved states." Cmt. to La. Civ. Code art. 3537. Here, Plaintiff is a Louisiana healthcare provider that contracted with a Maine corporation with its principal place of business in Tennessee.[7] The second step of the

[6] Indeed, the Louisiana Supreme Court adopted its interpretation of the economic loss rule in a case similar to this action. In *PPG Indus., Inc. v. Bean Dredging*, a contractor negligently damaged a natural gas pipeline causing plaintiff, a customer of the pipeline, to sustain economic damages when their access to gas was disrupted. 447 So.2d at 1059. The Louisiana Supreme Court expressed concern that allowing such a claim to proceed would "create liability in an indeterminate amount for an indeterminate time to an indeterminate class" and denied the plaintiff's claim. *Id.* at 1061. The factual pattern in *PPG Indus.* is similar to the Cyberattack, where—according to Plaintiffs—multiple data security decisions allegedly allowed a third-party threat actor to attack Change, requiring a shutdown of Change's services, and thereby causing economic losses to Change's customers.

[7] According to the Provider Master Complaint, Professional Arts Pharmacy did not receive any TFAP loans, and thus the only relevant contract appears to be its contract with Defendant Change Pharmacy Solutions. *See* Provider Master Compl. ¶¶ 318-23.

process is to evaluate the strength and pertinence of these policies" in light of a variety of factors. *Id.* With regard to generic business contracts, Louisiana has an interest in (1) providing redress for Louisiana victims; and (2) regulating parties who contract with Louisiana businesses. *See DeLoach Spray Foam Insulation, LLC v. Briggs & Stratton, Corp.*, 645 F. Supp. 3d 563, 570-73 (W.D. La. 2022).

For many of the same reasons described in section IV.A., Louisiana has a stronger interest in regulating contacts with its residents than other states do. "This is especially true" where the service disruption affected "commercial activities expected to take place in Louisiana." *Id.* at 573. Moreover, Plaintiffs have not alleged that the non-Louisiana contracting entity, Change Pharmacy Solutions, was the target of the Cyberattack or even involved in any data security decisions. *See generally* Provider Master Compl. This significantly weakens the claim that Tennessee (or Maine) had a substantial policy interest in regulating its contract with the Louisiana Plaintiff in this matter. Therefore, in the absence of a choice-of-law provision, the Court should apply the law of Louisiana to any contract claim brought by the lone Louisiana Plaintiff.

## CONCLUSION

Tennessee and Louisiana's choice-of-law rules compel the conclusion that the substantive law of each applicable Plaintiff's home state applies to the claims at issue in the Provider Master Complaint unless those claims are otherwise governed by a choice-of-law provision in an applicable contract.

Dated: July 24, 2025

*/s/ Allison M. Ryan*
Allison M. Ryan
Alicia J. Paller (MN No. 0397780)
Joseph J. Cavanaugh
**HOGAN LOVELLS US LLP**
555 13th Street NW
Washington, DC 20004
Tel: (202) 637-5600
Fax: (202) 637-5910
allison.holt-ryan@hogbanlovells.com
alicia.paller@hoganlovells.com
joe.cavanaugh@hoganlovells.com

*/s/ Peter H. Walsh*
Peter H. Walsh (MN No. 0388672)
**HOGAN LOVELLS US LLP**
80 South Eighth Street, Suite 1225
Minneapolis, MN 55402
Tel: (612) 402-3017
Fax: (612) 339-5167
peter.walsh@hoganlovells.com

Michael M. Maddigan
Vassi Iliadis
**HOGAN LOVELLS US LLP**
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Michael.maddigan@hoganlovells.com
Vassi.iliadis@hoganlovells.com
Tel: (310) 785-4727
Fax: (310) 785-4601

***Attorneys for Defendants***