# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| **IN RE: CHANGE HEALTHCARE, INC. CUSTOMER DATA SECURITY BREACH LITIGATION**<br><br>*This Document Relates To All Provider Actions* | MDL No. 24-3108 (DWF/DJF)<br><br>**DEFENDANTS' MEMORANDUM OF LAW OPPOSING *AMICUS CURIAE* BRIEF OF AMERICAN SOCIETY OF ANESTHESIOLOGISTS** |

# **TABLE OF CONTENTS**

Page

ARGUMENT ................................................................................................................................2

I.      The ASA's Bailment Theory Does Not Save Plaintiffs' Negligence Claim, as Bailment Principles Do Not Impose on Defendants a Duty to Safeguard Data They Did Not Exclusively Control and Were Not Expected to Return........................................................2

        A.      No Bailment Arose Here Because Defendants Never Gained Exclusive Possession of the Potentially Impacted Private Information.......................................................3

        B.      No Bailment Arose Because There Was Never Any Expectation That Defendants Would Return the Private Information Allegedly Impacted in the Cyberattack ......4

        C.      This Court Should Follow Well-Established Precedent and Reject the Application of BailmentPrinciples to a Cyberattack ..................................................................5

II.     Bailment Principles Do Create a Duty by Defendants to Providers Because Defendants Did Not Receive Providers' Data, and Providers Allege No Harms Based On an Alleged Failure to Safeguard Data...........................................................................................................7

CONCLUSION..............................................................................................................................9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Beech Transp. v. Critical Care Servs., Inc.*,
   No. C6-01-292, 2001 WL 1182707 (Minn. App. Oct. 9, 2001) .................................................2

*Colwell v. Metro. Airports Comm'n, Inc.*,
   386 N.W.2d 246 (Minn. App. 1986).........................................................................................2

*In re Cmty. Health Systems, Inc.*,
   No. 15-CV-222, 2016 WL 4732630 (N.D. Ala. Sept. 12, 2016)...........................................2, 4

*Duffy v. Lewis Bros. Bakeries, Inc.*,
   760 F. Supp. 3d 704 (S.D. Ind. 2024) ........................................................................................6

*EZ Mart 1, LLC. v. Colonial Pipeline Co.*,
   No. 1:21-cv-02522-MHC (N.D. Ga. Jul. 8, 2022), Dkt. No. 34 .................................................8

*Galaria v. Nationwide Mut. Ins. Co.*,
   No. 2:13-cv-118, 2017 WL 4918634 (S.D. Ohio Oct. 31, 2017) ..................................4, 5, 6, 7

*Johnson v. Nice Pak Prods., Inc.*,
   736 F. Supp. 3d 639 (S.D. Ind. 2024) .....................................................................................4, 6

*Krupa v. TIC Int'l Corp.*,
   No. 1:22-cv-01951, 2023 WL 143140 (S.D. Ind. Jan. 10, 2023) ..............................................6

*McLaughlin v. Taylor Univ.*,
   No. 1:23-cv-00527, 2024 WL 4274848 (N.D. Ind. Sept. 23, 2024) ..................................3, 4, 6

*Miller v. NextGen Healthcare, Inc.*,
   742 F. Supp. 3d 1304 (N.D. Ga. 2024) .....................................................................................6

*Nat'l Fire Ins. Co. v. Commodore Hotel, Inc.*,
   107 N.W.3d 708 (Minn. 1961)...................................................................................................2

*In re Numotion Data Incident Litig.*,
   No. 3:24-CV-00545, 2025 WL 57712 (M.D. Tenn. Jan. 9, 2025) .........................................2, 6

*In re Sony Gaming Networks and Custom. Data Sec. Breach Litig.*,
   903 F. Supp. 2d 942 (S.D. Cal. 2012)........................................................................................5

*U.S. v. $186,907.00 in U.S. Currency*,
   No. 07-3229, 2008 WL 2331610 (D. Minn. June 3, 2008).......................................................2

*Webster v. Bradford-Scott Data, LLC*,
    No. 1:24-cv-00117, 2025 WL 560917 (N.D. Ind. Feb. 20 2025) ............................................... 6

*Wicklund v. North Star Timber Co.*,
    205 Minn. 595 (1939) ............................................................................................................. 8

**Statutes**

Code of Hammurabi ........................................................................................................................ 8

Defendants' Motion to Dismiss detailed why Provider Plaintiffs have not plausibly alleged *any* duty that Defendants owed to them and why the Court should follow well-established precedent and reject Plaintiffs' position that Defendants owed them a duty to safeguard data that was not theirs. In a belated intervention attempting to save Plaintiffs' flawed negligence claim, the American Society of Anesthesiologists ("ASA") suggests that Defendants owed a duty to safeguard any private data they incidentally received based on principles of bailment law.

The ASA's bailment argument fares no better than Plaintiffs' own flawed theories. For starters, bailment principles have no application here, where (i) Defendants did not have exclusive control over the data at-issue; (ii) there was no expectation that this data would be returned; and (iii) courts uniformly decline to apply bailment law in the context of cyberattacks. But even if bailment principles could give rise to a duty in some cyberattack cases (and they do not), the bailment theory fails here for the same reason as Plaintiffs' other theories: Defendants owed no duty to *these Plaintiffs* because the data Defendants allegedly received was not *Plaintiffs' data*, and Plaintiffs allege no harms that they purportedly suffered due to the alleged failure to safeguard the data that Defendants actually received. Accordingly, the ASA fails to articulate any basis for applying bailment principles to this case, and Plaintiffs' negligence claim should be dismissed.

1

**ARGUMENT**

I. **The ASA's Bailment Theory Does Not Save Plaintiffs' Negligence Claim, as Bailment Principles Do Not Impose on Defendants a Duty to Safeguard Data They Did Not Exclusively Control and Were Not Expected to Return**

Although it seeks to create a duty to safeguard data based on bailment principles, the ASA concedes that the essential elements of a bailment relationship—exclusive possession of property and an expectation to return that property—are absent here. To create a bailment, "there must be delivery of goods from one person (the bailor) to another (the bailee) without a transfer of ownership and acceptance of such delivery by the bailee upon an agreement, either express or implied, that the goods are to be returned to the bailor or otherwise accounted for." *See, e.g.*, *U.S. v. $186,907.00 in U.S. Currency*, No. 07-3229, 2008 WL 2331610, at *3 (D. Minn. June 3, 2008) (quoting *Nat'l Fire Ins. Co. v. Commodore Hotel, Inc.*, 107 N.W.3d 708, 709 (Minn. 1961)).[1] "The generally accepted test is whether there is a full transfer of the property, amounting to relinquishment of exclusive possession, control and dominion over the property for the duration of the relationship." *Beech Transp. v. Critical Care Servs., Inc.*, No. C6-01-292, 2001 WL 1182707, at *3 (Minn. App. Oct. 9, 2001) (quoting *Colwell v. Metro. Airports Comm'n*,

---

[1] Defendants maintain their choice-of-law arguments outlined in their Memorandum of Law Addressing Choice-of-Law Determination (Dkt. Nos. 255, 421). Although states vary in whether breach of bailment is categorized as a contract or a tort claim, *see In re Community Health Systems, Inc.*, No. 15-CV-222, 2016 WL 4732630, at *24 (N.D. Ala. Sept. 12, 2016), Defendants are not aware of any material differences in the elements needed to establish a bailment under each state's laws. *See, e.g., In re Numotion Data Incident Litig.*, No. 3:24-CV-00545, 2025 WL 57712, at *12 (M.D. Tenn. Jan. 9, 2025) (collecting cases).

*Inc.*, 386 N.W.2d 246, 248 (Minn. App. 1986)).  These core requirements for establishing a bailment are absent here.

This Court should reject the ASA's assertion that Defendants owed Plaintiffs a duty to safeguard information under principles of bailment law for the fundamental reason that no bailment existed here.  First, Defendants did not have exclusive control over the data allegedly compromised in the Cyberattack.  Second, there was no expectation that Defendants would return whatever data they purportedly received.  Third, courts across the country have uniformly rejected the application of bailment law in the context of a cyberattack.

> **A.** **No Bailment Arose Here Because Defendants Never Gained Exclusive Possession of the Potentially Impacted Private Information**

The ASA misstates the law in contending that, "even if the circumstances of a data breach do not satisfy all of the elements of a bailment claim," Defendants still had "a duty to exercise reasonable care to protect the data and to dispose of it at the end."  Amicus Br. at 9-10.  The ASA is incorrect.  To give rise to *any* duty under a bailment theory, a bailment must first be created.  And, as discussed above, (i) "delivery of the property to the bailee is essential to a bailment's creation" and (ii) "'sufficient delivery' requires 'such a full transfer . . . as to exclude the owner and all other persons.'"  *McLaughlin v. Taylor Univ.*, No. 1:23-cv-00527, 2024 WL 4274848, at *12 (N.D. Ind. Sept. 23, 2024) (citation omitted).  Thus, even if Defendants received "Private Information" from providers, as Plaintiffs allege, no bailment was created here because Defendants did not have exclusive, full control of that information.  *Id.* (dismissing breach of bailment claim because defendants did not

3

exclusively possess plaintiffs' PII); *Johnson v. Nice Pak Prods., Inc.*, 736 F. Supp. 3d 639, 653 (S.D. Ind. 2024) (same); *Galaria v. Nationwide Mut. Ins. Co.*, No. 2:13-cv-118, 2017 WL 4918634, at *1 (S.D. Ohio Oct. 31, 2017) (same).

No party, including the ASA, alleges that providers or patients, lost possession of the "Private Information" (i.e., patient data) because of the Cyberattack, or that they no longer could use information allegedly impacted in the Cyberattack. Indeed, both the patients whose data was allegedly accessed in the Cyberattack—and the providers who allegedly received such information remain "free to use or disseminate" the Private Information. *Johnson*, 736 F. Supp. 3d at 652. And, even if they "could not manipulate [it] once on [Defendants'] servers," they "still had uninhibited access to their PII insofar as they could "deliver it to limitless others." *McLaughlin*, WL 4274848, at *12 (internal citations omitted). Consequently, no bailment existed as a matter of law, and therefore bailment principles cannot give rise to a negligence duty.

### B. No Bailment Arose Because There Was Never Any Expectation That Defendants Would Return the Private Information Allegedly Impacted in the Cyberattack

ASA's assertion that, "bailment law may still establish a duty to safeguard the property, even if it does not establish a duty to return the property" is likewise inconsistent with prevailing bailment law. The expectation to return property is an archetypal element of a bailment. *See, e.g., In re: Cmty. Health Sys., Inc.*, 2016 WL 4732630, at *24. To promote its theory that a bailment can exist—and therefore give rise to a duty to safeguard—even absent this fundamental requirement, the ASA relies primarily on two student notes to extend traditional bailment law, without citing any case law. *See* Amicus

4

Br. at 9-10. This lack of legal authority is not surprising, as Defendants are not aware of any authority supporting the ASA's strained theory. To the contrary, courts routinely reject the existence of a bailment where there is no expectation that the bailed property will be returned. In *Galaria*, for instance, the court dismissed plaintiffs' bailment claim because "[l]iability on a bailment theory rests on the bailee's failure to return the bailed personal property as agreed or to return it in an undamaged condition," and plaintiffs did not, and could not, allege that "they expected [d]efendant to return their data because they were never without their personal identifiers." *Galaria*, 2017 WL 4918634, at *2. So too here. As in *Galaria*, Plaintiffs cannot maintain a negligence claim based on the theory that bailment principles gave rise to a duty that Defendants owed to providers to safeguard patient data, where there was never any expectation that Defendants would return the information they received from providers.[2] *Id.*

### C. This Court Should Follow Well-Established Precedent and Reject the Application of Bailment Principles to a Cyberattack

The ASA's suggestion that recognizing a duty to safeguard based on bailment principals in this case "would not be extending the law of bailments" strains credulity and ignores well-established authority in analogous cyberattack cases. Amicus Br. at 10.

---

[2] The ASA's failed arguments only illuminate how novel their bailment theory actually is. The ASA merely recycles Plaintiffs' existing flawed negligence arguments under a different label, and its attempt to concoct new law should be rejected. *See In re Sony Gaming Networks and Custom. Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 974 (S.D. Cal. 2012) (where "the only allegation against [defendant] regarding the theft of [p]laintiffs' Personal Information was that [defendant] was negligent or otherwise engaged in unfair or fraudulent practices," "[p]laintiffs' claim for bailment is duplicative of its claims for negligence" and therefore fails).

5

Contrary to the ASA's suggestion, courts routinely reject application of bailment principles in cases arising out of a cyberattack. In fact, one recent court observed, "basically every district court that has considered a bailment claim in the context of data breach litigation . . . has rejected the claim for various reasons." *In re Numotion*, 2025 WL 57712, at *12 (collecting cases). The ASA fails to provide any compelling basis for this Court to depart from this persuasive body of law in order to cobble together some novel new legal principle.

The lone case that the ASA cites to support its theory that Plaintiffs' negligence claim should survive based on bailment principles is a single, out-of-state district court decision upholding a breach of bailment claim in the data breach context. Amicus Br. at 9 (*citing Krupa v. TIC Int'l Corp.*, No. 1:22-cv-01951, 2023 WL 143140, at *5 (S.D. Ind. Jan. 10, 2023)). However, subsequent decisions demonstrate that *Krup*a remains an aberration. Following *Krupa,* courts have made clear that it "is an outlier case" because the "predominant view across the country is that bailment is not a viable theory in data breach cases." *McLaughlin*, 2024 WL 4274848, at *12 (dismissing bailment claim in data breach case and refusing to follow *Krupa*). *See also Galaria*, 2017 WL 4918634, at *1 (collecting cases)); *Webster v. Bradford-Scott Data, LLC*, No. 1:24-cv-00117, 2025 WL 560917, at *14-16 (N.D. Ind. Feb. 20 2025) (same); *Duffy v. Lewis Bros. Bakeries, Inc.*, 760 F. Supp.3d 704, 725-26 (S.D. Ind. 2024) (same); *In re Numotion*, 2025 WL 57712, at *12 (same); *Miller v. NextGen Healthcare, Inc.*, 742 F. Supp. 3d 1304, 1317 (N.D. Ga. 2024); *Johnson*, 736 F. Supp. 3d at 652-53 (same). This Court should pay no heed to the ASA's false assurances that recognizing the existence of a duty on bailment grounds would

6

not require this Court to create novel law representing a clear break with, and departure from, the way nearly every other District Court across the nation has evaluated the application of bailment law in cyberattack cases. To the contrary, if it were to adopt the ASA's arguments, this Court *would* be "extending the law of bailments" beyond what virtually every other court, including other courts in this District, has done when examining this issue. Amicus Br. at 10. This Court should decline ASA's invitation to deviate from this trend by going where no Court has gone before.

## II. Bailment Principles Do Not Create a Duty Owed by Defendants to Providers Because Defendants Did Not Receive Providers' Data and Providers Allege No Harms Based On an Alleged Failure to Safeguard Their Data

Even if the Court were willing to extend bailment theory to the context of a cyberattack, it still would be inappropriate to apply that theory to *providers* in this case. As Defendants Motion to Dismiss highlighted, the Provider Plaintiffs do not assert that the data impacted in the Cyberattack, or in fact any data that Defendants held, *belonged to the providers*, as opposed to their patients. *See* Provider Mot. Dismiss at 7. Nor do Plaintiffs assert any harms arising from the alleged failure to protect data itself, rather than asserting harms from the service disruption following the Cyberattack. *See Id.* at 7-8.

This fundamental shortcoming in Plaintiffs' theory is cast into even starker relief by the ASA's bailment theory, which clarifies that bailments are intended to protect the *owner of the property at issue*: that is, the patients whose PII and PHI was allegedly impacted in the Cyberattack—not Provider Plaintiffs. Indeed, the ASA's own argument makes this point clear. Amicus Br. at 5-8 ("entrusting *your stuff to others* is a bailment […] a bailee has a legal duty […] to protect the *subject of the bailment* […] where a bailment is implied

7

in law, the holder or bailee is obligated to keep and preserve the property *for the benefit of the owner* […] failure to do so foreseeably causes injury *to the customer*" (emphasis added)). This is a core principle of bailment law, going back to—as the ASA suggests—the Code of Hammurabi. *See* Amicus Br. at 6-7 (citing Section 125 of the Code of Hammurabi, stating that "the owner of the house […] shall make good (the loss) and restore (it) to *the owner of the goods*"). In short, even the ASA's citation of the Code of Hammurabi—an invocation more characteristic of archeologists than anesthesiologists—does not support its theory but instead underscores that, under venerable bailment law, third parties like Plaintiffs have no right to assert claims over property they do not own. *See, e.g., Wicklund v. North Star Timber Co.*, 205 Minn. 595 (1939) ("A bailor . . . may sue for injuries to his revisionary interest in **his** property held under bailment" (emphasis added)).

Neither the ASA nor the Provider Plaintiffs suggest that the Provider Plaintiffs owned the data allegedly impacted in the Cyberattack. Nor could they do so. Rather, the "Private Information" Plaintiffs cite is the property of the individual patients, and therefore any duty Defendants owed as bailees—even if such a duty existed in the cyberattack context, which it does not—would be owed to the individuals whose information was impacted, not to the Provider Plaintiffs. The ASA's position thus suffers from the same defect as the Provider Plaintiffs' Opposition to the Motion to Dismiss: it does not allege that Defendants owed a duty to the Provider Plaintiffs (as opposed to, at best, the individual patients). *See* Mot. to Dismiss at 7, Def's Reply In Supp. of Mot. to Dismiss at 2-5; Order at 11-12, *EZ Mart 1, LLC. v. Colonial Pipeline Co.*, No. 1:21-cv-02522-MHC (N.D. Ga.

8

Jul. 8, 2022), Dkt. No. 34 (duty to protect personal data did not arise where the impacted data did not belong to plaintiff).

## CONCLUSION

For the foregoing reasons, the ASA has failed to establish that bailment principles apply to Plaintiffs' case, and their novel theory of duty based on these principles falls flat. Even in spite of the ASA's last-minute effort to save Plaintiffs' negligence claim, this claim should be dismissed.

Dated: July 31, 2025

/s/ *Allison M. Ryan*

Allison M. Ryan
Alicia J. Paller (MN No. 0397780)
Joseph J. Cavanaugh
**HOGAN LOVELLS US LLP**
555 13th Street NW
Washington, D.C. 20004
T. (202) 637-5600
F. (202) 637-5910
allison.holt-ryan@hoganlovells.com
alicia.paller@hoganlovells.com
joe.cavanaugh@hoganlovells.com

Michael M. Maddigan
Vassi Iliadis
**HOGAN LOVELLS US LLP**
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
T. (310) 785 4600
F. (310) 785-4601
Michael.maddigan@hoganlovells.com
vassi.iliadis@hoganlovells.com

Peter Walsh (MN No. 0388672)

**HOGAN LOVELLS US LLP**
80 South Eighth Street, Suite 1225
Minneapolis, MN 55402
T. (612) 402-3017
F. (612) 339-5167
peter.walsh@hoganlovells.com

*Counsel for Defendants*