**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| IN RE: CHANGE HEALTHCARE, INC. CUSTOMER DATA SECURITY BREACH LITIGATION<br><br>*This Document Relates to*<br>*Case No. 25-cv-3213 DWF/DJF*<br><br>―――<br><br>This Document Relates to:<br><br>NOMI HEALTH, INC., a corporation,<br>　　　Plaintiff,<br>vs.<br>CHC HEALTHCARE SOLUTIONS, LLC;<br>CHC HEALTHCARE TECHNOLOGY<br>ENABLED SERVICES, LLC;<br>UNITEDHEALTH GROUP<br>INCORPORATED; OPTUM, INC.; and<br>OPTUMINSIGHT, INC.,<br>　　　Defendants. | Case No. 24-md-3108 (DWF/DJF)<br><br>**PLAINTIFF NOMI HEALTH, INC'S MEMORANDUM OF LAW IN SUPPORT OF RENEWED MOTION TO REMAND** |

**INTRODUCTION**

There is no federal subject matter jurisdiction over Nomi's claims. Plaintiff Nomi Health, Inc. ("Nomi") filed a complaint in Georgia state court against the Defendants, asserting breach of contract and related state law claims. The gravamen of Nomi's complaint is that Defendant Change[1] failed to perform claims-processing services *for Nomi*—as required by the parties' contract—and that it and the remaining Defendants violated a number of Georgia state laws through their unfair and fraudulent business practices.

In an effort to move this case to federal jurisdiction, the Removing Defendants[2] distort Nomi's Complaint and instead focus on the acts of an *unnamed affiliate* of the Removing Defendants relating to the administration of the federal government's Health Resources and Services Administration ("HRSA") COVID-19 Uninsured Program ("UIP"). *See* Notice of Removal (Dkt. 1) ("Notice").[3] According to the Removing Defendants, this somehow alters Nomi's Change- and Defendant-specific claims and provides a hook for federal jurisdiction because, *according to the Removing Defendants*, Nomi's claims arguably implicate HRSA UIP. Defendants' analysis, however, is wrong for several reasons and constitutes a plainly improper invocation of federal officer removal.

---

[1]   CHC Healthcare Solutions, LLC, CHC Healthcare Technology Enabled Services, LLC (collectively "Change").

[2]   UnitedHealth Group, Inc. ("UHG"), Optum, Inc. ("Optum"), or OptumInsight, Inc. ("OptumInsight") (collectively "Removing Defendants").

[3]   All docket references refer to Case No. 25-cv-03213.

*First*, the Removing Defendants cannot establish that *they* acted under the direction of a federal officer. The Removing Defendants are not parties to any federal contract, much less one that relates to Nomi's allegations. Rather, the contracts referenced in the Notice—attached to the Wood Declaration as **Exhibit A**—are between the U.S. government and "United Healthcare Services, Inc." ("UHC")—a non-party to this litigation. In addition, the Removing Defendants repeatedly admit that the work performed in connection with the government contracts was undertaken *not by them*, but by certain unnamed "subsidiaries" of UHC, including non-parties "Optum Bank and Optum Pay." *See* Notice ¶¶ 12, 14, 16-17 (explaining that any HRSA UIP-related work was done "through various subsidiaries" or "through their subsidiaries").[4] Having conceded that they are not signatories to the cited government contracts at issue, nor the parties that performed any of the actual "work," the Removing Defendants cannot plausibly claim to have been delegated legal authority from the federal government. That is, the Removing Defendants must prove that *they*—and not their affiliates or corporate cousins—acted under federal direction for the removal statute to apply.

*Second*, the Notice fails to establish any causal connection between Nomi's claims and UHC's federal relationship with HRSA. As apparent from the substance of its

---

[4] The HRSA UIP was implemented by the HRSA (a division of the Department of Health and Human Services) to provide reimbursement to providers for COVID-19 testing claims during the COVID-19 pandemic. *COVID-19 Claims Reimbursement to Health Care Providers and Facilities for Testing, Treatment, and Vaccine Administration for the Uninsured*, Health Res. & Servs. Admin. (last reviewed Sept. 2025), https://www.hrsa.gov/provider-relief/about/covid-uninsured-claim.

Complaint (Notice Ex. A, Dkt. 1-1 ("Compl.")), Nomi's claims do not relate to the administration of the HRSA UIP.  They *arise solely from Defendants' failures as Nomi's private service provider*.  Specifically, Nomi contracted with Change to handle Nomi's claim submissions to its payors.  It alleges that Defendants failed catastrophically in these endeavors—submitting claims to the wrong payors, improperly coding tens of thousands of claims, failing to follow up on denied claims, withholding millions of required records, and maintaining woefully inadequate security systems which led to a devastating data breach.  *See e.g.* Compl. ¶¶ 36-41.  The Complaint emphasizes that Defendants' breaches occurred because Change was inept and negligent in performing its private contractual obligations *to Nomi*.  *See id.* ¶¶ 1-4.  It does not allege that Defendants failed in their administration of the HSRA UIP.  *See e.g. id.* ¶¶ 42-53 (contending that Defendants failed to submit HRSA claims *at all*, not that they somehow failed to administer the HRSA program).

*Third*, and notwithstanding the failures previously identified, the Removing Defendants lack any colorable federal defense to Nomi's claims.  The Notice vaguely alludes to a government contractor defense, but this defense applies only where the government approved *precise specifications or instructions*.  As noted above, the Removing Defendants did not receive <u>any</u> instructions to act on Nomi's behalf.

Because the Removing Defendants' Notice fails to establish the requirements for federal officer removal, this Court lacks subject matter jurisdiction and must remand this case back to state court.[5]

## I.    STATEMENT OF FACTS

### A.    The Parties and Contracts

Founded in 2019, Nomi is a healthcare provider that grew rapidly during the COVID-19 pandemic. *See id.* ¶¶ 15-16. As Nomi expanded, it needed a comprehensive revenue cycle management ("RCM") provider to process claims on its behalf. *Id.* ¶ 17.

---

[5]  As required by the Court's rulings, Nomi's counsel conferred with Lead Counsel about the filing of this Motion and agreed to note their position. Lead Counsel stated they believe this Motion is "premature" and that now is "not the appropriate time for the court to consider remand motions." Lead Counsel, however, has never explained what case law, Federal Rule, or typical MDL practice would warrant waiting indefinitely to resolve a Motion to Remand based on lack of subject matter jurisdiction. In fact, such a position is contrary to law, Rule, and typical practice.

Subject matter jurisdiction is a "threshold matter" that comes before all other questions, including the merits of the case. *United Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998); *see* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Accordingly, the "requirement that jurisdiction be established" first or "as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." *Id.* (internal citation omitted).

One member of Lead Counsel, Mr. Gustafson, recently demonstrated this concept in action. He represented state court plaintiffs that had been removed to this Court based on an improper assertion of federal officer removal—all with the intent of transferring those cases to a federal MDL in the Northern District of Florida. Mr. Gustafson and his colleagues successfully obtained remand to state court shortly after the cases were removed, in a decision that was subsequently affirmed by the Eight Circuit. *See Graves v. 3M Co.*, 447 F. Supp. 3d 908, 910 (D. Minn. 2020), *aff'd*, 17 F.4th 764 (8th Cir. 2021) (granting a motion to remand from the MDL back to state court because defendants had failed to establish proper removal under the federal officers removal statute). Neither he nor the rest of Lead Counsel have explained why a different procedure should apply here.

Change represented itself as an industry-leading, full-service RCM provider capable of properly coding, processing, and following up on Nomi's claims. *Id.* ¶ 19. Based on these representations, Nomi entered into a contractual relationship with Change.[6] *Id.* ¶¶ 20-23.

The Removing Defendants—UHG, Optum, and OptumInsight—are affiliates of Change. *Id.* ¶ 1. UHG acquired Change through its Optum subsidiary in October 2022. *Id.*[7] After the acquisition, these entities increasingly controlled Change's operations and assumed responsibilities under Nomi's contracts. *Id.*

**B.    Defendants' Comprehensive Failures Across All Payors**

From the beginning of the parties' relationship, Change failed to live up to its contractual obligations to Nomi. *See e.g., id.* ¶¶ 36-53. Change's failures were systemic and affected all aspects of the RCM services it was supposed to provide across all payor types, as demonstrated by the following examples:

---

[6]   These contracts—attached to the Wood Declaration as **Exhibit B**—include: a Master Relationship Agreement ("MRA"), dated December 1, 2020; a Solution Order to the MRA, dated December 1, 2020; a Second Solution Order to the MRA, dated January 8, 2021; a First Amendment to the MRA and Solution Order, dated March 24, 2022; and a Second Amendment to the Solution Order, dated May 16, 2022 (collectively, the "Contracts").

[7]   Optum has been a subsidiary of UHG since 2011. Compl. ¶ 85. Nomi's Complaint alleges that UHG and Optum have operated, managed, controlled, and otherwise acted for and on behalf of Change since the Optum-Change merger at all times relevant to the Complaint. *See e.g., id.* ¶¶ 1, 52, 129.

- **Wrong Payor Submissions:** Change frequently submitted claims to the wrong entities—sending claims meant for one insurer to unrelated third parties, some of which were not payors at all. *Id.* ¶ 41.

- **Improper Coding:** Change improperly coded tens of thousands of commercial insurance claims, causing rejections and lost revenue. *Id.* ¶¶ 44-49.

- **Failure to Submit Claims:** Change failed to submit hundreds of thousands of claims to multiple payors, including commercial insurers and Medicaid. *Id.* ¶¶ 50-52.

- **Follow-Up Failures:** Change failed to follow up on thousands of denied claims across all payors. When Change did submit appeals, they were grossly deficient—omitting billing codes, failing to identify the appeal's purpose, and containing factually incorrect data. *Id.* ¶ 41.

- **Record-Keeping Failures:** Change failed to provide Nomi with several million required 835 and 837 billing forms across all payors. *Id.* ¶¶ 61-66.

- **Repository Monitoring Failures:** Change failed to monitor digital repositories required for Medicaid compliance, resulting in thousands of dollars in damages and jeopardizing Nomi's state license. *Id.* ¶¶ 54-60.

- **Catastrophic Data Breach:** In February 2024, Change suffered a devastating cyberattack that resulted in complete system failure and loss of Nomi's sensitive data. *Id.* ¶¶ 70-87, 154. Change had failed to implement adequate security measures. *Id.* ¶¶ 73-77, 87.

- **Fraudulent Misrepresentations:** Throughout the relationship, Defendants repeatedly lied to Nomi—claiming they had resolved coding issues, properly resubmitted claims, and provided all records—when in fact they had not. *Id.* ¶¶ 52, 128, 144, 176.

Each of these failures relate solely to Defendants' private obligations to Nomi as its contractual RCM services supplier.

## II.   LEGAL STANDARD

Federal courts are courts of limited jurisdiction. *Minnesota by Ellison v. Am. Petroleum Inst.*, 63 F.4th 703, 708 (8th Cir. 2023), *cert. denied sub nom.*, *Am. Petroleum Inst. v. Minnesota*, 144 S. Ct. 620 (2024). The federal officer removal statute, 28 U.S.C. § 1442, grants a district court independent jurisdictional grounds over cases involving federal officers where that court otherwise would not have had jurisdiction. *Buljic v. Tyson Foods, Inc.*, 22 F.4th 730, 738 (8th Cir. 2021). The party seeking removal bears the burden of establishing federal jurisdiction. *Simmons v. Tyson Foods, Inc.*, No. 21-CV-2036, 2022 WL 4367200, at *7 (N.D. Iowa Aug. 23, 2022). When jurisdiction is challenged, the removing party must prove jurisdiction by a preponderance of the evidence. *See Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 88-89 (2014).

For private actors to invoke federal officer removal under § 1442(a)(1), they must demonstrate:

1.   The private actor is a "person" within the meaning of the statute;

2.   The private actor acted under the direction of a federal officer;

8

3.    There was a causal connection between the defendant's complained-of conduct and official federal authority; and

4.    The private actor has a colorable federal defense.

*Doe v. BJC Health Sys.*, 89 F.4th 1037, 1041 (8th Cir. 2023).  "All four elements must be present.  The absence of any element will defeat removal."  *Id.*  Here, while personhood is undisputed, the Removing Defendants fail to establish the remaining three elements.

## III.    ARGUMENT

### A.    The Removing Defendants Did Not Act Under the Direction of a Federal Officer or Color of Authority

The Removing Defendants assert that they were "acting under" the color of a federal officer based on the attenuated theory that—because certain *other* UHC affiliates were "assist[ing] the federal government" in "administering the HRSA COVID-19 Uninsured Program"—*they* were similarly acting under the direction of the federal government.

It is well established that the phrase "acting under" requires more than mere association by unnamed subsidiaries with a federal program.  *See Watson v. Philip Morris Cos.*, 551 U.S. 142, 151-52 (2007).  Rather, the federal officer removal statute requires that "a private person acts as an assistant to a federal official in helping that official to enforce federal law" or where a private party acts "to assist, or to help carry out, the duties or tasks of the federal superior."  *Id.*  Thus, to apply the federal officer removal statute, a party must show actual "subjection, guidance, or control" by the federal government ***over the specific acts at issue***.  *Id.* at 151; *Buljic v. Tyson Foods, Inc.*, 22 F.4th 730, 738-42 (8th Cir. 2021) (affirming district court's decision to remand cases where defendant failed to show it was

performing basic governmental task or operating pursuant to federal directive). After all, the overarching purpose of the federal officer removal statute "is to protect the Federal Government from [] interference with its operations." *See Watson*, 551 U.S. at 150.

For example, in *Doe v. BJC Health Sys.*, the plaintiffs sued the defendant in state court in connection with the defendant's operation of an online portal through which patients could access records and communicate with medical staff. 89 F.4th 1037, 1040 (8th Cir. 2023). The defendant received "incentive payments" from the Department of Health and Human Services ("HHS") pursuant to the Health Information Technology for Economic and Clinical Health ("HITECH") Act for creating and operating the portal. *See id.* HITECH tasked an office within HHS "with the development of a nationwide health information technology infrastructure that allows for the electronic use and exchange of information." *Id.* The plaintiffs asserted that the defendant violated medical privacy rights because when patients visited the portal, the defendant shared their personal information with third parties. *See id.* at 1041. Relying on the federal officer removal statute, the defendant removed the case to federal court arguing that it was acting under HHS's authority in creating and operating the portal that was the subject of the plaintiffs' lawsuit. *See id.*

The Eighth Circuit rejected the defendant's argument, noting that the "common analytical thread running through [federal case law] is some basic governmental task" that involves "delegation of legal authority" from a federal entity. *Id.* at 1043. The "classic example" of such is a "government contractor," but also includes parties that perform "a job that the government would otherwise have to perform." *Id.* at 1044 (citing *Watson*,

551 U.S. at 153).  The court concluded that "[a]part from being subsidized by HHS, the portal had nothing to do with the federal government's operations or duties."  *Id.* at 1046.

A similar analysis applies here.  ***First***, the Removing Defendants concede that they are not signatories to the cited government contracts; as such, ***they*** were not given any "legal authority" from HHS.  *See id.* at 1042; *see also Doe v. Cedars-Sinai Health Sys.*, 106 F.4th 907, 914 (9th Cir. 2024) (noting that in order to show a defendant is acting under federal officer, "[s]omething more must be present," including "evidence of any contract, any payment, any employer/employee relationship, or any principal/agent arrangement") (quoting *Watson*, 551 U.S. at 156); *New Mexico, ex rel. Balderas v. Monsanto Co.*, 454 F. Supp. 3d 1132, 1140 (D.N.M. 2020) (rejecting federal officer basis for jurisdiction where defendant did not operate under direct government contract).

***Second***, the Removing Defendants concede that it was not *Defendants* who were administering the HRSA UIP, but instead, certain unnamed affiliates of UHC.  *See* Notice ¶¶ 12, 14, 16-17 (noting that all HRSA-related work was performed "***through various subsidiaries***" or "***through their subsidiaries***") (emphasis added).  The Removing Defendants must prove that ***they***—not their affiliates, subsidiaries, or corporate cousins— acted under federal direction.  *See e.g. Brokaw v. Boeing Co.*, 137 F. Supp. 3d 1082, 1097 (N.D. Ill. 2015) (finding fact that private cargo operator's affiliate had contract with United States government to transport military cargo on airplane did not create casual nexus required for operator to invoke federal officer jurisdiction as basis of removal of negligence and wrongful death action).

*Third*, the federal government did not delegate any specific authority to the Removing Defendants. The Supreme Court in *Watson* emphasized that federal officer jurisdiction requires actual "delegation of legal authority" from the government to the private actor. 551 U.S. at 156-57 ("[N]either Congress nor federal agencies normally delegate legal authority to private entities without saying that they are doing so."). The Notice points to no such delegation. Even if operating the HRSA UIP portal qualified as "acting under" federal authority, the Removing Defendants have not shown that they were the entities delegated any responsibilities to perform under federal authority. *See id.*

In sum, the Removing Defendants offer no evidence that *they* provided assistance related to a "basic governmental task," that *they* were acting as an "instrumentality of the United States," or that Nomi "ever believed [it was] dealing with an entity acting in place of the federal government." *See Doe*, 89 F.4th at 1046 (citation omitted).[8] Remand is appropriate on this basis alone.

---

[8] Rather than acting under a federal officer, the Removing Defendants were—at best— advancing *their own private commercial interests*. *See id.* at 1045-47 (holding that a removing party is not acting on behalf of the government when it is advancing its own interests); *see also Crouch v. Saint Agnes Med. Ctr.*, No. 1:22-cv-01527, 2023 WL 3007408, at *5 (E.D. Cal. Apr. 19, 2023) ("If anything, Defendant's mutually beneficial relationship with the Government shows that it was acting as a private party *to advance its own interests* rather than 'assisting' the Government in performing a basic duty.") (emphasis added).

**B.   No Causal Connection Exists Between Nomi's Claims and UHC's Federal Relationship to Administer HRSA UIP**

The Removing Defendants also fail to establish a causal connection between their purported activities on behalf of the federal government and the source of liability for Nomi's claims.

The causal connection required by 28 U.S.C. § 1442(a)(1) demands that the *source* of liability at issue relate to the defendants' activities taken under federal authority. *See Caver v. Cent. Ala. Elec. Coop.*, 845 F.3d 1135, 1144 (11th Cir. 2017) (using a "causal connection" standard that is identical to the "relates to" standard described by the other circuits); *Minnesota by Ellison v. Am. Petroleum Inst.*, 63 F.4th 703, 716 (8th Cir. 2023), *cert. denied sub nom.*, *Am. Petroleum Inst. v. Minnesota*, 144 S. Ct. 620 (2024) (denying removal under § 1442 because relationship between defendants' claims and any federal authority over defendants' fossil fuel production and sale was too tenuous); *Mayor and City Council of Balt. v. BP P.L.C.*, 31 F.4th 178, 233–34 (4th Cir. 2022) (same).

In assessing causation, courts look to the "gravamen" or "heart" of the plaintiff's claims to see if it is tied to actions taken under federal authority. *State v. Meadows*, 88 F.4th 1331, 1344-45 (11th Cir. 2023). Defendants must be "specific and positive" in showing the "charged conduct was confined to [their] acts" under federal authority. *Id.* at 1348. In *Meadows*, for instance, former White House Chief of Staff Mark Meadows sought removal of Georgia state criminal charges. The Eleventh Circuit held that even though some charged conduct involved federal duties, removal failed because "the 'gravamen' of

13

Georgia's case and the 'heavy majority' of the overt acts were **not connected with the performance of Meadow's official duties**." *Id.* at 1337, 1348-50 (emphasis added).

Here, there is no causal connection between (a) the *unnamed affiliates*' purported administration of the HRSA UIP and (b) Nomi's claims that the Defendants: (1) miscoded tens of thousands of commercial claims as Nomi's RCM provider (Compl. ¶¶ 44-49); (2) systematically submitted claims to the wrong entity as Nomi's RCM provider (*id.* ¶ 41); (3) failed to monitor repositories as Nomi's RCM provider (*id.* ¶¶ 54-60); (4) failed to employ proper cybersecurity as Nomi's RCM provider (*id.* ¶¶ 70-124); (5) fraudulently concealed their wrongdoings as Nomi's RCM provider (*id.* ¶¶ 52, 128, 144, 176); and (6) withheld required billing forms from Nomi as Nomi's RCM provider (*id.* ¶¶ 61-66).

The simple fact that Change failed to properly submit claims as Nomi's RCM provider—including **some** failures to submit claims through the HRSA UIP—does not dictate a different result. Nomi does not allege that the unnamed affiliates of UHC harmed Nomi by failing to administer that program properly. *See id.* ¶ 43 (alleging that—like the others—Change failed to submit these claims **at all**).

Because there is no causal nexus between administration of the HRSA UIP by UHC unnamed affiliates and the claims asserted in Nomi's Complaint, federal officer removal fails here.[9]

---

[9]  For example, the District of Nevada recently confronted a nearly identical removal attempt by these same Defendants. *Nevada v. Optum, Inc.*, No. 2:23-cv-00493, 2025 WL 947041 (D. Nev. Mar. 30, 2025). In that case, Nevada sued Optum, OptumInsight, and UHG for opioid-related harms. *Id.* at *2-3. Defendants removed under § 1442, arguing their work for federal healthcare programs created federal officer status. *Id.* at *1, *7. The

C.     **Defendants Lack a Colorable Federal Defense**

Finally, federal officer removal requires a "colorable federal defense" to Nomi's *claims*, not to a subset of requested relief. *See Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 297 (5th Cir. 2020) (explaining that a defense is "colorable" if it is a "plausible" defense to the asserted claims). To satisfy this requirement, the Removing Defendants must show that they have a federal "defense" that could absolve them of legal responsibility for the causes of action asserted in Nomi's Complaint. The Removing Defendants suggest they have two possible defenses as "government contractors."

*First*, the Removing Defendants claim they have a government contractor defense because they were "just following orders." Notice ¶ 30. But the government contractor defense applies only where: (1) the government approved reasonably precise specifications; (2) the contractor conformed to those specifications; and (3) the contractor warned the government about known dangers. *See Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988). The Removing Defendants fail to satisfy any of these elements, for many of the same reasons listed above. The government did not provide the Removing

---

court remanded, holding that government contracts "only govern[ed] Defendants' conduct within the purview of the agency plans" and failed to meet the causal nexus requirement. *Id.* at *6. The court emphasized that government contracts did not "***cause*[ ]** Defendants to engage in the alleged harm to Nevada citizens who are not members of [the referenced] federal healthcare plans." *Id.* (emphasis added). The same logic applies here. Even if some Optum entity administered HRSA, that role did not cause Defendants' failures to Nomi. Nomi was not a HRSA participant seeking services from HRSA's administrator. Nomi was a private company whose private RCM vendor failed catastrophically to perform its private contractual duties.

15

Defendants with *any* specifications or instructions to act in the capacity of Nomi's RCM provider.

*Second*, the Removing Defendants claim that the purported government contracts with unnamed UHC affiliates include "confidentiality provisions that prohibit the disclosure of HRSA data except in compliance with the contracts." Notice ¶ 31. Defendants argue they have a colorable defense to Nomi's demand for certain documents—as set forth in its Prayer for Relief—because the government contracts prohibit them from providing Nomi with these documents. This purported defense is frivolous. Nomi's prayer for relief does not demand any confidential *HRSA data*. To the contrary, Nomi seeks access to its *own* data and documents. *See* Compl. at 35 (asking Defendants to "turn over *all patient data* regarding claims submitted by Nomi to CHC for submission"). Moreover, Defendants already provided a subset of these documents to Nomi, but continue to withhold similar records. *See id.* ¶ 66 (noting that Defendants provided Nomi with 4.67 million of the 8.6 million records Nomi requested). If the government contracts at issue truly prohibited Defendants from providing the requested documents, Defendants would not have provided any such documents to Nomi.

Defendants have failed to establish that the government contractor defense is a colorable federal defense to Nomi's claims.

## D.    Policy Considerations Support Remand

At its core, federal officer removal exists to protect federal operations from state interference. *Watson v. Philip Morris Cos.*, 551 U.S. 142, 150 (2007). The statute aims to prevent states from "arrest[ing]" "the operations of the general government" by prosecuting

16

federal officers for carrying out federal duties. *Tennessee v. Davis*, 100 U.S. 257, 263 (1879). Those concerns are absent here: Remand would not interfere with federal operations; HRSA is not a party; and the federal government is not complaining about Defendants' conduct. The only complaining party is Nomi—a private company whose private vendor failed to perform private contractual duties.

Allowing removal would vastly expand federal jurisdiction. It would suggest that any private company with a corporate affiliate who holds *any* relationship with a government program could remove any lawsuit to federal court, even when the lawsuit concerns purely private conduct. This Court should follow the Eighth Circuit's consistent approach: Private actors must show actual delegation of federal authority, federal direction and control, and a causal connection between federal duties and complained-of conduct. Removing Defendants have shown none of these elements.

## CONCLUSION

Nomi respectfully requests that this Court grant its Motion and immediately remand this action to the Superior Court of Gwinnett County, Georgia.

Date: November 6, 2025             Respectfully submitted,

*/s/ Stephen Wood*

*(Admitted pro hac vice)*
*Attorneys for Plaintiff Nomi Health, Inc.*

Stephen Wood
Alex Allred
**QUINN EMANUEL URQUHART**
**& SULLIVAN, LLP**
2755 E. Cottonwood Parkway, Suite 520
Salt Lake City, Utah 84121
stephenwood@quinnemanuel.com
alexallred@quinnemanuel.com
Telephone: (801) 515-7300
Facsimile: (801) 515-7400

Robin L. McGrath
Pranav Lokin
**QUINN EMANUEL URQUHART**
**& SULLIVAN, LLP**
1200 Abernathy Road NE
Building 600, Suite 1500
Atlanta, GA 30328
robinmcgrath@quinnemanuel.com
pranavlokin@quinnemanuel.com
Telephone: (770) 336-8733
Facsimile: (404) 681-8290