**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| IN RE: CHANGE HEALTHCARE, INC. CUSTOMER DATA SECURITY BREACH LITIGATION | Case No. 24-md-3108 (DWF/DJF) |
| This Document Relates to:<br><br>NOMI HEALTH, INC.,<br><br>Plaintiff,<br>v.<br><br>CHANGE HEALTHCARE SOLUTIONS, LLC; CHANGE HEALTHCARE TECHNOLOGY ENABLED SERVICES, LLC; UNITEDHEALTH GROUP INCORPORATED; OPTUM, INC.; OPTUMINSIGHT, INC.,<br><br>Defendants. | **DEFENDANTS' PROCEDURAL OPPOSITION TO PLAINTIFF NOMI HEALTH, INC.'S RENEWED MOTION TO REMAND** |

Defendants[1] (collectively "Defendants") oppose adjudication of Plaintiff Nomi Health, Inc.'s ("Nomi") Renewed Motion to Remand ("Remand Motion") at this time, and respectfully request that the Court hold the decision on the Remand Motion in abeyance until the close of pretrial proceedings. Plaintiff's action (the "*Nomi* Action") and the circumstances its Remand Motion present are not unique, and deciding Nomi's improperly filed Remand Motion at this time would contradict the Court's prior guidance on jurisdictional issues in this multidistrict litigation, contravene the Court's existing pretrial orders, and frustrate the efficiencies to be gained by the Change MDL.

## I. **PROCEDURAL BACKGROUND**

Nomi filed its case against Defendants on February 21, 2025, in the Superior Court of Gwinnett County, Georgia. Compl., *Nomi Health, Inc. v. Change Healthcare Solutions, LLC, et al.*, No. 25-A-01576-8, Dkt. No. 1. Defendants removed the case to the Northern District of Georgia on March 24. *Nomi* Action, Dkt. No. 1. Defendants filed a notice identifying this action as a potential tag-along action to the Change MDL on March 25. MDL No. 3108, Dkt. No. 319. The Judicial Panel on Multidistrict Litigation (the "JPML") issued CTO-15 on March 26. *Id.*, Dkt. No. 323. Nomi filed a Motion to Vacate CTO-15 on

[1] This Procedural Opposition is brought on behalf of all Defendants named in the Provider Track of this multidistrict litigation: UnitedHealth Group Incorporated, UnitedHealthCare Services, Inc., Optum Insight, Change Healthcare Inc., Change Healthcare Operations, LLC, Change Healthcare Solutions, LLC, Change Healthcare Holdings, Inc., Change Healthcare Technologies, LLC, Change Healthcare Pharmacy Solutions, Inc., Optum, Inc., Optum Financial, Inc., and Optum Bank. The specific parties named as defendants in the *Nomi* action are identified in the case caption to this Procedural Opposition.

April 17, Defendants filed a response in opposition on May 8, and Nomi filed a reply on May 15. *Id.*, Dkt. Nos. 348, 384, 389.

In light of the parties litigating transfer of the *Nomi* Action to the Change MDL, Defendants filed a motion in the Northern District of Georgia to stay all deadlines and proceedings in the *Nomi* Action until the JPML's final transfer decision. Dkt. No. 7. On April 3, Nomi filed an opposition to the stay motion and a motion to remand the *Nomi* Action back to the Superior Court of Gwinnett County, Georgia. *Id.*, Dkt. Nos. 9, 10. On April 4, Defendants filed a reply to the motion to stay. *Id.*, Dkt. No. 12.

On April 16, the Northern District of Georgia stayed all deadlines pending its ruling on Defendants' motion to stay, but ordered the parties to complete briefing on Nomi's motion to remand. Accordingly, Defendants filed their opposition to the motion to remand on April 23, Dkt. No. 14, and Nomi filed a reply on April 28. On April 30, the Northern District of Georgia granted Defendants' motion and stayed all deadlines and proceedings until further ordered by the court. *Id.*, ECF No 17. Although Nomi's motion for remand was fully briefed as of April 28, the court *did not* issue an order regarding remand, despite the motion pending before it for more than three month prior to transfer to the MDL.

On August 7, 2025, the JPML issued an order to transfer the *Nomi* Action to the District of Minnesota because it mirrors over ninety cases related to the cyberattack against Change that have been consolidated into this multidistrict litigation matter (the "Change MDL"), as the *Nomi* Action alleges claims and harms that have a substantially high degree of factual and legal overlap with claims raised in other actions that healthcare provider plaintiffs have brought in the Change MDL. MDL No. 3108, Dkt. No. 440 at 1-2 (citing

Compl., *Nomi* Action, ¶¶ 70-124, 128-29, 134-36, 155-57, 161-62, 172-83). Accordingly, the *Nomi* Action was transferred to the Change MDL and terminated in the Northern District of Georgia on August 12.

Following transfer, Nomi filed a notice with this Court on September 19, requesting that it rule on the motion to remand pending in the Northern District of Georgia. *See In re: Change Healthcare, Inc. Customer Data Security Breach Litigation*, No. 0:25-cv-3213-DWF-DJF, Dkt. No. 434. This Court terminated that request on September 23, *see id.*, Dkt. No. 435, noting that motions pending upon removal or transfer are automatically terminated and that parties must refile motions consistent with the local rules in order to be considered by this Court. On November 6, Nomi filed the Remand Motion before the MDL Court. *Id.*, Dkt. No. 447. Like Nomi's September 19 request, the Remand Motion noted that Nomi conferred with MDL Plaintiffs Lead Counsel regarding its motion, but that MDL Plaintiffs Lead Counsel believed the motion was premature. *See id.* at 5, n.5. On November 21, the MDL Court ordered that MDL Plaintiffs Lead Counsel and Defendants file by December 8 any briefing to identify procedural implications of the Remand Motion. *Id.*, Dkt. No. 466. Defendants filed an opposition on the merits of Plaintiff's Remand Motion on December 1. *Id.*, Dkt. No. 469.

## II. <u>ARGUMENT</u>

Regardless of whether Nomi's Remand Motion is ultimately granted or denied, hearing and adjudicating that decision now likely would encourage other plaintiffs to file motions that seek improper relief, or to otherwise progress ahead of the MDL schedule in a way that compromises coordination and efficiency. Nomi's Remand Motion should

therefore be held in abeyance until the close of pretrial proceedings because (i) holding this decision in abeyance is consistent with this Court's prior treatment of jurisdictional issues; (ii) Nomi's filing contravened this Court's pretrial orders governing the orderly proceedings of this MDL; and (iii) postponing resolution of motions like this one would better align with the Change MDL's purpose of promoting the "convenience of parties and witnesses" and the "just and efficient conduct of such actions." 28 U.S.C § 1407(a).

### A. This Court has Previously Determined that Transferor Courts are the Proper Venue for Jurisdictional Issues.

Holding Nomi's Remand Motion in abeyance is consistent with this Court's prior treatment of jurisdictional issues in this matter. Indeed, following Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. No. 250), this Court previously determined that the Motion to Dismiss for Lack of Personal Jurisdiction would be "held in abeyance while pretrial proceedings are underway in the MDL" because "[j]urisdictional issues are for the transferor court to address." Dkt. No. 418. The rationale of that decision applies with equal force to Nomi's Remand Motion. Should Nomi continue to desire to file a remand motion, it can do so at the appropriate time after the matter is transferred back to the Northern District of Georgia following the conclusion of pretrial proceedings. This Court's decision to hold a decision on the Remand Motion in abeyance therefore preserves Nomi's substantive rights, and aligns with this Court's approach to analogous disputes thus far.

### B. Nomi's Improperly Filed Remand Motion Violates the Change MDL Pretrial Orders and Thereby Invites Similarly Unsanctioned Filings.

In addition to aligning with the Court's prior treatment of jurisdictional issues, holding the decision on Nomi's Remand Motion in abeyance would also reinforce the Court's pretrial orders, which govern the practice and procedure of actions transferred to this Court for pretrial proceedings in the Change MDL. *See, e.g.,*, Pretrial Order No. 1, Dkt. No. 54 ("PTO-1"). Such reinforcement would prevent strategic filings from other plaintiffs' counsel and signal to all stakeholders that the Change MDL continues to move apace.

One of the procedures contained in this Court's pretrial orders involves the MDL Plaintiffs Lead Counsel coordinating with other counsel, including Nomi's counsel, to "[p]romote the efficient conduct of this litigation" and to "avoid unnecessary duplication," "unproductive efforts," "inefficiency, and inconvenience to the Court, the parties, counsel, and witnesses." Pretrial Order No. 3, Dkt. No. 83 ("PTO-3"), at 7-8. To effectuate those goals, the Court instructed—without qualification—that "[n]o counsel shall file any pleadings, motions, or other documents with the Court, or communicate with Defendant's counsel without approval of Overall Lead Counsel." *Id.* at 7. Although Nomi contacted MDL Plaintiffs Lead Counsel before filing this Remand Motion in the Change MDL, MDL Plaintiffs Lead Counsel stated their position that this Remand Motion is "premature" and not appropriate at this time. Dkt. No. 447 at 5 n.5. Nomi's election to file the Remand Motion over the objection of MDL Plaintiffs Lead Counsel fails to comport with both the spirit and the letter of PTO-3.

Nomi's refusal to abide by the Court's pretrial orders by coordinating with, and receiving the approval of, MDL Plaintiffs Lead Counsel prior to submitting its Remand Motion will generate inefficiencies for the parties, witnesses, and the Court. The *Nomi* Action is not unique in its capacity to raise standalone issues for this Court to decide. Although Nomi had a pending motion in the transferor court, it is unlikely to be the last case to present that scenario. Of the dozens of cases related to the Cyberattack that were filed in state court, Defendants have removed ***sixteen*** cases to federal court. Of these, fourteen have been transferred to the Change MDL, while two are pending the JPML's decision on transfer to the Change MDL—including one involving the same Plaintiffs' firm, as described in more detail below.

In the absence of procedural safeguards, such as this Court's existing requirement that MDL Plaintiffs Lead Counsel approve the filing of any pleadings, motions, or other documents, various represented or unrepresented parties could soon independently introduce a wave of filings into this Court's otherwise efficiently managed docket. These could include remand motions that leverage Nomi's playbook, but they could also entail preliminary injunction motions, discovery motions, and any other miscellaneous filings. And citing Nomi's Remand Motion, these parties likewise could seek immediate adjudication of their purported issues, risking the current efficiencies in the Change MDL.

Beyond this Court's docket, parties elsewhere will likewise cite Nomi's improper filing as an example for why other courts should steer clear of coordinating related actions with the Change MDL. These concerns are not hypothetical—they have already manifested themselves since Nomi filed its Remand Motion. For example, Nomi's counsel,

representing a different Cyberattack plaintiff in Utah state court, recently argued against that state court's entrance of the Change MDL Coordination Order, citing Nomi's improper filing in the Change MDL as purported justification for why the Utah state court should entirely disregard coordination with the MDL in that separate matter. *See, e.g.,* Ex. A, Hr'g Tr. 15:2-21;25:12-13, *AdvancedMD v. Change Healthcare Solutions, LLC, et al.*, No. 50907931 (Utah Distr. Ct., Salt Lake Cnty., Nov. 21, 2025).[2] Enforcing PTO-3's requirements in response to Nomi's filing will therefore mitigate the possibility that other plaintiffs' counsel submit improper filings in the Change MDL, and seek to use those filings as a basis to strategically circumvent coordination in distinct proceedings. Furthermore, State Court Liaison Counsel on the MDL Plaintiffs Leadership Committee are currently litigating matters on behalf of other providers in Tennessee state court, and recently cited the Nomi Remand Motion as a basis to lift the existing stay of discovery in those matters, arguing that the Remand Motion is demonstrative of delays within the Change MDL and why coordination will interfere with those providers' ability to expeditiously prosecute their state cases. *See, e.g.*, *Total Wound Care of Oklahoma, LLC, et al. v. Change Healthcare Inc.,* No. 25C155, Dkt. Nos. 74-76 (Tenn. Cir. Ct., Davidson Cnty., filed Nov. 21, 2025). This is in spite of the Court's PTO-3, which assigned State Court Liaison Counsel to "[a]ssist the Lead Counsel Committee and the Court in promoting

[2] The same law firm represents plaintiffs in other matters, including the Nebraska Attorney General in a related case in which they argued against entry of the Change MDL Coordination Order during a motion to stay hearing. *See, e.g.,* Hr'g Tr. 15:1-11, *State of Nebraska, ex rel. Michael T. Hilgers v. Change Healthcare Inc., et al.*, No. D02CI240004356 (Neb. Distr. Ct., Lancaster Cnty., Apr. 15, 2025)

a just and efficient MDL." PTO-3 at 9. Consequently, holding in abeyance the decision on Nomi's Remand Motion—and any ruling on similar motions filed without the consent of MDL Plaintiffs Lead Counsel—will also promote the efficient management of the Change MDL and its coordination with related actions by signaling to all parties and courts that the Court does not intend to allow parties to gain strategic benefit from their improper filings and tactics.

In the absence of enforcing PTO-3's requirement that Nomi—or any other plaintiff—receive MDL Plaintiffs Lead Counsel's consent prior to submitting a filing in the Change MDL, additional case-specific issues will follow and these interjected briefings will disturb the efficient and prudent resolution of common issues of law and fact in the already complex Change MDL. Permitting Nomi to hurdle past this Court's procedures to prematurely receive a decision on its pending motion will invite the unnecessary inefficiencies that the Court's pretrial orders were designed to prevent, and almost certainly will create additional "ripple effects" as the Change MDL proceeds past the pleadings stage.

### C. Waiting to Decide the Remand Motion Would Promote the Change MDL's Purpose of Promoting Efficiency and Convenience.

Holding a decision on Nomi's Remand Motion is also consistent with the goals of the Change MDL, and any other multidistrict litigation matter. The purpose of a multidistrict litigation is to coordinate or consolidate pretrial proceedings "for the convenience of parties and witnesses" and to "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). Multidistrict litigation matters therefore serve as a

critical mechanism for conserving the resources of parties, counsel, and the judiciary in complex matters such as this one. To best achieve these goals here, adjudication of Nomi's Remand Motion should be held in abeyance until pretrial proceedings conclude and the *Nomi* Action is relegated back to the transferor court.

*First*, holding a decision on this issue in abeyance will promote judicial economy. For instance, to the extent the Court determines that Nomi's Remand Motion implicates certain factual questions, deferring a decision on Nomi's Remand Motion will offer the parties the opportunity to appropriately develop those facts during the course of discovery, alongside any other factual dispute in the Change MDL. Indeed, coordinating efficient management of discovery is a pillar of any multidistrict litigation. *See* 28 U.S.C § 1407(a); Transfer Order, MDL No. 3108, Dkt. 440 at 3 (citing *In re Lipitor Antitrust Litig.*, MDL No. 2332, 2012 WL 4069565, at *1 (J.PM.L. Aug. 3, 2012)).

Furthermore, a temporary stay of this decision mitigates the risk that this Court and the parties will need to expend resources on not only resolving Nomi's improperly filed Remand Motion, but also any follow-on motions filed by other parties that leverage Nomi's procedural playbook to improperly resolve untimely disputes in their own cases. Waiting to decide Nomi's motion will likewise guard against instances in which parties seek to disrupt this Court's efforts to achieve consistency, coordination, and efficiency with related matters. Indeed, Nomi's Remand Motion has already required Defendants to expend resources litigating disputes in other related actions where parties have relied on Nomi's Remand Motion as an attempt to circumvent coordination with the Change MDL more generally. Resolving Nomi's Remand Motion now will embolden other parties to engage

in similar filings, potentially risking the cohesion and coordination that this Court has fostered thus far in the Change MDL.

*Second*, Nomi will not be prejudiced by this Court holding in abeyance a decision on the Remand Motion. No other pleadings had been filed in the *Nomi* Action and no discovery had commenced. As the JPML noted, the transferor court did not rule on Plaintiff's original motion for remand, even though it had been fully briefed for three months by the time of the JPML's transfer decision. MDL No. 3108, Dkt. No. 440 at 2. An additional extension will not adversely affect Nomi, particularly because the overlapping issues of law and fact mean that progress in the Change MDL will translate to progress in the *Nomi* Action. Nor will it interfere with Nomi's ability to ultimately litigate this remand issue. If the case is transferred back to the Northern District of Georgia after pretrial proceedings conclude, that transferor court and the parties will be appropriately positioned to promptly resolve Nomi's Remand Motion because it is fully briefed. And they will have the full benefit of discovery and other proceedings from the MDL.

*Third*, Defendants will suffer hardship and inequity if the Court does not stay a decision on the Remand Motion. Each count of Plaintiff's complaint includes allegations about the Cyberattack and will depend, in significant part, on whether and how the Cyberattack disrupted Change's services, for how long, and what workarounds were available during the restoration period. *See* Compl. ¶¶ 70-184. Thus, there is extensive overlap between discovery in the MDL and in the *Nomi* Action, and centralization with the Change MDL reduces the risk of burdensome duplicative discovery and inconsistent pretrial rulings. Transfer Order, MDL No. 3108, Dkt. No. 158, at 2. Nomi alleges that the

Cyberattack impacted tens of millions of individuals, and plaintiffs in the over 140 cases in federal and state court related to the Cyberattack are represented by many separate counsel. Requiring Defendants to re-litigate or re-negotiate with plaintiffs on various issues, including remand—and without Nomi's or any other plaintiff's adherence to this Court's pretrial orders—will cause hardship and inequity for Defendants. Defendants will also be forced to litigate an array of forthcoming issues, both in the Change MDL and in other matters, where parties seek to avoid participation in, or coordination with, the Change MDL, as Defendants have already confronted in the month since Nomi renewed its motion here.

## CONCLUSION

For all of these reasons, the Court should hold in abeyance a decision on Nomi's Remand Motion until the close of pretrial proceedings.

Dated: December 8, 2025

Respectfully submitted,

*/s/ Allison M. Ryan*
Allison M. Ryan
Alicia J. Paller (#0397780)
Joseph J. Cavanaugh
**HOGAN LOVELLS US LLP**
555 13th Street NW
Washington, DC 20004
T. (202) 637-5600
F. (202) 637-5910
allison.holt-ryan@hogbanlovells.com
alicia.paller@hoganlovells.com
joe.cavanaugh@hoganlovells.com

Vassi Iliadis
Michael M. Maddigan
**HOGAN LOVELLS US LLP**
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
T. (310) 785-4727
F. (310) 785-4601
vassi.iliadis@hoganlovells.com
michael.maddigan@hoganlovells.com

Peter H. Walsh (#0388672)
**HOGAN LOVELLS US LLP**
80 South Eighth Street, Suite 1225
Minneapolis, MN 55402
T. (612) 402-3017
F. (612) 339-5167
peter.walsh@hoganlovells.com

***Counsel for Defendants***