**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| **In re: CHANGE HEALTHCARE INC. CUSTOMER DATA SECURITY BREACH LITIGATION** | **MDL No. 0:24-03108 (DWF/DJF)** **JOINT AGENDA AND STATUS REPORT FOR SEPTEMBER 17, 2026 STATUS CONFERENCE** |
| *This Document Relates to All Actions* | |

Pursuant to the Court's Pretrial Order No. 2 (ECF No. 69), Lead Counsel for Plaintiffs and Defendants hereby submit this joint proposed Agenda and Status Report for the Status Conference September 17, 2026, at 10:00 AM.

**[Proposed] Joint Agenda**

1. Status of Depositions
2. Status of Document Production
3. Production of Impacted Data
4. Third Party Discovery
5. Purely Legal Questions for the Court
6. Duplicative Plaintiffs
7. TFAP Repayment and Settlement
8. Plaintiffs' Steering Committees
9. Coordination with State Court Cases

10. Case Management Order – PTO 24

11. Insurance Case Coordination

**Status Report**

The Parties' positions are set forth below.

**The Status of Depositions**

Defendants began taking Individual Track depositions on June 15, 2026, including depositions of named plaintiffs and of individuals who appear as named plaintiffs in the draft amended complaint provided to Defendants' counsel. To date, Individual Track depositions have been scheduled both virtually and in person across the country. Defendants advised that they believe all the remaining Individual Track plaintiff depositions will be virtual.

Defendants began taking Provider Track depositions on September 9, 2026. Defendants intend to take these depositions both virtually and in person, and for those that will occur in person, the Parties are working together to agree on mutually agreeable deposition locations.

The Parties have also exchanged 30(b)(6) deposition notices and responses and objections to those notices. The Parties continue to meet and confer on proposed topics, the identities of individuals to be deposed, and deposition dates and locations. Plaintiffs took an initial 30(b)(6) deposition of Defendant's first witness on August 28, 2026. Defendants have also offered availability for other 30(b)(6) and 30(b)(1) witnesses, and have agreed to focus their upcoming document production for any witnesses at least seven days prior to those depositions. Some initial dates offered for Defendants' depositions needed to be rescheduled because the parties could not determine whether responsive documents had or could be produced. Defendants are

concerned about the Parties' ability to timely complete depositions given these cancelations but are continuing to work productively with Plaintiffs to schedule and complete the noticed depositions promptly. On September 9, 2026, Plaintiffs Overall Lead Counsel accepted all of Defendants' proposed deposition dates and advised Defendants' counsel that Plaintiffs would accept all reasonable dates, including 30(b)(6) deposition dates, as soon as they were offered regardless of location.

**1. Status of Document Production**

The Parties are working to produce discovery expeditiously as available and confer frequently to maintain a cooperative dialogue regarding production status. As Plaintiffs prepare for 30(b)(1) depositions, Plaintiffs need a better understanding of the status and progress of Defendants' document production. During a September 1st meet and confer, Defendants represented that they were substantially complete with document production but could not confirm for how many custodians production was complete nor provide the number of documents left to produce (nor give a sense for the size of the universe of relevant documents left to be search or reviewed). Defendants have produced 17,781 documents covering over 256,000 pages to date. In contrast, the hit report with the agreed-upon search terms reflects a combined total for the relevant time periods of 396,916 and 269,531 hits, respectively. Plaintiffs therefore seek a detailed update regarding custodial and go get productions to assess how quickly 30(b)(1) depositions can proceed as scheduled. As noted above, Defendants are endeavoring to produce documents for 30(b)(1) witnesses seven days in advance of the scheduled depositions.

Provider Plaintiffs have represented that, as of September 1, 2026, 15 of the 29 named Provider Plaintiffs will have substantially completed their production of documents that hit on search terms. Defendants understand that this representation (i) is based on these Provider Plaintiffs review of a statistical sampling of documents that hit on search terms for the applicable document requests, and (ii) is not necessarily inclusive of other known responsive discovery, such as responsive, non-privileged documents that Provider Plaintiffs manually collect. Defendants therefore require additional conferrals to discuss Provider Plaintiffs' "substantial completeness" position. Despite those questions, Defendants are proceeding expeditiously with conducting depositions of Provider Plaintiffs to maintain progress with the discovery schedule. Consistent with that approach, Defendants have proceeded with depositions of Individual Track Plaintiffs, which began three months ago and before the substantial completion deadline, even though key documents have been produced shortly before, during, and after those depositions.

**2. Production of Impacted Data**

On August 7, 2026, this Court entered PTO 37 which approved the Parties' stipulation for protective order regarding the impacted data files and ordered Defendants to produce the information stolen during the cyberattack through processes that Plaintiffs' cybersecurity and forensics expert has opined are safe and protected. It is now four weeks since the Court issued PTO 37, and Defendants have not produced the impacted data. Plaintiffs need this data for depositions and expert work. Defendants have represented during the Parties' meet-and-confers that they are working expeditiously to copy and produce this data as soon as possible, and that

this process is complicated and time-intensive, given the nature and volume of the data involved. In addition, the timing for this production was partly delayed because the vendor that is facilitating a copy of the impacted data received a third-party subpoena in this litigation, requiring the vendor to perform significant legal review of that subpoena and this related process. Plaintiffs seek a date certain soon.

### 3. Third Party Discovery

Plaintiffs began noticing third party subpoenas on July 21, 2026. The subpoenas request documents that the subpoenaed entities are hesitant to produce given that, under the current protective order (ECF No. 271), in-house counsel is permitted to view all documents. Plaintiffs have drafted an amended protective order to create a new confidentiality designation category excluding in-house counsel. Defendants have communicated that this amendment should include certain carveouts for in-house litigation counsel, and the Parties are conferring accordingly. Once the Parties reach agreement on the language, they intend to submit a stipulated amended protective order.

### 4. Purely Legal Questions for the Court

The Parties anticipate that upon this Court's ruling on the pending motion to dismiss, they will be able to continue negotiations on any purely legal questions that can be addressed by the Court to provide early resolution without discovery.

### 5. Duplicative Plaintiffs

The Parties have met and conferred and agreed on a process to handle duplicate parties in

the MDL and in cases filed in various state courts (which Plaintiffs filed for statute of limitations, tolling, and personal jurisdiction reasons). These cases have been removed and tagged for transfer to the MDL. The Parties continue to meet and confer to resolve the issues of duplicative Plaintiffs and have agreed to identify post-MDL remand locations (and parties) for these cases.

**6. TFAP Repayment and Settlement**

Defendants continue to provide updates regarding providers that have signed releases with Defendants.

**7. Plaintiffs' Steering Committees**

The Court previously entered an Order Designating Majority Plaintiffs' Counsel's Request to Appoint Interim Co-Lead Class Counsel, Plaintiffs' Steering Committee, and Designating Defendants' Lead Counsel and Liaison Counsel (Pretrial Order No. 3; ECF No. 83). Individual Plaintiffs' attorneys inadvertently improperly filed notices of appearance, thereby causing amendments to the leadership order previously entered by the Court. The Parties intend to file a joint stipulation amending the leadership order to its original form except for two minor changes. First, Jessica A. Wilkes of Federman & Sherwood has replaced Kennedy M. Brian on the Patient Track Plaintiff Steering Committee, as Ms. Brian has left Federman & Sherwood. Second, the Parties made minor edits to the firm name and individual email addresses of Defendants' counsel following the change in firm name.

**8. Coordination With State Court Cases**

Defendants continue to provide updated lists of pending state court and other federal court

cases stemming from the February 2024 cyberattack. Defendants filed their most recent update on August 25, 2026.

Four state court actions have entered the Court's Coordination Order:

1. *Lincare Holdings Inc. v. UnitedHealth Group Incorporated*, No. 210144594 (Fla. Circ. Ct. Hillsborough Cnty.). The Court entered the Coordination Order on June 17, 2025.
2. *Fairview Health Services v. Change Healthcare Technologies, LLC*, No. 62-CV-25-7116 (Minn. Distr. Ct., Ramsey Cnty.). The Court entered the MDL Coordination Order on February 24, 2026.
3. *State of Nebraska, ex. rel. Michael T. Hilgers v. Change Healthcare Inc., et al.*, No. CI 24-4356 (Neb. Distr. Ct., Lancaster Cnty.). The Court entered the Coordination Order on April 13, 2026.
4. *AdvancedMD, Inc., v. Change Healthcare Solutions, LLC, et al.*, No. 250907931 (Utah Distr. Ct., Salt Lake Cnty.). The Court entered the coordination order on December 2, 2025.

Each state court action above has appointed a Plaintiff Liaison in accordance with paragraph 25 of the Coordination Order (PTO No. 7). Overall Lead Counsel continues to make available the materials required by the Coordination Order and to seek coordination of ongoing and upcoming discovery through the process ordered by the Court. Plaintiffs' state court liaison and Overall Lead Counsel continue to work with the counsel for the coordinated actions to implement the Coordination Order.

Additionally, the court in *Mid-South Imaging & Therapeutics, P.A. v. UnitedHealth Group,*

*Inc., et al.*, No. 24-0723-III (Tenn. Ch. Ct. Davidson Cnty.) instructed the parties to coordinate with the MDL but did not enter the Coordination Order. Defendants have requested that the MDL Court communicate with the Honorable Chancellor I'Ashea L. Myles to coordinate these matters with the MDL proceedings.

The parties in *Eye Care Associates of Morristown, Inc. v. Change Healthcare Inc.*, No. 24-CV-048 (Tenn. Cir. Ct. Hamblen Cnty.) have agreed to enter the Coordination Order but the Order has not yet been entered. The stay in this case was lifted upon issuance of the MDL scheduling order. Defendants are briefing a Motion to Dismiss that was filed on June 22, 2026. The Motion to Dismiss is currently set for a hearing on October 27, 2026.

Negotiations regarding the entry of the Coordination Order are ongoing in the following actions:

1. *Alliance Pathology Consultants, PLLC, et al. v. Change Healthcare Technology Enabled Services LLC, et al.*, No. 2024-L-012135 (Ill. Cir. Ct. Cook Cnty.). Plaintiffs and Defendants intend to jointly file a motion requesting that the Court enter the Coordination Order and respectfully request that the MDL Court communicate with the Honorable Judge Jack J. Hagerty to coordinate this matter with MDL proceedings.
2. *Zing Health Holdings, Inc. v. Change Healthcare Practice Management Solutions, Inc., et al.*, No. 26CV001838 (Ga. Superior Ct. Fulton Cnty.). An Order on the Motion to Dismiss has been entered, and Defendants are negotiating a case management order, including entering the Coordination

Order, with Plaintiffs in this matter.

3. *State of Iowa, ex rel. Brenna Bird v. Change Healthcare Inc., et al.*, No. EQCE092772. The Court denied Defendants' Motion to Dismiss and Motion for Partial Judgment on the Pleadings on August 18, 2026. The parties are currently negotiating whether to request the Court to enter the Coordination Order. Defendants respectfully request that the MDL Court communicate with the Honorable Judge Jason Walke to coordinate this matter with the MDL proceedings.

## 9. Insurance Case Coordination

Pursuant to the Court's order (ECF No. 723), Lead Counsel for Plaintiffs and Defendants (the "Parties") and counsel for the Insurance Track Plaintiffs hereby submit their respective positions regarding the creation of a third track for cases brought by health insurance companies ("Insurance Plaintiffs").[1]

**Parties' Position**

The Parties oppose any creation of a third track for the Insurance Plaintiffs. Creating such a track would create inefficiencies for the Court and Parties; require a new master

[1] The three insurance cases are *Carefirst, Inc., et al. v. Change Healthcare Technologies, LLC, et al., C.A.*, No. 1:25-cv-02399 (D. Md., filed Feb. 21, 2025) (the "*Carefirst* Action"); *Capital District Physicians' Health Plan, Inc., et al. v. Change Healthcare Technologies, LLC*, No. 1:25-cv-00233 (N.D.N.Y., filed Feb. 21, 2025) (the "*Capital District* Action"); *Premera Blue Cross v. Change Healthcare Inc., et al.*, No. 2:25-cv-00497 (W.D. Wash., filed Mar. 20, 2025) (the "*Premera* Action," and collectively with the *Carefirst* Action and *Capital District* Action, the "Insurance Cases"). *Blue Cross Blue Shield of Arizona v. Change Healthcare Practice Management Solutions, Inc., et al.*, was dismissed with prejudice on April 28, 2026. No. 2:25-cv-00550 (D. Az., filed Jan. 13, 2025).

complaint, motion to dismiss, and additional discovery before the current tracks have made sufficient progress; and is unnecessary, particularly because the Insurance Plaintiffs bring claims similar to those in the Provider Track. Insurance Plaintiffs will continue to benefit from and be informed by ongoing discovery and motions practice. In addition, over a hundred cases are stayed in this MDL as the Parties litigate the master complaints. Providing a separate track for the three Insurance Cases could threaten the structure of the MDL more broadly, if other stayed parties seek similar treatment. The Parties respectfully request that Insurance Plaintiffs' request for a third track be denied.

**Other Courts Have Denied Creation of a Separate Track in Similar Circumstances.**

The Judicial Panel of Multidistrict Litigation has entrusted this Court to "employ any number of techniques . . . to manage the litigation," Pretrial Order No. 1, ECF No. 54, and "steer [the] matter on an efficient and prudent course." ECF No. 1 at 3. The Court may exercise its discretion to manage the Insurance Cases within the current system and deny creation of a separate track. *See, e.g., In re: Snowflake, Inc., Data Sec'y Breach Litig.*, No. 2:24-MD-03126, 2025 WL 480397, at *1 (D. Mo. Jan. 24, 2025) (denying creation of a new track to ensure consistency and efficiency); *In re Hill's Pet Nutrition, Inc., Dog Food Prods. Liab. Litig.*, No. 19-CV-02672, 2020 WL 996802, at *8 (D. Kan. Mar. 2, 2020) (denying a new track because it would "likely to create inconsistency, inefficiency, and unnecessary costs by confusing the channels of communication and opening the door to duplicative and/or conflicting litigation efforts, thereby frustrating the purpose of [the] MDL").

It is not to the Parties' or the Court's advantage to create a separate track. Such creation would more likely frustrate the MDL's purpose. Any limited insurer-specific discovery may

be addressed when all parties in currently-stayed MDL cases engage in additional discovery specific to those parties. Granting the Insurance Plaintiffs' request may also encourage other parties to seek new tracks for their purportedly differently-situated claims. Stayed complaints in the MDL include plaintiffs that have argued they are distinct from both tracks (e.g., hospitals), as well as defendants beyond Change Healthcare and corporate affiliates (e.g., third-party provider, pharmacy, and insurance defendants). Potential motions seeking additional new tracks would divert Court and Party resources from litigating the operative claims, which will provide guidance to all parties in the MDL (including Insurance Plaintiffs).

**The Insurance Cases Arise Out of the Same Cyberattack and Overlap with MDL Plaintiffs' Claims in the Existing Provider Track.**

The Court can manage the three Insurance Cases efficiently within the current MDL structure, because they include the same or similar allegations that are being addressed in the Provider Track. The Panel created this MDL to "serve the convenience of the parties and witnesses" and "promote the just and efficient conduct of this litigation," given that the claims "all arise from the same data breach, and all will involve discovery into the circumstances and consequences of that breach." ECF No. 1, at *2. Accordingly, the preeminent purpose of the MDL is to efficiently manage similar lawsuits, and the existing Tracks do just that.

When the Insurance Cases were transferred to this MDL, consolidated complaints had already been filed. Provider Track plaintiffs include clinics, a pharmacy, a pharmacy association, and other healthcare providers (the "Provider Track Plaintiffs"). Master Complaint, ECF No. 407 (D. Minn., July 7, 2025). The Panel transferred a wide range of claims to this MDL, including Provider Track Plaintiffs' alleged injury based on inability to

use Change Healthcare services. *Id.* at *2. The Panel applied this reasoning when transferring the Insurance Cases, because they, like the Provider Track Plaintiffs, "allege that, as a result of the Change Healthcare data breach and the ensuing lockdown of defendants' digital platform, their operations were disrupted and they incurred substantial losses." Transfer Order, MDL No. 3108 (J.P.M.L. June 2, 2025), ECF No. 412 at 4 (transferring *Capital District* Action). The Panel recognized that Insurance Plaintiffs "assert a theory of liability—breach of their contracts with the Change defendants—that is asserted by many MDL plaintiffs." Transfer Order, MDL No. 3108 (J.P.M.L. June 2, 2025), ECF No. 412 at 4. The Panel further affirmed that the Insurance Cases "will involve questions of fact that overlap extensively with the MDL, including how the cyberattack occurred, whether defendants failed to take adequate steps to prevent the attack, the impact of the attack on plaintiffs' operations, and the steps taken by defendants after the attack to restore access to data stored on its digital platform." *Id. See also* Transfer Order, MDL No. 3108 (J.P.M.L. August 7, 2025), ECF No. 440 at 3 (same regarding *Premera* Action); Transfer Order, MDL No. 3108 (J.P.M.L. Dec. 10, 2025), ECF No. 521 at 4 (same regarding *Carefirst* Action). The Provider Track Plaintiffs, like the Insurance Plaintiffs, are pursuing claims for breach of contract, negligence, negligence *per se*, negligent misrepresentation, and violation of state consumer protection acts. With these common issues of law and fact, discovery and motions practice in the Provider Track will inform eventual litigation of the Insurance Cases—just as it will for other stayed MDL cases. Insurance Plaintiffs are not sufficiently different from the Provider Track Plaintiffs to justify a third track at this time.[2]

[2] Indeed, Plaintiffs and the Court previously determined the Provider Track would sufficiently address issues raised by hospitals and pharmacy groups.

**Creation of an Insurance Track at This Time Would Jeopardize the Existing MDL Schedule.**

Discovery is well underway in the existing MDL tracks, and the Court has partially ruled on Defendants' motions to dismiss. ECF. Nos. 483, 484. Additional rulings on the remaining portions of those motions to dismiss are forthcoming. Fact discovery is scheduled to conclude on November 2, and the Parties are working to take and defend over 100 depositions, produce thousands of documents, meet and confer on discovery disputes, brief and argue discovery disputes, and begin expert discovery. The Parties are also coordinating discovery with numerous state court actions, and proposed to Insurance Case counsel entering a similar coordination order to permit them to participate more actively in discovery of Defendants. Insurance Case counsel expressed this was insufficient barring a schedule that included, for example, briefing summary judgment ahead of the existing tracks.

A third track at this time would require the Court and Parties to create a distinct schedule and juggle another consolidated complaint; motion to dismiss briefing and oral argument; discovery requests on Defendants and Insurance Plaintiffs; and additional depositions, meet and confers, and potential discovery disputes. Adding such complexity at this time would burden the Court and the Parties as they continue to spend immense time and energy to effectively and efficiently litigate the existing tracks that will inform adjudication of the Insurance Cases.[3] The purpose of centralizing pretrial proceedings includes "conserv[ing] the resources of the parties, their counsel and the judiciary." *In re Pork Antitrust*

[3] Even if the Insurance Cases remain stayed, the Insurance Plaintiffs will benefit from the discovery taking place.

*Litig.*, No. 18-1776 2021 WL 5310590, at *2 (D. Minn. Nov. 14, 2021). The Insurance Cases do not warrant creating a new, standalone track at this time, which would threaten completion of discovery and ongoing efforts in existing tracks. Maintaining the current dual-track system best meets this MDL's purposes, to benefit all active and stayed parties at this time.

For these reasons, the Insurance Plaintiffs' interests may be properly represented by Overall MDL Lead Counsel in the current two-track structure while minimizing burden to the Court and the Parties. Insurance Plaintiffs' request for a third track should be denied.

**Insurance Counsel's Position**

The Health Insurer Claimants ask the Court to establish a Health Insurer Track, modify the existing stay as necessary to permit those actions to proceed, and direct the parties to submit within thirty days an agreed-upon case-management order. That order should preserve common MDL discovery, permit limited health insurer-specific discovery, set a date for responsive pleadings, and provide a procedure for case-specific dispositive motions when ripe.

This is a modest request. The track would not require a consolidated complaint, merge the actions, duplicate common discovery, or impose one schedule on materially different cases. Rather, it would provide a path for a group that fits neither existing track and that presently has no schedule or other mechanism by which claims can proceed toward adjudication.

**The Health Insurer Actions Do Not Fit Either Existing Plaintiff Track**

The Court organized the MDL around two plaintiff tracks: one for Individuals and one for Providers of healthcare. Each is proceeding through a consolidated class complaint. The

Health Insurer Actions were transferred/filed after the structure was established and fit neither track.

The Health Insurer Actions arise from contracts under which Change provided specific services for insurers. When Change's systems became unavailable following the cyberattack, the Health Insurer Claimants lost services for which they had contracted and incurred substantial expenses associated with replacement vendors, bringing functions in-house, mitigation, and regulatory obligations.

The Health Insurer Actions therefore share part of the factual core, including issues concerning the cyberattack, security measures, shutdown of systems, length and scope of the resulting interruption, and restoration efforts. But the legal consequences of those events for the Health Insurer Claimants depend upon their individual contracts, the services Change agreed to provide, the contractual allocation of risk, and the losses each Health Insurer Claimant sustained.

These are not class-action cases and present no class-certification issues. They likewise do not involve many of the issues unique to the Provider Track. Some Health Insurer Actions may be susceptible to relatively early resolution through dispositive motion practice. A dedicated Health Insurer Track would allow those differences to be addressed without sacrificing coordination.

**Both the Judicial Panel and This Court Have Contemplated a Health Insurer Track**

The Judicial Panel on Multidistrict Litigation expressly addressed this issue when transferring the Health Insurer Actions to this Court. The Panel recognized the insurers' argument that they did not fit within either existing plaintiff track and stated that "the creation

of a third plaintiff track for insurers, if deemed appropriate by the transferee court, should not introduce undue complexity." *In re Change Healthcare Data Breach*, Transfer Order, ECF No. 412, at 4. The Panel further stated that the request for a third insurer track "should be addressed to the transferee court." *Id.* This Court likewise has treated the issue as one for further case management. PTO 29 directed Overall MDL Lead Counsel and Lead Defense Counsel to confer with insurer counsel concerning a potential insurer track, specifically including discovery regarding health insurer contractual relationships, insurer-specific damages, potential burden or prejudice to Defendants, and the effect of a third track on the broader MDL. PTO 29, ECF No. 548, at 2–3. PTO 32 later placed "insurance company complaints and potential for a third track" on the status-conference agenda, and the August 27 Minute Order requested the present submissions.

The Health Insurer Claimants attempted to reach an agreed framework through repeated discussions before seeking relief from the Court.

**The Parties Substantially Agree on Discovery Coordination, but Not on Whether the Health Insurer Actions May Proceed**

At a June meeting, counsel for Change asked the insurers to propose a schedule. The Health Insurer Claimants did so. The proposal preserved centralized control over discovery concerning issues common to the MDL. Health Insurer Claimants' counsel would not propound duplicative common written discovery or re-depose witnesses concerning matters already addressed through MDL discovery. At the same time, the proposal allowed limited discovery concerning matters unique to the Health Insurer Actions, including the Health Insurer Claimants' contracts, direct communications with Change, causation, mitigation,

damages, and insurer-specific defenses.

The proposal also would have set a date by which Defendants would answer or otherwise respond to the complaints in the Health Insurer Actions and established a procedure through which a party could seek permission to present discrete dispositive issues when ripe. That procedure included consultation with MDL plaintiffs' leadership and defense counsel regarding potential overlap with the other tracks, the need for Rule 56(d) discovery, and deadline coordination.

While Change's counterproposal accepted portions of the insurer-specific discovery framework, it proposed that written discovery directed to the insurers begin immediately, that document production proceed promptly, and that insurer depositions occur on the existing MDL timetable.

The principal disagreement, though, is whether the Health Insurer Actions may advance toward adjudication while lengthy discovery – which may be irrelevant to such actions – proceeds. Change proposed no deadline to answer the insurer complaints, reserved the right to assert defenses and counterclaims later, and eliminated the proposed procedure for presenting discrete dispositive issues. Instead, its proposal would require that the parties first discuss answers, Rule 12 motions, and summary judgment only after summary judgment proceedings had concluded in the Individual and Provider Tracks, following class-certification and other class-specific proceedings. Change also proposed no pleading or motion deadline.

Thus, under Change's counterproposal, the Health Insurer Claimants would be required to immediately provide discovery concerning their contracts, damages, insurance

arrangements, and other case-specific matters while Defendants would have no corresponding obligation even to answer the complaints or identify their operative affirmative defenses or counterclaims, and no Health Insurer Action or discrete issue would advance toward adjudication.

The parties then exchanged written positions concerning PTOs 1 and 29. The Health Insurer Claimants noted that neither order requires the particular sequence Change proposed. The exchanges narrowed the disagreement but did not resolve it. The Health Insurer Claimants therefore seek a court-supervised framework. The Health Insurer Claimants do not believe that an indefinite drawn-out arrangement is necessary to preserve MDL coordination.

**Health Insurer Track Is a Conventional Exercise of the Court's MDL Authority**

Section 1407 gives a transferee court broad authority to structure coordinated pretrial proceedings in a manner that promotes the "just and efficient conduct" of the transferred actions. 28 U.S.C. § 1407.

The Judicial Panel has repeatedly recognized that differences among actions can appropriately be addressed through "separate tracks for discovery or motion practice" and that "the degree of consolidation or coordination is a matter soundly dedicated to the discretion of the transferee judge." *In re Digital Advert. Antitrust Litig.*, 555 F. Supp. 3d 1372, 1376, 1378 (J.P.M.L. 2021). A transferee court may group proceedings according to common factual issues while permitting discovery unique to particular parties, actions, or claims to proceed separately and concurrently. *In re Multi-Piece Rim Prods. Liab. Litig.*, 464 F. Supp. 969, 974 (J.P.M.L. 1979).

More recently, in another data-security MDL, the Panel reiterated the transferee

court's "broad discretion" to establish separate discovery or motion tracks to address differences among cases. *In re Snowflake, Inc., Data Sec. Breach Litig.*, 813 F. Supp. 3d 1349, 1351 (J.P.M.L. 2025).

Rule 16.1 likewise expressly contemplates tailored management of multidistrict litigation, including consideration of leadership, discovery, consolidated pleadings, pretrial motions, resolution procedures, and differing categories of parties and claims. The Advisory Committee specifically recognized that an MDL may include substantially different types of claims and offered as an example litigation involving both claims by individuals and claims by third-party payors. Fed. R. Civ. P. 16.1 advisory committee's note.

The Third Circuit has similarly recognized the considerable authority of MDL courts to group plaintiffs "by the nature of the claims brought" and otherwise structure complex litigation fairly and efficiently. *Home Depot USA, Inc. v. Lafarge N. Am., Inc.*, 59 F.4th 55, 67–68 (3d Cir. 2023).

The requested track applies those familiar tools: one coordinated structure for common matters, coupled with case-specific discovery and motion practice when the governing contracts and developed records warrant it. That structure would reduce complexity by replacing ad hoc requests from individual insurer cases with a single liaison and a procedure controlled by the Court.

**The Stay Was Sensible Initially but Should Now Be Modified to Provide Defined Path**

The Court appropriately stayed underlying actions while it organized leadership and developed the Individual and Provider Tracks. The Health Insurer Actions now seeking relief were not part of that initial structure. The later transfers into the MDL present a different

problem: the Health Insurer Actions now have no schedule and no identifiable event that will bring the stay to an end.

The posture of the Health Insurer Actions therefore raises the concern addressed in *Landis v. North American Co.,* 299 U.S. 248, 254–57 (1936). A court has inherent authority to stay proceedings, but that authority requires consideration of the competing interests affected by delay. *Id.* at 254–57. A stay must remain reasonably bounded; it becomes "immoderate" when it lacks reasonable limits in duration and effect. *Id.* at 256–57. The Eleventh Circuit applied those principles in *Marti v. Iberostar Hoteles y Apartamentos S.L.*, explaining that an indefinite stay can leave a plaintiff in "suspended animation" and effectively out of court, with prejudice increasing as each month passes without an opportunity to present the plaintiff's claims. 54 F.4th 641, 647–51 (11th Cir. 2022). Likewise, in *St. Bernard Parish Government v. United States*, the Court of Federal Claims declined to continue an indefinite stay based upon proceedings in which the affected plaintiffs were not parties, emphasizing both their right to have their claims heard and the importance of developing a record while witnesses and evidence remained available. 99 Fed. Cl. 765, 771 (2011).

The same practical concern exists here. The Individual and Provider Tracks will adjudicate important issues concerning the Change cyberattack, but they will not determine the meaning of the Health Insurer Claimants' contracts, whether those contracts were breached, the application of insurer-specific defenses, or the damages recoverable by individual Health Insurer Claimants.

MDL coordination should avoid duplication and promote efficiency. It should not

require an entire category of plaintiffs to await completion of unrelated class certification, merits discovery, and dispositive proceedings in other tracks before Defendants are required to answer their complaints.

**Requested Relief**

The Health Insurer Claimants therefore respectfully request that the Court:

1. Establish a third plaintiff track for the Health Insurer Actions presently pending in, or later transferred to or directly filed into, this MDL;
2. Maintain that track within the existing plaintiff leadership structure, under the supervision of Overall MDL Lead Counsel, with appropriate Health Insurer liaison or subset counsel;
3. Modify the existing stay sufficiently to permit the Health Insurer Actions to proceed pursuant to a Health Insurer Track case-management order; and
4. Direct Overall MDL Lead Counsel, Health Insurer liaison counsel, and Lead Defense Counsel to meet and confer and submit within thirty days either an agreed proposed case-management order or competing proposals addressing the remaining areas of disagreement.

That case-management order should preserve centralized, nonduplicative discovery on common MDL issues while permitting limited health insurer-specific discovery; establish a date for Defendants to answer or otherwise respond to the insurer complaints; and provide a procedure through which a party may seek leave to present any discrete case-specific dispositive issue when ripe, subject to coordination with the existing tracks and any appropriate Rule 56(d) relief.

That flexibility is important. One action may require a developed gross-negligence record because of contractual exculpatory or damages-limitation provisions, while another may present ripe contract-interpretation or liability issues on undisputed facts. Both can proceed within one coordinated track under the Court's control.

For these reasons, the Health Insurer Claimants respectfully request that the Court establish such a Health Insurer Track and direct the parties to submit an appropriate case-management order.

Dated: September 11, 2026

*/s/ Daniel E. Gustafson*
Daniel E. Gustafson (#202241)
**GUSTAFSON GLUEK PLLC**
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
T. (612) 333-8844
dgustafson@gustafsongluek.com
***Overall Lead Counsel for Plaintiffs***

*/s/ Allison M. Ryan*
Allison M. Ryan
Joseph J. Cavanaugh
**HOGAN LOVELLS CADWALADER US LLP**
55 13th Street NW, Columbia Square
Washington, D.C. 20004
T. (202) 637-5872
allison.holt-ryan@hlc.com
joe.cavanaugh@hlc.com

Peter H. Walsh (#0388672)
Alicia J. Paller (#0397780)
**HOGAN LOVELLS CADWALADER US LLP**
80 South Eighth Street, Suite 1225
Minneapolis, MN 55402
T. (612) 402-3017
F. (612) 339-5167
peter.walsh@hlc.com
alicia.paller@hlc.com

Michael M. Maddigan
Vassi Iliadis
**HOGAN LOVELLS CADWALADER US LLP**
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
T. (310) 785-4600
F. (310) 785-4601
michael.maddigan@hlc.com
vassi.iliadis@hlc.com

***Counsel for Defendants***