quinn emanuel trial lawyers | washington, dc
555 13th Street NW, Suite 600, Washington, District of Columbia 20004-1109 | TEL (202) 538-8000 FAX (202) 538-8100

WRITER'S DIRECT DIAL NO.
**(713) 221-7010**

WRITER'S EMAIL ADDRESS
**saraclark@quinnemanuel.com**

November 13, 2026

**VIA ELECTRONIC MAIL**

The Honorable Donovan W. Frank
U.S. District Court for the District of Minnesota
316 North Robert Street
St. Paul, MN 55101

Phone: (651) 848-1290
E-Mail: frank_chambers@mnd.uscourts.gov

The Honorable Dulce J. Foster
U.S. District Court for the District of Minnesota
300 South Fourth Street - Suite 202
Minneapolis, MN 55415

Phone: (612) 664-5540
E-Mail: foster_chambers@mnd.uscourts.gov

Re: *Change Healthcare, Inc. Customer Data Security Breach Litigation*, MDL No. 24-3108 - Coordination of State Court Actions

Dear Judges Frank and Foster,

The State of Nebraska, together with Lincare Holdings Inc. and Lincare Inc. ("Lincare," and collectively with the State of Nebraska, the "Coordinated Parties"), write to supplement our October 9, 2026 letter, Dkt. 757 ("October Letter"). While some progress has been made, several issues in that letter remain unresolved: Defendants' belated document productions, the Coordinated Parties' exclusion from deposition scheduling, and an unrealistic fact discovery deadline.

The Coordinated Parties also write to inform the Court of fresh issues that have compounded the need for the Coordinated Parties' requested relief, particularly an extension of fact discovery: Defendants' privilege abuse and the necessity of additional document custodians. The Coordinated Parties understand that MDL Lead Counsel is attempting to engage Defendants on these issues, but that they are far from resolution and that Court intervention will likely be needed. Moreover, significant time will be required for the additional productions and depositions necessary to cure Defendants' abuses, should the Court grant the likely forthcoming MDL Plaintiffs' discovery motions. This further counsels in favor of an extension to the fact discovery deadline in order to preserve the rights of all parties—including the Coordinated Parties—to effectively obtain and test the evidence in this matter.

*A.* *Document Production*

We previously noted that more than 90% of Defendants' document productions were made after the July 1, 2026 substantial completion date, to the Coordinated Parties' prejudice. Dkt. 757 at 2-3. Since our October Letter, Defendants have more than doubled their total production, providing 359,866 pages over more than 15 productions. These late productions include at least six instances of a deponent's custodial documents being produced mere days before their deposition, and further custodial materials being produced after the depositions.

Defendants' tardy productions are material and concern critical witnesses. For example, Jason Jones served as Change's Vice President of Cyber Threat Management, and Defendants produced key documents concerning his knowledge of Change's deficient cybersecurity staffing and readiness less than 24 hours before his deposition, and because of the delay between production and the Coordinated Parties' receipt of information, the Coordinated Parties were only informed the documents were available to review while Mr. Jones's deposition was occurring. As of November 12, Defendants had produced more than 5,000 custodial documents less than seven days before depositions, and more than 1,300 custodial documents ***after*** depositions. This practice continues to prejudice the Coordinated Parties.

The Coordinated Parties are working with MDL Lead Counsel to address the belated productions and assess the necessity of bringing back witnesses for further depositions. Nevertheless, Defendants' tactics cannot continue in the interim and underscore the necessity of extending the fact discovery deadline so that productions can be made in a timely fashion.

*B.* *Deposition Scheduling*

The Coordinated Parties continue to request an opportunity to provide input on deposition scheduling and to be copied on scheduling emails with Defendants. MDL Lead Counsel has refused the Coordinated Parties' requests, which runs counter to the Coordination Order's requirement that depositions be scheduled at mutually convenient times and places. *See* Dkt. 236 at 2, ¶ 29.

*C.* *Defendants' Improper Privilege Assertions*

Further prejudicing the Coordinated Parties' prosecution of their cases is Defendants' weaponization of privilege claims and the Protective Order to improperly shield from discovery—and, in many cases, privilege logging—vast categories of information concerning the analyses, assessments, and attempted remediation of the breach.

Immediately after the breach, Defendants routed analysis, assessment, and remediation efforts through in-house and outside counsel, a practice Defendants' personnel have referred to as "putting an incident under privilege." This practice of including counsel—*e.g.*, in meetings, in emails, and in retaining outside consultants—to generate "privilege" was explicitly required by Defendants' Standard Operating Procedures for data breaches. Defendants' practice of placing entire incidents, events, or facts "under privilege" is untethered from the legal concepts of attorney-client privilege and protected work product. Nonetheless, Defendants assert "privilege" over practically all materials concerning their employees' and vendors' post-breach investigation and

remediation. The assertion is improper—principally because this work (according to Defendants' own witnesses) would have been performed regardless of the presence of counsel; indeed, much of it was required by government regulations.

Defendants have greatly magnified the harm of this policy by exploiting their proposed and adopted "presumptive privilege" provision in the Protective Order. That provision authorizes Defendants to withhold as presumptively privileged and excuses from privilege logging "[a]ny communication between a Party and its outside counsel or inside [litigation management attorneys and their staff] after [March 1, 2024]." Dkt. 271 § 12(f). Though seemingly innocuous, Defendants have interpreted "outside counsel" and "litigation management attorneys and their staff" with incredible breadth. "Outside counsel" includes the law firms at the center of post-breach fact-finding rather than litigation, such as Alston & Bird. Perhaps more concerning, Defendants have claimed it would be unduly burdensome to even identify the covered "staff" of "litigation management attorneys," belying their claim that they have interpreted the presumptive privilege provision narrowly. Meanwhile, Defendants' weaponization of the Protective Order has denied MDL Plaintiffs and the Coordinated Parties the only tool to test many of Defendants' dubious privilege assertions: a privilege log.

The Coordinated Parties have pressed these privilege issues with MDL Plaintiffs' counsel via the coordination process, but did not receive Defendants' initial privilege logs until August 24. On August 25, September 22, September 24, and September 29, the Coordinated Parties raised concerns with MDL counsel regarding Defendants' mass withholding of documents, the lack of efforts to pursue that issue, and how that issue will invariably affect the fact discovery deadline when relief is finally pursued. Those persistent efforts only yielded fruit when, with MDL counsel's blessing, the State of Nebraska prepared a draft deficiency letter to Defendants for MDL counsel's consideration on October 12. MDL Lead Counsel ultimately sent that letter to Defendants on November 3, more than two months after the Coordinated Parties had identified the issue.

In addition, Defendants' counsel have grossly abused privilege objections at depositions by instructing witnesses not to provide testimony concerning patently discoverable information. These instructions have included instructions not to answer questions (a) asking whether legal advice was given, (b) seeking the subject matter of legal advice, and (c) solely seeking factual information. The Coordinated Parties have promptly and repeatedly voiced concerns with MDL counsel regarding Defendants' improper privilege objections during depositions, including on September 1, September 24, September 29, October 20, and November 3. MDL Lead Counsel has represented that these issues are being addressed with Defendants' counsel. The Coordinated Parties are not aware of any resolutions of these issues, which may require Court intervention. And the Coordinated Parties are still assessing which witnesses should be brought back. But to avoid a *third* deposition of any witness, any such second depositions should not occur until Defendants' mass withholding of non-privileged documents is resolved by the Court.

### *D. The Necessity of Additional Custodians*

Finally, the Coordinated Parties were not provided an opportunity to participate in the MDL parties' search terms and custodian negotiations, but have identified over a dozen key individuals who were not previously included. The Coordinated Parties understand that MDL

Lead Counsel agrees with many of the Coordinated Parties' proposed additional custodians and that MDL Lead Counsel intends to pursue them with Defendants. This process of pursuing additional custodians, obtaining Court relief if necessary, and then obtaining the custodians' documents, will take months—further counseling in favor of extending the fact discovery deadline.

The persistence of this issue, among others, is not for lack of diligence. Beginning in May, the Coordinated Parties continually and repeatedly voiced concerns with the delay in the search terms and custodians process and how that would impact the fact discovery deadline, but lacked visibility into the negotiations. The Coordinated Parties were not provided access to the search term and custodian agreement until August 18, though they repeatedly voiced concerns with MDL counsel regarding the infeasibility of the fact discovery deadline in light of production delays and the number of anticipated depositions. The impact of Defendants' late productions on depositions, described above, is the logical consequence of these delays, but the Coordinated Parties should not be hamstrung as a result of issues they not only did not cause, but also actively sought to avoid.

*E.* *Requested Relief*

The Coordinated Parties respectfully request that the fact discovery deadline be extended to May 6, 2027. The extension will allow time to resolve the outstanding privilege, custodian, and production disputes. The Coordinated Parties are severely prejudiced by every deposition that occurs prior to the resolution of these issues. Defendants have notably rejected the notion that any deponent be deposed twice ***even when Defendants have produced a deponent's custodial documents after a deposition has occurred***. Defendants have also made clear that they will fight any request to re-depose a witness, further prejudicing the Coordinated Parties, who must spend resources needlessly litigating each request and will have to preview why a second deposition is necessary, thus giving Defendants a "free look" at deposition topics and likely exhibits.

The Coordinated Parties also continue to request:

- Inclusion in scheduling negotiations and decisions for non-Plaintiff depositions;
- An order requiring Defendants to complete the custodial productions for Non-Plaintiff deponents at least 14 days prior to the custodian's deposition;
- An order providing the Coordinated Parties an opportunity to re-depose any non-Plaintiff deponents for whom the 14-day requirement has not been satisfied;
- An order providing the Coordinated Parties an opportunity to re-depose any non-Plaintiff deponents for whom relevant documents initially withheld for privilege are later produced.

The State of Nebraska and Lincare appreciate the Court's attention to these important issues and the opportunity to be heard at the November 19, 2026 MDL Status Conference.

Respectfully submitted,

*/s/ Sara Clark*

Sara Clark
Quinn Emanuel Urquhart & Sullivan, LLP
700 Louisiana Street, Suite 3900
Houston, TX 77002

Phone: (713) 221-7010
E-Mail: saraclark@quinnemanuel.com

*Counsel for the State of Nebraska*

*/s/ Mike Prather*

Mike Prather
Freeman Mathis & Gary, LLP
3 Riverway, Suite 1000
Houston, TX 77056

Phone: (832) 371-6036
E-Mail: mike.prather@fmglaw.com

*Counsel for Lincare*